# 13-2187-BK

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

FOR THE SECOND CIRCUIT

⤜ ❯❯ ❮❮ ⤛

IN RE: MOTORS LIQUIDATION COMPANY, *et al.*,

*Debtors.*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF MOTORS LIQUIDATION COMPANY,

*Plaintiff-Appellant,*

*v.*

JPMORGAN CHASE BANK, N.A., INDIVIDUALLY AND AS ADMINISTRATIVE AGENT
FOR VARIOUS LENDERS PARTY TO THE TERM LOAN AGREEMENT DESCRIBED HEREIN,

*Defendant-Appellee.*

On Appeal from the United States Bankruptcy Court
for the Southern District of New York (New York City)

## JOINT APPENDIX
## VOLUME X OF XIII
## Pages A2701 to A3000

KELLEY DRYE & WARREN, LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Attorneys for Defendant-Appellee*

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
(212) 277-6500

*and*

DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C. 20006
(202) 420-3150

*Attorneys for Plaintiff-Appellant*

# Table of Contents

**Page**

**Volume I**

Bankruptcy Court Docket Entries ............................................................ A1

Adversary Complaint for (1) Avoidance of Unperfected Lien, (2)
    Avoidance and Recovery of Postpetition Transfers, (3)
    Avoidance and Recovery of Preferential Payments, and (4)
    Disallowance of Claims by Defendants, dated July 31, 2009 ......... A82

    Exhibit 1 to Complaint -
    UCC-1 Financing Statement,
    Filing # 64168084, filed November 30, 2006 ............................... A138

    Exhibit 2 to Complaint -
    UCC-3 Termination Statement,
    Filing # 20083661491, filed October 30, 2008 ............................ A144

Stipulated Scheduling Order, dated October 6, 2009 ........................... A146

Answer of Defendant JPMorgan Chase Bank, N.A.,
    dated October 7, 2009 .................................................................... A150

Transcript of Proceedings held before the Honorable Robert E.
    Gerber on October 6, 2009, filed October 7, 2009 ........................ A234

Modified Stipulated Scheduling Order, dated January 20, 2010 .......... A275

Letter from Eric B. Fisher to the Honorable Robert E. Gerber,
    dated March 8, 2010 ....................................................................... A278

Letter from John M. Callagy to the Honorable Robert E. Gerber,
    dated March 11, 2010 ..................................................................... A282

Letter from John M. Callagy to the Honorable Robert E. Gerber,
    dated March 29, 2010 ..................................................................... A285

Letter from Eric B. Fisher to the Honorable Robert E. Gerber,
    dated April 7, 2010 ......................................................................... A291

i

## Table of Contents
### (continued)

**Page**

Notice of Hearing on Motion of Official Committee of Unsecured
    Creditors for Partial Summary Judgment, dated July 1, 2010 ....... A295

Plaintiff's Statement of Undisputed Material Facts Pursuant to
    Local Bankruptcy Rule 7056-1, dated July 1, 2010 ...................... A298

**Volume II**

Plaintiff's Statement of Undisputed Material Facts Pursuant to
    Local Bankruptcy Rule 7056-1, dated July 1, 2010 (cont'd.)......... A301

Declaration of Eric B. Fisher in Support of Plaintiff's Motion for
    Partial Summary Judgment, dated July 1, 2010 ........................... A312

    Exhibit A to Fisher Declaration -
    Term Loan Agreement, dated as of November 29, 2006,
    Plaintiff's Deposition Exhibit 36 ................................................... A317

    Exhibit B to Fisher Declaration -
    Term Loan Collateral Agreement, dated as of
    November 29, 2006, Plaintiff's Deposition Exhibit 37 ................ A385

    Exhibit C to Fisher Declaration -
    Excerpts from the Deposition Testimony of Richard W. Duker,
    taken February 9, 2010 ................................................................. A433

    Exhibit D to Fisher Declaration -
    UCC-1 Financing Statement, Filing # 64168084,
    filed November 30, 2006, Plaintiff's Deposition Exhibit 38 ......... A452

    Exhibit E to Fisher Declaration -
    Participation Agreement, dated as of October 31, 2001,
    Amended, dated as of January 6, 2003, Plaintiff's Deposition
    Exhibit 39 .................................................................................... A458

**Table of Contents**
**(continued)**

**Page**

Exhibit F to Fisher Declaration -
Excerpts from the Deposition Testimony of Mardi Merjian,
taken February 4, 2010 .................................................................. A597

**Volume III**

Exhibit F to Fisher Declaration (cont'd.)-
Excerpts from the Deposition Testimony of Mardi Merjian,
taken February 4, 2010 .................................................................. A601

Exhibit G to Fisher Declaration -
Email from Ann Silva to Stephen Karotkin, et al.,
dated June 19, 2009, with Final Affidavit of Robert E. Gordon,
sworn to June 18, 2009, with Annexed Exhibits, Plaintiff's
Deposition Exhibit 6 ...................................................................... A611

Exhibit H to Fisher Declaration -
Excerpts from the Deposition Testimony of Ryan Green,
taken January 27, 2010 .................................................................. A648

Exhibit I to Fisher Declaration -
Excerpts from the Deposition Testimony of Robert Gordon,
taken January 28, 2010 .................................................................. A669

Exhibit J to Fisher Declaration -
Email from Robert Gordon to Ryan Green,
dated October 1, 2008, Plaintiff's Deposition Exhibit 7 ............... A683

Exhibit K to Fisher Declaration -
Email from Ryan Green to Stacey Braybrook,
dated October 6, 2008, with Draft Closing Checklist,
Plaintiff's Deposition Exhibit 8 ..................................................... A687

Exhibit L to Fisher Declaration -
Excerpts from the Deposition Testimony of Michael
Perlowski, taken January 27, 2010 ................................................ A695

**Table of Contents**
(continued)

          **Page**

Exhibit M to Fisher Declaration -
Excerpts from the Deposition Testimony of Stewart
Gonshorek, taken January 28, 2010 ................................................ A699

Exhibit N to Fisher Declaration -
Email from Ryan Green to Arun Sundaram and Timothy
Conder, dated October 15, 2008, with Draft Closing Checklist,
Plaintiff's Deposition Exhibit 10 .................................................... A704

Exhibit O to Fisher Declaration -
Email from Arun Sundaram to Richard Duker,
dated October 15, 2008, with Draft Closing Checklist,
Plaintiff's Deposition Exhibit 12 .................................................... A713

Exhibit P to Fisher Declaration -
Email from Ryan Green to Mardi Merjian and Glenn Kenton,
dated October 15, 2008, with Draft Closing Checklist,
Plaintiff's Deposition Exhibit 13 .................................................... A723

Exhibit Q to Fisher Declaration -
Email from Mardi Merjian to Richard Duker,
dated October 15, 2008, with Draft Closing Checklist,
Plaintiff's Deposition Exhibit 31 .................................................... A730

Exhibit R to Fisher Declaration -
Email from Ryan Green to Mardi Merjian and Michael
Ledyard, dated October 15, 2008, with Draft Closing
Checklist and Drafts of Closing Documents,
Plaintiff's Deposition Exhibit 15 .................................................... A739

Exhibit S to Fisher Declaration -
Email from Mardi Merjian to Richard Duker,
dated October 15, 2008, with Draft Closing Checklist and
Drafts of Closing Documents, Plaintiff's Deposition
Exhibit 32 ...................................................................................... A829

# Table of Contents
## (continued)

**Page**

### Volume IV

Exhibit S to Fisher Declaration (cont'd.) -
Email from Mardi Merjian to Richard Duker,
dated October 15, 2008, with Draft Closing Checklist
and Drafts of Closing Documents, Plaintiff's Deposition
Exhibit 32 ................................................................... A901

Exhibit T to Fisher Declaration -
Email from Mardi Merjian to Ryan Green,
dated October 17, 2008, Plaintiff's Deposition Exhibit 16............ A920

Exhibit U to Fisher Declaration -
Email from Ryan Green to Mardi Merjian, William Wineman
and Michael Ledyard, dated October 24, 2008, with Draft
Escrow Instructions, Plaintiff's Deposition Exhibit 19 ................. A923

Exhibit V to Fisher Declaration -
Email from Ryan Green to Mardi Merjian,
dated October 27, 2008; and Email from Mardi Merjian to
Ryan Green, dated October 27, 2008, Plaintiff's Deposition
Exhibit 20 ................................................................... A933

Exhibit W to Fisher Declaration -
Final Fully Executed Escrow Instructions,
dated October 29, 2008, Plaintiff's Deposition
Exhibits 21, 22, and 23 ................................................ A937

Exhibit X to Fisher Declaration -
UCC-3 Termination Statement, Filing # 20083661491, filed
October 30, 2008, Plaintiff's Deposition Exhibit 5 ...................... A950

Exhibit Y to Fisher Declaration -
Email from Robert Scheibe to Julie Engell, et al.,
dated February 13, 2009, with Executed First Amended
Arrangement Fee Letter, Plaintiff's Deposition Exhibit 47........... A952

## Table of Contents
### (continued)

                                                                    **Page**

Exhibit Z to Fisher Declaration -
Various Emails, dated May 6-10, 2009,
Plaintiff's Deposition Exhibit 49 ...................................................   A958

Exhibit AA to Fisher Declaration -
Email from Ann Silva to Fern Bomchill,
dated June 17, 2009, with Proposed Affidavit, Plaintiff's
Deposition Exhibit 26 ...................................................   A961

Exhibit BB to Fisher Declaration -
Email from Fern Bomchill to Richard Toder,
dated June 18, 2009, with Revised Affidavit, Plaintiff's
Deposition Exhibit 27 ...................................................   A966

Exhibit CC to Fisher Declaration -
Email from Richard Toder to Fern Bomchill,
dated June 29, 2009, Plaintiff's Deposition Exhibit 28 ................   A971

Exhibit DD to Fisher Declaration -
Final Order Pursuant to Bankruptcy Code Sections 105(a),
361, 362, 363, 364 and 507 and Bankruptcy Rules 2002,
4001and 6004 (A) Approving a DIP Credit Facility and
Authorizing the Debtors to Obtain Post-Petition Financing
Pursuant Thereto, (B) Granting Related Liens and Super-
Priority Status, (C) Authorizing the Use of Cash Collateral and
(D) Granting Adequate Protection to Certain
Pre-Petition Secured Parties, dated June 25, 2009.........................   A973

Exhibit EE to Fisher Declaration -
Letter from JPMorgan Chase Bank, N.A. to General Motors
Corporation, dated June 30, 2009, Plaintiff's Deposition
Exhibit 55.....................................................................  A1004

Exhibit FF to Fisher Declaration -
Adversary Complaint, dated July 31, 2009,
with Annexed Exhibits
(Reproduced Herein at pages A82 to A145)..................................  A1008

**Table of Contents**
(continued)

**Page**

Notice of Motion for Summary Judgment of Defendant JPMorgan
    Chase Bank, N.A., dated July 1, 2010 ........................................... A1009

Rule 7056-1(b) Statement of Undisputed Material Facts of
    Defendant JPMorgan Chase Bank, N.A. in Support of Its
    Motion for Summary Judgment, dated July 1, 2010 ..................... A1012

Affidavit of Richard W. Duker in Support of Defendant JPMorgan
    Chase Bank, N.A.'s Motion for Summary Judgment,
    sworn to June 29, 2010 and filed July 1, 2010 ............................. A1040

    Exhibit A to Duker Affidavit -
    Participation Agreement, dated as of October 31, 2001 ............... A1050

**Volume V**

    Exhibit A to Duker Affidavit (cont'd.) -
    Participation Agreement, dated as of October 31, 2001 ............... A1201

    Exhibit B to Duker Affidavit -
    Annex A to Participation Agreement - Rules of Usage and
    Definitions.................................................................................... A1300

    Exhibit C to Duker Affidavit -
    Synthetic Lease Transaction Lease between Auto Facilities
    Real Estate Trust 2001-1, as Lessor, and General Motors
    Corporation, as Lessee, dated as of October 31, 2001 .................. A1346

    Exhibit D to Duker Affidavit -
    Short Form Memorandums of Lease ............................................ A1400

**Volume VI**

    Exhibit D to Duker Affidavit (cont'd.) -
    Short Form Memorandums of Lease ............................................ A1501

## Table of Contents
### (continued)

|  | Page |
|---|---|

Exhibit E to Duker Affidavit -
Synthetic Lease Transaction First Amendment and Agreement
to the Participation Agreement, dated as of January 6, 2003........  A1772

Exhibit F to Duker Affidavit -
Various UCC-1 Financing Statements filed in connection with
the Synthetic Lease Transaction ...................................................  A1796

## Volume VII

Exhibit F to Duker Affidavit (cont'd.) -
Various UCC-1 Financing Statements filed in connection with
the Synthetic Lease Transaction ...................................................  A1801

Exhibit G to Duker Affidavit -
Term Loan Agreement, with Annexed Exhibits,
dated as of November 29, 2006 ...................................................  A1827

Exhibit H to Duker Affidavit -
Term Loan Collateral Agreement,
dated as of November 29, 2006 ...................................................  A1936

Exhibit I to Duker Affidavit -
Various UCC-1 Financing Statements filed in connection with
the Term Loan................................................................................  A1984

Exhibit J to Duker Affidavit -
Term Loan State Fixture Filings..................................................  A1997

## Volume VIII

Exhibit J to Duker Affidavit (cont'd.) -
Term Loan State Fixture Filings..................................................  A2101

Exhibit K to Duker Affidavit -
Email from Arun Sundaram to Richard Duker,
dated October 1, 2008 ..................................................................  A2147

## Table of Contents
### (continued)

**Page**

Exhibit L to Duker Affidavit -
Synthetic Lease Termination Agreement,
dated October 30, 2008 ................................................................. A2150

Exhibit M to Duker Affidavit -
Various Emails from Richard Duker, dated February 27, 2009,
March 1, 2009 and March 4, 2009 ................................................. A2163

Exhibit N to Duker Affidavit -
First Amendment to the Term Loan, dated as of March 4, 2009 .. A2166

**Volume IX**

Exhibit N to Duker Affidavit (cont'd.) -
First Amendment to the Term Loan, dated as of March 4, 2009 .. A2401

Exhibit O to Duker Affidavit -
Collateral Value Certificates, dated December 2, 2008,
March 23, 2009, and May 28, 2009 ............................................... A2462

Exhibit P to Duker Affidavit -
Various Term Loan UCC-3 Termination Statements ................... A2471

Declaration of John M. Callagy in Support of Motion for Summary
   Judgment of JPMorgan Chase Bank, N.A., dated July 1, 2010 ..... A2600

Exhibit 1 to Callagy Declaration -
Deposition Testimony of Michael Perlowski,
taken January 27, 2010 .................................................................. A2605

Exhibit 2 to Callagy Declaration -
Deposition Testimony of Ryan Green,
taken January 27, 2010 .................................................................. A2617

Exhibit 3 to Callagy Declaration -
Deposition Testimony of Stewart Gonshorek,
taken January 28, 2010 .................................................................. A2645

# Table of Contents
## (continued)

           **Page**

Exhibit 4 to Callagy Declaration -
Deposition Testimony of Robert Gordon,
taken January 28, 2010 ............................................... A2659

Exhibit 5 to Callagy Declaration -
Deposition Testimony of Mardi Merjian,
taken February 4, 2010 ............................................... A2678

Exhibit 6 to Callagy Declaration -
Deposition Testimony of Richard W. Duker,
taken February 9, 2010 ............................................... A2695

### Volume X

Exhibit 6 to Callagy Declaration (cont'd.) -
Deposition Testimony of Richard W. Duker,
taken February 9, 2010 ............................................... A2701

Exhibit 7 to Callagy Declaration -
Email from Ryan Green to Michael Perlowski,
dated October 7, 2008, Plaintiff's Deposition Exhibit 1 .............. A2718

Exhibit 8 to Callagy Declaration -
Email from Ryan Green to Michael Perlowski,
dated October 7, 2008, Plaintiff's Deposition Exhibit 2 .............. A2720

Exhibit 9 to Callagy Declaration -
Email from Michael Perlowski to Ryan Green, with
Handwritten Notes and Attachments, dated October 9, 2008,
Plaintiff's Deposition Exhibit 3 .................................... A2727

Exhibit 10 to Callagy Declaration -
Email from Michael Perlowski to Ryan Green, with
Attachments, dated October 9, 2008, Plaintiff's Deposition
Exhibit 4 ........................................................... A2735

## Table of Contents
### (continued)

                                                                    **Page**

Exhibit 11 to Callagy Declaration -
Email from Ann Silva on behalf of Richard Toder to Stephen
Karotkin, et al., dated June 19, 2009, with Affidavit of Robert
Gordon, sworn to June 18, 2009, with Annexed Exhibits,
Plaintiff's Deposition Exhibit 6 ...................................... A2817

Exhibit 12 to Callagy Declaration -
Email from Robert E. Gordon to Ryan Green,
dated October 1, 2008, Plaintiff's Deposition Exhibit 7.............. A2854

Exhibit 13 to Callagy Declaration -
Email from Ryan Green to Arun Sundaram and Timothy
Conder, with Attachment, dated October 15, 2008, Plaintiff's
Deposition Exhibit 10 ................................................. A2858

Exhibit 14 to Callagy Declaration -
Email from Arun Sundaram to Richard Duker, with
Attachment, dated October 15, 2008, Plaintiff's Deposition
Exhibit 12.............................................................. A2867

Exhibit 15 to Callagy Declaration -
Email from Ryan Green to Mardi Merjian and Glenn Kenton,
with Attachment, dated October 15, 2008, Plaintiff's
Deposition Exhibit 13 ................................................. A2877

Exhibit 16 to Callagy Declaration -
Email from Ryan Green to Mardi Merjian and Michael
Ledyard, with Attachments, dated October 15, 2008,
Plaintiff's Deposition Exhibit 15 ................................... A2884

Exhibit 17 to Callagy Declaration -
Email from Ryan Green to Mardi Merjian and Michael
Ledyard, with Attachment, dated October 21, 2008,
Plaintiff's Deposition Exhibit 17 ................................... A2974

## Table of Contents
## (continued)

**Page**

Exhibit 18 to Callagy Declaration -
Email from Ryan Green to William Wineman, et al., with
Attachment, dated October 24, 2008, Plaintiff's Deposition
Exhibit 34 ...................................................................................... A2989

### Volume XI

Exhibit 18 to Callagy Declaration (cont'd.) -
Email from Ryan Green to William Wineman, et al., with
Attachment, dated October 24, 2008, Plaintiff's Deposition
Exhibit 34 ...................................................................................... A3001

Exhibit 19 to Callagy Declaration -
Letter from Ryan Green, et al., to LandAmerica,
dated October 29, 2008, Plaintiff's Deposition Exhibit 22 ........... A3004

Exhibit 20 to Callagy Declaration -
Email from Mary Swanger to Ryan Green,
dated June 16, 2009, Plaintiff's Deposition Exhibit 24 ................ A3012

Exhibit 21 to Callagy Declaration -
Letter from Bryan Kluever to Stewart Gonshorek,
with Enclosures, dated November 4, 2008, Plaintiff's
Deposition Exhibit 25 ................................................................... A3014

Exhibit 22 to Callagy Declaration -
Email from Mardi Merjian to Richard Duker, with
Attachment, dated October 15, 2008, Plaintiff's Deposition
Exhibit 31 ...................................................................................... A3019

Exhibit 23 to Callagy Declaration -
Email from Mardi Merjian to Richard Duker, with
Attachment, dated October 15, 2008, Plaintiff's Deposition
Exhibit 32 ...................................................................................... A3028

Exhibit 24 to Callagy Declaration -
Email from David Walker to Richard Duker, et al.,
dated October 30, 2008, Plaintiff's Deposition Exhibit 46 ........... A3119

## Table of Contents
### (continued)

                                                                        **Page**

      Exhibit 25 to Callagy Declaration -
      Plaintiff's Responses and Objections to Defendant's First
      Set of Requests to Admit, dated March 8, 2010 .......................... A3121

Affidavit of Debra Homic Hoge, sworn to March 18, 2010 ............... A3126

      Exhibit A to Hoge Affidavit -
      UCC-1 Financing Statement, Filing # 20925267,
      filed April 12, 2002 and Amended March 5, 2007 ...................... A3130

      Exhibit B to Hoge Affidavit -
      Synthetic Lease Termination Agreement,
      dated October 30, 2008 .................................................. A3144

      Exhibit C to Hoge Affidavit -
      UCC-3 Termination Statement, Filing # 20083661426,
      filed October 30, 2008 .................................................. A3157

      Exhibit D to Hoge Affidavit -
      UCC-3 Termination Statement, Filing # 20083661491,
      filed October 30, 2008 .................................................. A3159

      Exhibit E to Hoge Affidavit -
      UCC-1 Financing Statement, Filing # 64168084,
      filed November 30, 2006 ............................................... A3161

Plaintiff's Counter-Statement of Material Facts Pursuant to Local
      Bankruptcy Rule 7056-1, dated August 5, 2010.......................... A3167

Declaration of Katie L. Cooperman in Support of Plaintiff's
      Opposition to Defendant's Motion for Summary Judgment,
      dated August 5, 2010 .................................................... A3192

      Exhibit A to Cooperman Declaration -
      Email from Arun Sundaram to Ryan Green,
      dated October 15, 2008................................................. A3194

**Table of Contents**
(continued)

Page

Exhibit B to Cooperman Declaration -
Email from Ryan Green to Richard Duker,
dated October 29, 2008; and Email from Richard Duker to
Ryan Green, dated October 29, 2008 ............................................. A3196

Exhibit C to Cooperman Declaration -
Excerpts of Lien Searches Performed by Morgan, Lewis &
Bockius LLP ................................................................................. A3200

Exhibit D to Cooperman Declaration -
Form Delaware UCC-3 Termination Statement ........................... A3243

Response of Defendant JPMorgan Chase Bank, N.A. to Plaintiff's
Statement of Undisputed Material Facts, dated August 5, 2010 ... A3245

Supplemental Declaration of John M. Callagy in Further Support of
Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary
Judgment and in Opposition to the Plaintiff's Motion for
Partial Summary Judgment, dated August 5, 2010 ....................... A3276

Exhibit 1 to Callagy Supplemental Declaration -
Richard Duker's Signature Page and Errata Sheet,
dated March 10, 2010 to his Deposition Testimony
taken February 9, 2010 ................................................................. A3278

Exhibit 2 to Callagy Supplemental Declaration -
Mardi Merjian's Signature Page and Errata Sheet,
dated March 9, 2010 to his Deposition Testimony taken
February 4, 2010 .......................................................................... A3281

Exhibit 3 to Callagy Supplemental Declaration -
Robert Gordon's Signature Page and Errata Sheet,
dated March 11, 2010 to his Deposition Testimony taken
January 28, 2010 .......................................................................... A3284

**Table of Contents**
**(continued)**

**Page**

Supplemental Affidavit of Richard W. Duker in Further Support of
    Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary
    Judgment and in Opposition to the Plaintiff's Motion for
    Partial Summary Judgment, sworn to August 5, 2010 .................. A3290

    Exhibit A to Duker Supplemental Affidavit -
    Email from Mardi Merjian to Richard Duker, with a sampling
    reflecting attachments thereto, dated October 15, 2008 .............. A3292

**Volume XII**

    Exhibit A to Duker Supplemental Affidavit (cont'd.) -
    Email from Mardi Merjian to Richard Duker, with a sampling
    reflecting attachments thereto, dated October 15, 2008 .............. A3301

Reply of Defendant JPMorgan Chase Bank, N.A. to Plaintiff's
    Counter-Statement of Material Facts Pursuant to Local
    Bankruptcy Rule 7056-1, dated August 26, 2010......................... A3305

Transcript of Proceedings held before the Honorable Robert E.
    Gerber on December 3, 2010........................................... A3328

Letter from John M. Callagy to the Honorable Robert E. Gerber,
    dated December 9, 2010, with Annexed Caselaw ........................ A3398

Letter from Barry N. Seidel to the Honorable Robert E. Gerber,
    dated December 17, 2010, with Annexed Caselaw ...................... A3420

Letter from John M. Callagy to the Honorable Robert E. Gerber,
    dated June 9, 2011, with Annexed Caselaw .................................. A3446

Letter from Eric B. Fisher to the Honorable Robert E. Gerber,
    dated June 20, 2011 ....................................................... A3461

Letter from John M. Callagy to the Honorable Robert E. Gerber,
    dated July 29, 2011, with Annexed Caselaw ................................ A3463

## Table of Contents
### (continued)

Page

Letter from Eric B. Fisher to the Honorable Robert E. Gerber,
    dated August 4, 2011 ....................................................... A3478

Decision of the Honorable Robert E. Gerber on Cross-Motions for
    Summary Judgment, dated March 1, 2013 .................................... A3480

    Appendix A to Decision -
    UCC-3 Termination Statement, Filing # 20083661491,
        filed October 30, 2008 ................................................ A3556

Order of the Honorable Robert E. Gerber on Cross-Motions for
    Summary Judgment, dated March 1, 2013 .................................... A3558

Judgment, dated March 1, 2013 .............................................. A3559

Order Pursuant to 28 U.S.C. § 158(d), and Fed. R. Bankr. P.
    8001(f)(4), Certifying Judgment for Direct Appeal to Second
    Circuit, dated March 1, 2013, with Annexed Decision
    (Annexed Decision Reproduced Herein at
    pages A3480 to 3557) ..................................................... A3561

Notice of Appeal, dated March 7, 2013 ...................................... A3563

Petition for Permission for Direct Appeal Under 28 U.S.C. §
    158(d)(2)(A), dated April 5, 2013, with Appendix, in 13-1276 .... A3565

### Volume XIII

Petition for Permission for Direct Appeal Under 28 U.S.C. §
    158(d)(2)(A), dated April 5, 2013, with Appendix, in 13-1276
    (cont'd.) ................................................................ A3601

Response to Petition for Permission for Direct Appeal Under
    28 U.S.C. § 158(d)(2)(A), dated April 15, 2013, in 13-1276 ........ A3758

Order of United States Court of Appeals for the Second Circuit
    Granting Petition for Permission for Direct Appeal,
    dated June 5, 2013, in 13-1276 ........................................... A3780

## Table of Contents
### (continued)

**Page**

Certified Copy of Order of United States Court of Appeals for the
Second Circuit Granting Petition for Permission for Direct
Appeal, dated June 5, 2013, in 13-1276 ....................................... A3781

Notice of Appeal Docketing Notice, dated June 5, 2013, in 13-1276.. A3782

Duker, Richard W.                                        2/9/2010

6 (Pages 21 to 24)

Page 21

1  result of the closing on the payoff?
2      A.   No.
3      Q.   When you say that you were not
4  aware at the time in October of 2008, you were
5  not aware of any UCC financing statements that
6  needed to be terminated in connection with the
7  synthetic lease -- withdrawn.
8           Sitting here today, are you aware
9  that in October 2008 a termination statement
10 that was -- a termination statement was filed
11 that on its face concerns the Term Loan
12 collateral?
13          MR. CALLAGY:  Objection to form.
14 You may answer it.
15     A.   Could you repeat the question?
16          MR. FISHER:  Would you mind reading
17 it back, please.
18          (The pending question was read.)
19     A.   I am aware that a UCC -- today I'm
20 aware that a UCC financing statement unrelated
21 to the synthetic lease was filed.
22     Q.   And it was filed in connection with
23 the closing on the payoff of the synthetic
24 lease?
25          MR. CALLAGY:  Objection to the

Page 22

1  form.  You may answer that.
2      A.   That's my understanding.
3      Q.   When did you first become aware
4  that a termination statement filed in October
5  2008 referenced a financing statement that
6  related to the Term Loan?
7      A.   It was post the GM bankruptcy.  I'm
8  not sure of the exact date, but I believe it was
9  at some point in June of 2009.
10     Q.   How did that first come to your
11 attention?
12     A.   I don't recall whether I heard it
13 from external or internal counsel directly.  I
14 don't recall who actually informed me.
15     Q.   After learning about this sometime
16 in June 2009, did you speak to anyone about --
17 aside from counsel, did you speak to anyone
18 about how this termination statement came to be
19 filed?
20          MR. CALLAGY:  Other than counsel.
21     A.   Other than counsel?
22     Q.   Right.  And so that my questions
23 don't get more and more clumsy, when I refer to
24 the termination statement, I'm referring to the
25 termination statement that was filed in October

Page 23

1  2008 that on its face relates to the Term Loan
2  collateral.
3          MR. CALLAGY:  I object to the form.
4  He did not testify anything about having on its
5  face -- I object to the form of the question.
6  He testified what he testified to.
7      Q.   I just want to make sure -- I'm
8  using shorthand when I say "termination
9  statement."  And I want to make sure my
10 shorthand is understood by you.
11          The termination statement that was,
12 in your words, unrelated to the synthetic lease
13 collateral, that's the termination statement
14 that I'm referring to when I say termination
15 statement.
16     A.   Okay.
17     Q.   Now I've forgotten what the
18 question was.
19          MR. FISHER:  Could you read it
20 back, please.
21          (The pending question was read.)
22     A.   Other than counsel, I don't recall
23 any specific conversations with anyone else.
24     Q.   You don't recall speaking to any of
25 your co-workers at JPMorgan?

Page 24

1      A.   It's possible, I just don't recall
2  specific conversations.
3      Q.   Do you recall any conversations
4  with Mr. Storms?
5      A.   No.
6      Q.   When you were working on the payoff
7  of the synthetic lease, did you interact with
8  people at GM?
9      A.   On the payoff of the synthetic
10 lease, yes.
11     Q.   Did you speak to any of them about
12 how this termination statement that we're
13 discussing came to be filed?
14     A.   No.  I was not aware of it.
15     Q.   I didn't hear the end of your
16 answer.
17     A.   I was not aware of it.
18     Q.   Even after learning, did you reach
19 out to anyone at GM to discuss this?
20     A.   No.
21     Q.   Who was counsel to GM in connection
22 with the payoff of the synthetic lease?
23     A.   Mayer Brown.
24     Q.   Did you speak to anyone -- after
25 learning about the termination statement that's

Duker, Richard W.                                                    2/9/2010

7 (Pages 25 to 28)

Page 25

1  at issue in this litigation, did you speak to
2  anyone at Mayer Brown?
3      A.    No.
4      Q.    Did you yourself do anything to
5  determine how the termination statement came to
6  be filed?
7          MR. CALLAGY:  Object to the form.
8      A.    Did I do anything to determine, no,
9  I did not.
10     Q.    Have you had any conversations with
11 anyone from U.S. Treasury or any other agency of
12 government about the termination statement?
13     A.    No.
14     Q.    Have you had any conversations with
15 any of the lenders who were part of the Term
16 Loan syndicate about the termination statement?
17     A.    I don't believe I've had any
18 conversation with any lenders.
19     Q.    Sitting here today, do you have an
20 understanding of how it is that this termination
21 statement came to be filed?
22     A.    Yes.  It's my understanding --
23         MR. CALLAGY:  The question is yes
24 or no.
25     Q.    What is your understanding of how

Page 26

1  the termination statement came to be filed?
2          MR. CALLAGY:  I would assert the
3  privilege to the extent he learned about that
4  from counsel.  To the extent you agree that that
5  doesn't constitute a waiver, I'll let him tell
6  you what his understanding is.
7      Q.    You should try to exclude from your
8  answer privileged information.
9          MR. FISHER:  But I agree that this
10 testimony would not constitute a waiver.
11     A.    My understanding is that when Mayer
12 Brown prepared the termination statements
13 related to the synthetic lease, which we
14 authorized them to do, that they inadvertently
15 included an unrelated termination of different
16 collateral under a different transaction which
17 they were not involved with.
18     Q.    Was the Term Loan amended at some
19 point in time?
20     A.    Yes.
21     Q.    When was that?
22     A.    I believe it was in the March/April
23 time frame.  I don't know the exact date.  There
24 was an amendment that was completed.
25     Q.    And that's March/April of 2009?

Page 27

1      A.    Correct.
2      Q.    In general terms, what was the
3  purpose of the amendment?
4      A.    The company was seeking a waiver of
5  their expected going concern opinion from their
6  auditors and had expressed interest in providing
7  the U.S. Treasury with a second lien on the Term
8  Loan collateral.
9      Q.    As a consequence of the amendment,
10 was Treasury granted a second lien on the Term
11 Loan collateral?
12     A.    No.
13     Q.    So as finalized, what did the
14 amendment accomplish?
15         MR. CALLAGY:  Objection to the
16 form.  And the document is available, I'm sure
17 you have it.  It speaks for itself.
18     A.    The only thing I recall is that we
19 waived -- the lenders waived the going concern
20 and there were modifications I believe to
21 pricing and some fees.
22     Q.    Did JPMorgan earn a fee in
23 connection with this amendment?
24     A.    Yes.
25     Q.    What was the amount of the fee?

Page 28

1      A.    I'm not positive what the fee was.
2      Q.    In connection with the amendment of
3  the Term Loan, were any UCC searches performed?
4      A.    I don't know.
5      Q.    Is there someone at JPMorgan who
6  would know whether or not UCC searches were
7  performed in connection with the amendment of
8  the Term Loan?
9      A.    Not that I'm aware of.
10     Q.    Just so I understand that, if those
11 UCC searches were done, are you the person most
12 likely to know that fact?
13         MR. CALLAGY:  Objection to the form
14 of the question.
15     A.    Could you repeat that, please.
16         (The pending question was read.)
17     A.    No.  Simpson Thacher -- sorry, at
18 the time we were working with Morgan Lewis.
19 They would have been aware of whether those were
20 performed.  Whether they would have informed me
21 or not I don't know.
22     Q.    So Morgan Lewis represented
23 JPMorgan in connection with the amendment of the
24 Term Loan.
25     A.    That's correct.

Duker, Richard W.                                    2/9/2010

8 (Pages 29 to 32)

Page 29

1     Q.   Following GM's bankruptcy petition,
2  at some point thereafter the Term Loan was paid
3  off?
4          MR. CALLAGY:  Excuse me, would you
5  read that question back.
6          (The pending question was read.)
7     A.   Yes.
8     Q.   Who represented JPMorgan in
9  connection with the payoff of the Term Loan?
10    A.   Morgan Lewis.
11    Q.   Aside from the matters at issue in
12 this litigation, have you ever been involved in
13 a situation where a mistaken UCC was filed
14 before?
15         MR. CALLAGY:  Objection to the
16 form.
17    A.   Not that I'm aware of any.
18    Q.   Mr. Duker, do you want to take a
19 break or keep going?
20    A.   I'm fine.
21         MR. FISHER:  I'm going to ask the
22 court reporter to mark as Plaintiff's Exhibit 40
23 a document numbered JPMCB 231 through 232.
24         (Exhibit 40 for identification,
25 Bates stamped JPMCB 231 through 232.)

Page 30

1     Q.   Mr. Duker, focussing on the second
2  page of this exhibit, there's an e-mail from --
3  there appears to be an e-mail from you to
4  someone named Arun.  Who is Arun Sundaram?
5     A.   Arun I believe worked in General
6  Motors' treasurer's office.  He had
7  responsibility for this transaction.
8     Q.   Does this e-mail relate to what was
9  then the anticipated payoff of the synthetic
10 lease?
11         MR. CALLAGY:  Objection to form.
12    A.   Yes.  I was specifically asking him
13 regarding the synthetic lease transaction their
14 intentions.
15    Q.   And then turning now to the first
16 page, the second e-mail from the top appears to
17 be a message from Arun to you.  And he says, "We
18 intend to repurchase the remaining properties,
19 have asked the lawyers to draft a checklist.
20 Please advise from your end the next steps and
21 to-dos."
22         MR. CALLAGY:  What's the question?
23         MR. FISHER:  There's no question
24 yet.
25    Q.   The lawyers referred to there, is

Page 31

1  it your understanding that he's referring to
2  Mayer Brown?
3          MR. CALLAGY:  Objection to form.
4  You're talking about as he sits here today?  Are
5  you talking about his recollection about this
6  e-mail or are you talking about as he sits here
7  today having read it?  I don't know whether you
8  established whether he has a recollection of the
9  document.
10    Q.   Is this an e-mail that you received
11 from Mr. Sundaram?
12    A.   It appears to be, yes.
13    Q.   At the time when he wrote that he
14 had asked the lawyers to draft a checklist, did
15 you have an understanding of who the lawyers
16 were who he was referring to?
17    A.   I don't recall receiving this, but
18 he would only speak to Mayer Brown.  He would
19 not have reached out to Simpson Thacher, if
20 that's the question.
21    Q.   And then looking up to the top
22 e-mail, is that an e-mail from you to
23 Ms. Gherty?
24    A.   Yes.
25    Q.   What is Ms. -- or at the time, what

Page 32

1  was Ms. Gherty's position?
2     A.   She was my boss and the credit
3  approving officer for General Motors at the
4  time.
5     Q.   And is that a message that you
6  wrote to her?
7     A.   I don't recall sending it, but it
8  appears to be.
9     Q.   And the message says, "yea,
10 confirmation that 55 million of GM exposure will
11 be gone by 10/31/08."
12         Following the payoff of the
13 synthetic lease, how much exposure did JPMorgan
14 have to GM?
15         MR. CALLAGY:  On a macro basis.
16 Object to the form.
17    A.   I don't remember in aggregate.  I
18 do recall that at the time we had about 240
19 million of a revolving credit commitment.
20 That's the only thing specifically I recall off
21 the top of my head.
22    Q.   At the time was JPMorgan also a
23 direct lender under the Term Loan?
24         MR. CALLAGY:  Objection to the
25 form.  You may answer it.

Duker, Richard W.                                    2/9/2010

9 (Pages 33 to 36)

Page 33

1        A.    Possibly through our secondary
2    trading group.
3        Q.    And what's the name of that
4    secondary trading group?
5        A.    Secondary loan and distressed
6    trading.
7        Q.    It's part of JPMorgan Chase Bank
8    NA?
9              MR. CALLAGY:  Objection to form.
10       A.    I believe it is, yes.
11             MR. FISHER:  I'll ask the court
12    reporter to mark as Plaintiff's Exhibit 41 a
13    document numbered JPMCB 944 through 945.
14             (Exhibit 41 for identification,
15    Bates stamped JPMCB 944 through 945.)
16       Q.    Do you know Scott Quigley at Wells
17    Fargo?
18       A.    Yes.
19       Q.    Did Wells Fargo have some
20    participation in the Term Loan?
21       A.    I can't confirm that --
22             MR. CALLAGY:  Do you know?
23       A.    I don't know.
24       Q.    Does looking at this string of
25    e-mails refresh your recollection --

Page 34

1              MR. CALLAGY:  Why don't you read
2    it.
3        Q.    Take your time to read it, and my
4    question is simply, does this refresh your
5    recollection as to whether Wells Fargo
6    participated in the Term Loan.
7        A.    (The witness reviews the document.)
8              Based on their questions, it
9    appears they were an investor in the deal.
10       Q.    And the second e-mail from the top
11    on the first page of this exhibit appears to be
12    an e-mail from you to Mr. Quigley sent on
13    October 10th, 2008.  Does that look to you to be
14    an e-mail you sent to Mr. Quigley?
15       A.    It appears to be, yes.
16       Q.    And you're responding to a number
17    of questions, and you write, "JPM as agent is
18    not responsible for ensuring that the collateral
19    value is correct."
20             Did someone have responsibility to
21    determine whether the collateral value with
22    respect to the Term Loan was correct?
23             MR. CALLAGY:  Objection to form.
24       A.    General Motors, the borrower.
25       Q.    Is that information that General

Page 35

1    Motors as borrower would certify to JPMorgan as
2    administrative agent under the Term Loan?
3              MR. CALLAGY:  Objection to form.
4    This is really out of context.
5        A.    Typically we would require a
6    compliance certificate stating they were in
7    compliance.
8        Q.    And the second point in your e-mail
9    says, "The collateral value is based on the net
10    book value, not the fair market value of the M&E
11    special tools."  And then in parentheses,
12    "Property is not part of the collateral."
13             What did you mean when you wrote
14    "net book value"?
15       A.    I believe the reference is to what
16    they would show as part of their accounting of
17    their M&E and special tools on their books and
18    records.
19       Q.    And M&E refers to machinery and
20    equipment?
21       A.    Yes.
22       Q.    And when you say what they would
23    show on their books and records, "they" is GM?
24       A.    Yes.
25       Q.    During the period of time that the

Page 36

1    Term Loan was in place before it was paid off,
2    did anyone at JPMorgan do a fair market value
3    analysis of the Term Loan collateral?
4              MR. CALLAGY:  Objection to form.
5        A.    No.
6        Q.    Do you know what the approximate
7    net book value of the Term Loan collateral was
8    on the date that GM filed for bankruptcy?
9        A.    No.
10       Q.    Is there someone else at JPMorgan
11    who would know that?
12       A.    I don't know.
13       Q.    Are you aware of anyone, whether at
14    JPMorgan or elsewhere, who's conducted a fair
15    market value analysis of the Term Loan
16    collateral?
17       A.    Not that I'm aware of.
18       Q.    I'm handing you what's previously
19    been marked as Plaintiff's Exhibit 30.
20             MR. CALLAGY:  These were marked in
21    earlier depositions.
22       Q.    Right.
23       A.    Okay.
24       Q.    Who is Mardi Merjian?
25       A.    He was the partner at Simpson

Duker, Richard W.                                    2/9/2010

10 (Pages 37 to 40)

Page 37

1   Thacher who worked on the synthetic lease
2   transaction.
3       Q.   Did you communicate with
4   Mr. Merjian in connection with the payoff of the
5   synthetic lease?
6       A.   Yes.
7       Q.   Did you communicate with anyone
8   else at Simpson Thacher about the payoff of the
9   synthetic lease?
10      A.   I don't recall any other
11  conversations.
12      Q.   Another name that appears on this
13  exhibit is Ryan Green.  Who is Ryan Green?
14      A.   My understanding is he was an
15  associate at Mayer Brown.
16      Q.   And did you communicate with
17  Mr. Green in the course of the closing on the
18  payoff of the synthetic lease?
19      A.   I don't believe I worked directly
20  with him.
21      Q.   Generally speaking -- well, does
22  this appear to you to be a chain of e-mails --
23  withdrawn.
24          I'm handing you what's previously
25  been marked as Exhibit 12.  Is this an e-mail

Page 38

1   you remember receiving?
2       A.   I don't recall seeing it at the
3   time.
4       Q.   Do you have any reason to doubt you
5   received it?
6       A.   No.
7       Q.   And the e-mail from Arun to you
8   refers to a checklist developed by Mayer Brown.
9   Do you remember receiving a copy of a checklist
10  in connection with the payoff of the synthetic
11  lease?
12      A.   I don't recall seeing this, no.
13      Q.   If you look at the pages that are
14  attached to this e-mail, do you have any reason
15  to doubt that you received a copy of that
16  checklist?
17      A.   No.
18      Q.   If you turn to the third page of
19  this exhibit --
20          MR. CALLAGY:  Page 3?
21      Q.   I'm just counting three pages from
22  the front of the exhibit.  Towards the bottom of
23  the page your name appears, and it says "credit
24  contact" next to your name.  What does "credit
25  contact" mean?

Page 39

1       A.   I assume they meant I was the
2   contact at the bank that was responsible for the
3   credit relationship.
4       Q.   In this checklist, turning to what
5   is page 4 of the checklist, it has the number 4
6   on the bottom, there's a section 5 with the
7   title "general documentation" next to it.  And
8   then underneath that there's a section A,
9   "termination of UCCs."
10          Do you recognize any of the three
11  UCC financing statements referred to there?
12          MR. CALLAGY:  As he sits here?
13      Q.   Yes, as you sit here today.
14      A.   As I sit here today, yes.
15      Q.   Can you identify what they relate
16  to?
17      A.   My understanding is the first two,
18  20925325 and 20925267, as I sit here today I
19  believe related to the synthetic lease
20  transaction.  And 64168084 I believe relates to
21  the Term Loan Credit Agreement.
22      Q.   During the period leading up to the
23  payoff of the synthetic lease, did you have any
24  conversations with anyone about the financing
25  statements listed there?

Page 40

1           MR. CALLAGY:  On 5(A)?
2           MR. FISHER:  Yes.
3       A.   Not that I recall.
4       Q.   I'm handing you what's previously
5   been marked --
6           MR. CALLAGY:  Can we take a break
7   for a second?
8           MR. FISHER:  Sure.
9           (Recess taken.)
10  BY MR. FISHER:
11      Q.   I'm handing you what's previously
12  been marked as Plaintiff's Exhibit 31.
13          Does Plaintiff's Exhibit 31 appear
14  to you to be an e-mail forwarded to you by
15  Mr. Merjian?
16      A.   Yes.
17      Q.   Did you receive a copy of the
18  checklist that's attached to this e-mail?
19      A.   I don't recall seeing it, but I see
20  it now.
21      Q.   And you have no reason to doubt you
22  received it.
23      A.   No.
24      Q.   And if you look at page 4 of this
25  checklist, section 5(A) refers to certain UCC

Duker, Richard W.                                    2/9/2010

11 (Pages 41 to 44)

Page 41

1   financing statements.
2           During the period leading up to the
3   close of the synthetic lease transaction, I'll
4   just ask this question once so I don't have to
5   ask it ten times, did you have any discussions
6   with anyone about any of the financing
7   statements listed there?
8       A.   No.
9           MR. CALLAGY:  This is, again,
10  during the period of time leading up -- you
11  stopped your question --
12          MR. FISHER:  Yes, yes.  Right.
13      Q.   In other words --
14          MR. CALLAGY:  I think the record --
15  as long as you confirm that that's the period of
16  time.  You're talking about October of 2008.
17          MR. FISHER:  That's right.
18      Q.   Is it correct that the first time
19  you had any discussions with anyone about these
20  financing statements was sometime after the GM
21  bankruptcy petition was filed?
22      A.   Yes.
23      Q.   Can you pinpoint -- you said you
24  learned about the termination statement that's
25  at issue in this case after the GM bankruptcy

Page 42

1   case was filed.  Can you be any more specific in
2   locating in time the point at which you came to
3   learn about the termination statement?
4       A.   No.
5       Q.   I'm handing you what's previously
6   been marked as Plaintiff's Exhibit 32.  Is this
7   an e-mail that Mr. Merjian forwarded to you?
8       A.   It appears to be, yes.
9       Q.   Do you believe that Mr. Merjian
10  also forwarded to you the attachments to this
11  e-mail?
12          MR. CALLAGY:  Objection to the
13  form.
14      A.   Could you repeat that, please?
15      Q.   Did Mr. Merjian also forward to you
16  the documents that are attached to this e-mail?
17          MR. CALLAGY:  Objection to form.
18      A.   It appears to be, yes.
19      Q.   Would you turn, please, to page 296
20  of this exhibit.
21          MR. CALLAGY:  296 being the number
22  in the lower right.
23          MR. FISHER:  Yes.
24      Q.   Can you identify the document that
25  appears at page 296?

Page 43

1       A.   It appears to be a draft of the
2   financing statement termination that related to
3   the Term Loan.
4       Q.   You can set this whole exhibit
5   aside.
6           MR. FISHER:  I'll ask the court
7   reporter to mark as Plaintiff's Exhibit 42 a
8   document numbered JPMCB STB 363 through 365.
9           (Exhibit 42 for identification,
10  Bates stamped JPMCB STB 363 through 365.)
11      Q.   Would you describe generally what
12  these e-mails relate to.
13      A.   These relate to the calculation of
14  the expected payoff related to the unwind of the
15  synthetic lease transaction.
16      Q.   And on the first page, the second
17  e-mail in the chain appears to be an e-mail from
18  you to Arun Sundaram, Jeffrey Holy, Ryan Green
19  and Timothy Conder.  You've already mentioned
20  Mr. Sundaram.  Who is Jeffrey Holy?
21      A.   I don't remember who he is.
22      Q.   And Timothy Conder?
23      A.   I don't recall.
24      Q.   One of the ccs on this e-mail is
25  John Swint at JPMorgan.  Who is Mr. Swint?

Page 44

1       A.   He works in our loan and agency
2   group.  He's the person I referred to before in
3   terms of having the loan information.
4       Q.   I'm handing you what's previously
5   been marked as Plaintiff's Exhibit 35.  Is the
6   second page of this exhibit a Simpson Thacher
7   invoice that you forwarded to GM?
8           MR. CALLAGY:  Objection to form.
9       A.   It appears to be.
10      Q.   What was the purpose of forwarding
11  it to GM?
12      A.   As part of the closing of the
13  transaction they had to reimburse or pay off all
14  legal expenses that we had in addition to the
15  loans.
16      Q.   Do you know whether JPMorgan had an
17  engagement letter with Simpson Thacher with
18  respect to the synthetic lease transaction?
19      A.   I do not know.
20      Q.   Who would know that?
21      A.   I'm not sure.
22          MR. FISHER:  I'm going to ask the
23  court reporter to mark as Plaintiff's Exhibit 43
24  a document numbered JPMCB 1643 through 1645.
25          (Exhibit 43 for identification,

Duker, Richard W.                                      2/9/2010

                                                12 (Pages 45 to 48)

Page 45

1    Bates stamped JPMCB 1643 through 1645.)
2        Q.    Is the top portion of this exhibit
3    an e-mail that you received from Ryan Green?
4        A.    It appears to be, yes.
5        Q.    And Mr. Green refers to comments
6    received from trustee's counsel. Do you
7    remember who trustee's counsel was?
8        A.    No.
9        Q.    And who is the trustee being
10   referred to there?
11       A.    I don't recall.
12       Q.    Who is BTMU?
13       A.    BTMU is Bank of Tokyo Mitsubishi
14   who was an investor in the transaction.
15       Q.    Do you know whether JPMorgan
16   provided Mayer Brown with comments on any of the
17   closing documents that related to the payoff of
18   the synthetic lease?
19          MR. CALLAGY: Objection to the
20   form.
21       A.    I'm not aware of JPMorgan giving
22   any comments.
23       Q.    Turn to the second page of this
24   exhibit, there's an e-mail from you to Arun.
25   Does reading that e-mail refresh your

Page 46

1    recollection as to the closing date of the --
2    refresh your recollection as to what was the
3    closing date of the synthetic lease payoff?
4          MR. CALLAGY: Objection to the
5    form.
6        A.    It refers to October 30th. Whether
7    it actually closed that day, I just don't
8    whether it was the 30th or 31st.
9          MR. FISHER: I'm going to ask the
10   court reporter to please mark as Plaintiff's
11   Exhibit 44 a document numbered JPMCB 1092
12   through 1098.
13          (Exhibit 44 for identification,
14   Bates stamped JPMCB 1092 through 1098.)
15       Q.    There's reference in these e-mails
16   to a party identified as Guggenheim Partners.
17   Do you have an understanding as to what
18   Guggenheim Partners is?
19       A.    My recollection is that they were
20   related to the commercial paper issuer with that
21   managed that process.
22       Q.    And the commercial paper issuer,
23   was that RFC?
24       A.    I believe so, yes.
25       Q.    And there's discussion about RFC

Page 47

1    providing a drawdown notice.
2          MR. CALLAGY: Objection to form.
3        Q.    Generally speaking, do you know
4    what that refers to?
5          MR. CALLAGY: I'm sorry, what is
6    "that"?
7        Q.    "That" is a drawdown notice from
8    RFC.
9          MR. CALLAGY: Are you talking about
10   something in this document?
11          MR. FISHER: There's reference to
12   it in the document.
13       Q.    You can look at the document or
14   just testify from memory. I'm just trying to
15   get an understanding of what that was about.
16       A.    My recollection is that they had
17   certain requirements where they received funds
18   by a certain time of day, and if they don't,
19   they would draw down on the backup facility
20   banks that provided the liquidity backstop. So
21   our objective was not to have to fund loans and
22   repay them the same day. So we were trying to
23   make sure everything funded as early as
24   possible, otherwise they were going to have to
25   draw down from the banks that were not

Page 48

1    previously funded.
2        Q.    And JPMorgan was one of the
3    backstop facilities in the synthetic lease?
4        A.    Yes.
5        Q.    Do you recall whether the synthetic
6    lease payoff closed in a manner that allowed
7    JPMorgan to avoid the drawdown notice from RFC?
8          MR. CALLAGY: Objection to form.
9        A.    I believe that to be the case, yes.
10          MR. FISHER: I'll ask the court
11   reporter to mark as Plaintiff's Exhibit 45 a
12   document numbered JPMCB 1230 through 1232.
13          (Exhibit 45 for identification,
14   Bates stamped JPMCB 1230 through 1232.)
15       Q.    Mr. Duker, take whatever time you
16   need with this document. I don't expect to have
17   any substantive questions about it. My question
18   is simply whether the top portion of the first
19   page of this exhibit is an e-mail that you sent
20   to Mr. Green.
21       A.    It appears to be, yes.
22       Q.    And below that, is that e-mail an
23   e-mail that Mr. Green sent to you?
24       A.    It appears to be.
25       Q.    You can set that aside.

Duker, Richard W.                                    2/9/2010

13 (Pages 49 to 52)

Page 49

1          MR. FISHER:  I'll ask the court
2    reporter to mark as Plaintiff's Exhibit 46 a
3    one-page document numbered JPMCB 1803.
4          (Exhibit 46 for identification,
5    Bates stamped JPMCB 1803.)
6      Q.    Does this document refresh your
7    recollection as to the closing date payoff on
8    the synthetic lease?
9      A.    Yes.
10     Q.    What was the closing date?
11     A.    October 30th.
12     Q.    Who is David Walker?
13     A.    He's the investment banking
14   coverage person for General Motors.
15     Q.    And what was your understanding of
16   why Mr. Walker described the payoff as "good
17   news"?
18         MR. CALLAGY:  Objection to the
19   form.
20     A.    We were looking to reduce our
21   exposure to General Motors at the time.
22         MR. FISHER:  I'm going to ask the
23   court reporter to mark as Plaintiff's Exhibit 47
24   a document numbered JPMCB MLB 490 through 494.
25         (Exhibit 47 for identification,

Page 50

1    Bates stamped JPMCB MLB 490 through 494.)
2      Q.    Is this an e-mail that you
3    received?
4      A.    It appears to be, yes.
5      Q.    Who is Mr. Scheibe?
6      A.    He was one of the Morgan Lewis
7    representatives that we worked with on the
8    amendment to the Term Loan.
9      Q.    And do you recognize the attachment
10   to this e-mail?
11     A.    I don't recall the document, but.
12     Q.    What does it appear to you to be?
13     A.    It appears to be the fee letter
14   related to the first amendment.
15     Q.    Is that your signature on page 43?
16     A.    Yes.
17     Q.    Does looking at this fee letter
18   refresh your recollection as to the amount of
19   the fee that JPMorgan earned in connection with
20   the amendment of the Term Loan?
21     A.    Yes.
22     Q.    What was the amount of that fee?
23     A.    $6 million.
24     Q.    And how was that fee determined?
25     A.    I don't know.

Page 51

1      Q.    Is there some rule of thumb that
2    people in the industry use to calculate
3    arrangement fees?
4          MR. CALLAGY:  Objection to form.
5      A.    I don't know.
6      Q.    Is there someone else at JPMorgan
7    who was responsible for determining the fee?
8      A.    Donald Benson and David Walker
9    would likely have been responsible for
10   determining that fee.
11     Q.    Are both Mr. Benson and Mr. Walker
12   on the investment banking side?
13     A.    Yes.  Mr. Benson's in our
14   syndicated loan group.
15     Q.    One of the ccs on this e-mail is
16   Ann Kurinskas.  Who is Ms. Kurinskas?
17     A.    Ann Kurinskas is a special credits
18   officer with the bank.  With our bank.
19     Q.    Did she work with you on the payoff
20   of the -- did she work with you on the amendment
21   of the Term Loan?
22     A.    Yes.
23     Q.    Did she also work on the payoff of
24   the synthetic lease?
25     A.    No.

Page 52

1      Q.    Who is Kevin Kelly?
2      A.    Kevin Kelly is internal legal
3    counsel.
4          MR. FISHER:  I'm going to ask the
5    court reporter to mark as Plaintiff's Exhibit 48
6    a document numbered JPMCB-1-1.
7          (Exhibit 48 for identification,
8    Bates stamped JPMCB-1-1.)
9      Q.    Is this form of document familiar
10   to you?
11     A.    No.
12     Q.    Looking at it now, do you have any
13   understanding of what this is?
14     A.    I'm really not sure.
15     Q.    Did JPMorgan receive a wire
16   transfer from General Motors in March 2009 in
17   the amount shown on the face of this document?
18     A.    I don't know.
19     Q.    Who would know?  To your knowledge,
20   who at JPMorgan would be familiar with these
21   kinds of documents?
22         MR. CALLAGY:  Objection to form.
23     A.    Possibly our loan and agency group
24   might be familiar with this form.
25     Q.    During March 2009, were any

Duker, Richard W.                                                    2/9/2010

                                                        14 (Pages 53 to 56)

Page 53

1    transfers of money made to JPMorgan related to
2    the Term Loan?
3         MR. CALLAGY:  Objection to form.
4         A.   I don't know.
5         Q.   Do you know how frequently GM made
6    interest payments under the Term Loan?
7         A.   I don't recall.
8         Q.   Who would know the answer to that
9    question?
10        A.   Our loan and agency group.
11        Q.   And specifically as it relates to
12   the GM relationship, who in the loan and agency
13   group would know about any transfers that had
14   come in from GM?
15        A.   John Swint.
16        MR. FISHER:  I'm going to ask the
17   court reporter to mark as Plaintiff's Exhibit 49
18   an e-mail numbered JPMCB 217 to 218.
19        (Exhibit 49 for identification,
20   Bates stamped JPMCB 217 through 218.)
21        Q.   I'd like to start at the back of
22   this document, the second page, the last e-mail
23   on that page.  Is that an e-mail that you sent
24   to an address TCP_corporates@JPMChase.com?
25        A.   It appears to be, yes.

Page 54

1         Q.   Do you recognize that TCP address?
2         A.   Yes.
3         Q.   What is that address?
4         A.   It's Traditional Credit Products.
5    It's a middle office group that we can direct
6    inquiries to related to documents, loans, et
7    cetera.
8         Q.   Where is that group located?
9         A.   There's some people in New York,
10   some in Houston, I believe there are some in --
11   I'm not positive but I know there's also some
12   groups in Bangalore.
13        Q.   And the subject of the e-mail is
14   "GM Term Loan," and it says, "Can we get a
15   summary of legal/collateral documentation
16   including details on all UCC filings?"
17        Did you send that e-mail on May 6,
18   2009?
19        A.   It appears to be, yes.
20        Q.   Why did you make that inquiry on
21   May 6, 2009?
22        A.   At that point in time we were
23   concerned about the potential bankruptcy of GM
24   so we were getting all our ducks in a row
25   preparing for a potential filing.

Page 55

1         Q.   Eventually did you get the
2    information that you were asking for in this
3    e-mail?
4         MR. CALLAGY:  Objection to form.
5         A.   I don't believe I ever received
6    what I requested.
7         Q.   If you go up one e-mail, there's an
8    e-mail from someone named Vince.  Who is Vince?
9         A.   Vince Bolanini works in TCP
10   corporate.
11        Q.   Where is he located?
12        A.   He's in New York.
13        Q.   And is that an e-mail you received
14   from -- I'm sorry, I didn't catch his last name.
15        A.   Bolanini.
16        Q.   Is that an e-mail that you received
17   from Mr. Bolanini?
18        A.   It appears to be, yes.
19        Q.   And Mr. Bolanini writes, "For
20   collateral you need to send an e-mail to IB
21   Collateral Services."
22        Do you have an understanding as to
23   what IB Collateral Services is?
24        A.   I believe it's our group in Houston
25   that maintains copies of legal documents.

Page 56

1         Q.   And then he writes, "and for UCC:
2    Lien Perfection, Bangalore."  What does that
3    refer to?
4         A.   That's a group that tracks UCC
5    filings that we've made and continued.
6         Q.   Had you -- before you received this
7    e-mail, in connection with other work that
8    you've done at JPMorgan and its predecessors,
9    did you communicate with this Lien Perfection
10   Group in Bangalore?
11        A.   I don't recall.
12        Q.   To your recollection, is this the
13   first time that you communicated with that
14   group?
15        A.   I really don't know.
16        Q.   Your understanding of what this
17   group does, where does that understanding come
18   from?
19        A.   Hard to say.
20        Q.   You can't pinpoint a source.
21        A.   Yes.
22        Q.   It's just something you know.
23        A.   Yes.
24        Q.   Also continuing in this e-mail
25   there's a series of numbers under General Motors

Duker, Richard W.                                    2/9/2010

15 (Pages 57 to 60)

Page 57

1  Corporation.  There's a number next to UCN.  Do
2  you have an understanding as to what that number
3  refers to?
4       A.    It's a customer identification
5  number.
6       Q.    Is that an internal JPMorgan
7  number?
8       A.    Yes.
9       Q.    And is that the customer number
10 used to refer to GM?
11      A.    I don't know if that's the correct
12 number or not.
13      Q.    And then there's LIQ tracking
14 number.  What does that number refer to?
15      A.    That I don't know.
16      Q.    When you say that the Lien
17 Perfection Group in Bangalore tracks UCC
18 filings, do you know anything about their
19 practices?
20           MR. CALLAGY:  Objection to the
21 form.
22      A.    My only understanding is that
23 they -- when UCCs are filed, they register them
24 in their systems and they would be responsible
25 for notifying us if continuations are required.

Page 58

1  Or likely they'd contact the lawyers involved.
2       Q.    Do you know whether the Lien
3  Perfection Group in Bangalore runs any kind of
4  periodic reviews of UCCs filed for JPMorgan's
5  benefit?
6           MR. CALLAGY:  Objection to form.
7       A.    No, I don't.
8       Q.    Do you know whether the termination
9  statement that's at issue in this case was
10 registered by the Lien Perfection Group in
11 Bangalore?
12      A.    Not that I'm aware of.
13      Q.    Do you know that it was not or you
14 don't know one way or the other?
15      A.    I don't know.
16      Q.    And when you say that this Lien
17 Perfection Group registers UCC statements that
18 are filed, what do you mean by "register"?
19      A.    They input them into our system.
20 So for a transaction they would receive from our
21 counsel a list of UCCs that were filed.
22      Q.    And is that a system that you have
23 access to?
24      A.    No.
25      Q.    Who has access to that system that

Page 59

1  is the registry of UCC filings?
2       A.    I don't know.
3       Q.    Have you ever had to consult that
4  registry in connection with any of your work at
5  JPMorgan?
6       A.    Other than requesting documentation
7  related to the Term Loan, I don't recall any
8  other times.
9       Q.    So when you made this -- or really
10 when -- now I don't remember his name.  When
11 Mr. Bolanini copied Lien Perfection in Bangalore
12 on your request, was it your understanding that
13 they -- in other words, this group in Bangalore
14 would query the system to answer your question?
15      A.    Yes.
16      Q.    Aside from the Term Loan, did you
17 contact -- or did you ask for information
18 concerning other GM loans?
19           MR. CALLAGY:  Objection to form.
20      Q.    It's a bad question.  During this
21 period of time, May 2009 through the bankruptcy
22 filing on June 1, 2009, did you make requests
23 for information about UCC filings that related
24 to GM loans other than the Term Loan?
25      A.    Not aware of any.  The only other

Page 60

1  exposure we had related to the revolving credit
2  we weren't the admin agent or the collateral
3  agent on.
4       Q.    Looking at the first page of this
5  document, there is an e-mail in the middle of
6  the page from someone named Shwetha Ramesh.  Is
7  that an e-mail that you received?
8       A.    It appears to be, yes.
9       Q.    Did Mr. Ramesh send you what you
10 had asked for?
11      A.    No.
12      Q.    What did he send you?
13      A.    He sent me documentation related to
14 a previous facility that had been terminated.
15      Q.    And the previous facility is the
16 revolver?
17      A.    A different -- not the Citibank
18 revolver, but there was another revolver that we
19 had agented that was secured by the stock of
20 General Motors Acceptance Corp.
21      Q.    And then going up one e-mail,
22 there's an e-mail from you that says, "This
23 appears to be the collateral for a GM revolver
24 that has been canceled.  I am looking for the
25 collateral summary, copies of UCC filings, et

Duker, Richard W.                                    2/9/2010

16 (Pages 61 to 64)

Page 61

1  cetera for the $1.5 billion GM Term Loan.
2  Thanks."
3           Did anyone at JPMorgan get back to
4  you before the bankruptcy filing with an answer
5  to that -- with that specific information?
6           MR. CALLAGY:  Asked and answered.
7  You can answer again.
8      A.   I don't recall receiving it.
9      Q.   At any point in time did someone at
10  JPMorgan transmit that information to you?
11     A.   I don't remember.
12     Q.   Did you get that information from
13  some other source outside of JPMorgan?
14          MR. CALLAGY:  Objection to form.
15     A.   Could you repeat that?
16     Q.   Yes.  The UCC lien information
17  pertaining to the Term Loan that you were asking
18  about in May 2009, did you get that information
19  from any source during the period before the GM
20  bankruptcy filing?
21     A.   I don't know if I received it prior
22  to the bankruptcy.
23          MR. FISHER:  Why don't we just take
24  a short five-minute break.  Let me organize my
25  thoughts a little bit, which will help make this

Page 62

1  go as quickly as possible.
2           (Recess taken.)
3  BY MR. FISHER:
4      Q.   Mr. Duker, I've put back before you
5  Exhibit 49.  The May 6, 2009 e-mail that starts
6  off this chain on the second page, to your
7  knowledge is that the earliest request that you
8  made for a summary of UCC filings related to the
9  GM Term Loan?
10     A.   I don't know.
11     Q.   Are you aware of any specific
12  requests that you made earlier than May 6, 2009?
13     A.   No.
14     Q.   To your recollection, no one at
15  JPMorgan ever got back to you with a summary of
16  the UCC filings that related to the Term Loan?
17     A.   I don't recall receiving it.
18     Q.   What steps did you take to try to
19  get that information?
20          MR. CALLAGY:  Objection to form.
21  Other than what he --
22     Q.   Other than these e-mails, what
23  other steps did you take to retrieve this
24  information?
25     A.   I don't know if I took any other

Page 63

1  steps.
2      Q.   Did you ask anyone to perform a UCC
3  search?
4      A.   Not that I recall.
5           MR. FISHER:  I'm going to ask the
6  court reporter to mark as Plaintiff's Exhibit 50
7  a one-page document numbered JPMCB-1-2.
8           (Exhibit 50 for identification,
9  Bates stamped JPMCB-1-2.)
10     Q.   You've already testified,
11  Mr. Duker, that you're not familiar with this
12  form of document.
13     A.   That's correct.
14     Q.   And so I've put it before you only
15  to the extent that it may help refresh your
16  recollection as to what I'm about to ask you,
17  which is did JPMorgan receive any payments from
18  GM in May 2009?
19     A.   I don't know.
20     Q.   Would Mr. Swint know the answer to
21  that question?
22          MR. CALLAGY:  Objection to the
23  form.
24     Q.   Is that a question you would expect
25  Mr. Swint to know the answer to?

Page 64

1      A.   I believe so.
2           MR. FISHER:  I'm going to ask the
3  court reporter to mark as Plaintiff's Exhibit 51
4  a document numbered JPMCB-1-17 through 26.
5           (Exhibit 51 for identification,
6  Bates stamped JPMCB-1-17 through 26.)
7      Q.   Is this a document that you
8  recognize?
9      A.   No.
10     Q.   The heading on the document says
11  "5/27/09, General Motors interim interest
12  payment."  Do you know what that heading refers
13  to?
14     A.   It appears to be details on
15  lenders' pro rata share of an interest payment.
16     Q.   Do you believe that this refers to
17  an interest payment made under the Term Loan?
18     A.   I don't know.  It's possible.
19     Q.   Do you think that this is a
20  document that was prepared by someone at
21  JPMorgan?
22     A.   I don't know.  I'm not familiar
23  with it.
24     Q.   Is there anyone in your group who
25  was responsible for calculating the pro rata

Duker, Richard W.                                        2/9/2010

17 (Pages 65 to 68)

1   share of lenders under the Term Loan?
2       A.   Loan and agency group, John Swint.
3       Q.   Is John Swint the head of that
4   group?
5       A.   No.
6       Q.   He's just a member of that group?
7       A.   Yes.
8       Q.   Who else is in that group?
9       A.   That's a pretty big group.
10      Q.   But John Swint is someone who --
11  within the loan and agency group who had
12  responsibility for the GM relationship.
13      A.   At the time, yes.
14          MR. CALLAGY:  Objection to form.
15      Q.   Is Mr. Swint still with JPMorgan?
16      A.   I believe so, yes.
17          MR. FISHER:  I'm going to ask the
18  court reporter to mark as Plaintiff's Exhibit 52
19  a document numbered JPMCB 174 through 178.
20          (Exhibit 52 for identification,
21  Bates stamped JPMCB 174 through 178.)
22      A.   (The witness reviews the document.)
23      Q.   Looking at the first e-mail on the
24  first page of this exhibit, is that an e-mail
25  that you sent to Ms. Kurinskas?

1       A.   It appears to be, yes.
2       Q.   And would you describe, please,
3   what this e-mail concerns?
4       A.   I don't recall the specifics.  But
5   based on my reading of it, we were trying to
6   understand within the list of locations where we
7   had M&E collateral, which ones were going to be
8   sold to the new GM and which ones were closing.
9       Q.   So in part, is this an analysis of
10  a collateral value certificate that was provided
11  to you by GM?
12          MR. CALLAGY:  Objection to form.
13      A.   I don't think that's correct.
14      Q.   When you write in your e-mail at
15  the end of that first e-mail the total is 1.1
16  billion, what does that refer to?
17      A.   I don't recall.
18      Q.   Do you know whether that figure
19  refers to the book value of collateral at plants
20  that were scheduled to close?
21      A.   It appears to be.
22      Q.   Why were you undertaking this
23  analysis?
24      A.   Again, I don't remember exactly
25  what was going on at the time, but my

1   expectation is we wanted to make sure that there
2   was still plenty of collateral to support the
3   $1.5 billion Term Loan.
4       Q.   And did you form a view as to
5   whether there was sufficient collateral to
6   support the Term Loan?
7       A.   I don't know if we formed a view.
8          MR. CALLAGY:  Mr. Fisher, you seem
9   to be going to a question about the value of the
10  collateral, which we believe is beyond the scope
11  of the proceeding that you've commenced.  So I
12  don't know if you're going to continue with
13  that, but we would object to the continuation of
14  those types of questions.
15          MR. FISHER:  It's all right.  I
16  note the objection.  I don't expect to have very
17  much more on that topic.  It's an issue that
18  perhaps we should discuss off the record as
19  well.
20      Q.   Sitting here today, are you aware
21  that an attorney at Mayer Brown executed an
22  affidavit, signed an affidavit that concerns the
23  circumstances under which the termination
24  statement was filed?
25      A.   Yes.

1       Q.   Did you become aware of that
2   through counsel or some other way?
3       A.   Through counsel.
4       Q.   Were you involved in any way in the
5   preparation of that affidavit?
6       A.   No.
7       Q.   Do you know who prepared that
8   affidavit?
9       A.   No.
10      Q.   Have you ever seen that affidavit?
11      A.   Yes.
12      Q.   I'm handing you what's previously
13  been marked as Exhibit 6.  And I'll represent
14  that I don't see your name anywhere on the first
15  page of this exhibit.
16          Have you seen that e-mail that
17  appears on the first page before?  The first
18  page of that transmittal e-mail with the
19  message, have you ever seen that before?
20      A.   It looks familiar, yes.
21      Q.   And if you look at the next page
22  and continuing, is that the Mayer Brown
23  affidavit that you recall having seen before
24  today?
25      A.   Yes.

Duker, Richard W.                                    2/9/2010

18 (Pages 69 to 72)

Page 69

1      Q.    And would you turn, please, to page
2    93 of this exhibit.  Do you recognize the
3    document that begins on page 93 and concludes on
4    page 104?
5      A.    Yes, this was the termination
6    agreement authorizing the termination of the
7    synthetic lease transaction.
8      Q.    And page 96, is that your
9    signature?
10     A.    Yes.
11     Q.    And who prepared this termination
12   agreement?
13     A.    I believe it was prepared by Mayer
14   Brown.
15     Q.    And this affidavit, the Robert
16   Gordon affidavit, is dated June 18, 2009.  Did
17   you learn that the termination statement that's
18   at issue in this case had been filed prior to
19   June 18, 2009?
20     A.    I believe so.
21     Q.    Can you say how much prior?  I'm
22   coming back to something that came up at the
23   beginning of the deposition, which is just
24   trying to identify when you learned for the
25   first time.

Page 70

1      A.    I don't recall.
2      MR. CALLAGY:  He said he believes
3    it was after the filing of the General Motors
4    bankruptcy filing.
5      MR. FISHER:  Yes.
6      Q.    So it was after the GM -- to the
7    best of your knowledge, it was after the GM
8    Chapter 11 case was commenced and on or before
9    June 18, 2009.
10     A.    Correct.
11     Q.    Sitting here today, do you know
12   whether there's anyone at JPMorgan who learned
13   that the termination statement had been filed
14   before the GM bankruptcy filing?
15     A.    No.
16     Q.    Just so that I understand your
17   answer, is it that you don't know whether
18   there's someone else who may have learned
19   before, or you know that there's no one who did?
20     A.    I'm not aware of anyone who knew.
21     Q.    Did you complain to anyone at
22   JPMorgan about the fact that the Lien Perfection
23   Group in Bangalore had not gotten you a UCC
24   summary for the Term Loan?
25     A.    Not that I recall.

Page 71

1      Q.    Were you concerned that you had
2    made a request on May 6, 2009 and to your
3    recollection never received the UCC summary that
4    you had requested?
5      A.    Could you repeat that, please?
6      Q.    Were you concerned by the fact that
7    you had made a request for UCC summary
8    information about the Term Loan on May 6, 2009
9    and that you never received that information?
10     MR. CALLAGY:  Objection to the
11   form.
12     A.    I don't recall being concerned, no.
13     Q.    Sitting here today, you know that
14   the termination statement that's at issue in
15   this case was filed in October 2008, correct?
16     A.    Sitting here today, yes.
17     Q.    Do you have an understanding as to
18   how the fact of that filing back in October 2008
19   comes to the attention of the Lien Perfection
20   Group in Bangalore?
21     MR. CALLAGY:  Objection.  Would you
22   read that back, please.
23     (The pending question was read.)
24     MR. CALLAGY:  Who says it did?  I'm
25   sorry, objection to the form of the question.

Page 72

1      Q.    Can you answer the question?
2      A.    I'm not aware that they were
3    notified.
4      Q.    Is it your understanding that --
5    and I'm not talking about the specific
6    termination statement at issue in this case, but
7    generally, is it your understanding that the job
8    of the Lien Perfection Group is to register UCC
9    filings that relate to JPMorgan collateral?
10     MR. CALLAGY:  Objection to form.
11     A.    If you mean to register them and
12   file them, no.
13     Q.    I mean register them as in --
14     A.    On our books and records.
15     Q.    And put them into JPMorgan's books
16   and records.
17     A.    Yes.
18     Q.    The answer is yes?
19     A.    Yes.  I'm not aware that the bank
20   is notified of UCC-3 terminations.  So to my
21   point before, I'm not sure whether they would
22   have received notification of a termination.
23     Q.    And I guess I'm asking -- do you
24   have any understanding of how they go about
25   performing that function -- withdrawn.

Duker, Richard W.                                    2/9/2010

19 (Pages 73 to 76)

Page 73

1          Do you have any understanding of
2    how they get the information that's necessary
3    for them to input UCC financing statement
4    information into JPMorgan's system?
5          A.   I believe they received a closing
6    checklist from our external counsel listing the
7    UCCs that were filed in conjunction with a new
8    transaction.
9          Q.   And in connection with the payoff
10   of the synthetic lease transaction, do you know
11   whether the Lien Perfection Group in Bangalore
12   received a copy of the closing checklist?
13         A.   I'm not aware of them receiving
14   that.
15         Q.   But not speaking about the
16   synthetic lease transaction, your understanding
17   is that in general they would receive such a
18   closing checklist from JPMorgan's counsel on the
19   transaction?
20         MR. CALLAGY:  Objection to form.
21         A.   Related to new transactions, yes.
22   I do not know -- I have no idea if they receive
23   closing checklists related to closings --
24   terminations of transactions.
25         Q.   Aside from Mr. Ramesh who we saw on

Page 74

1    an e-mail, do you know any of the other
2    individuals who are part of this Lien Perfection
3    Group in Bangalore?
4          A.   No.
5          Q.   Do you know how many people work in
6    the Lien Perfection Group in Bangalore?
7          A.   No.
8          MR. FISHER:  I'm going to ask the
9    court reporter to mark as Plaintiff's Exhibit 53
10   a document with the number JPMCB 75.
11         (Exhibit 53 for identification,
12   Bates stamped JPMCB 75.)
13         Q.   That e-mail address,
14   TCP_Corporates, during this period of time did
15   that e-mail address go to Mr. Bolanini?
16         A.   It's possible he received this.
17         Q.   Is this an e-mail that you sent on
18   June 22nd, 2009?
19         A.   It appears to be, yes.
20         Q.   At this point in time why is it
21   that you were asking for documentation received
22   in connection with the payoff of the synthetic
23   lease?
24         A.   I don't recall exactly, but I
25   expect that I wanted to see if we received any

Page 75

1    closing documentation related to the synthetic
2    lease closing in October of '08.
3          Q.   Were you inquiring because at this
4    point in time you knew that the termination
5    statement had been filed in connection with the
6    closing of the synthetic lease transaction?
7          A.   Yes, I knew that at this point.
8          Q.   And that's why you were asking for
9    the information?
10         A.   I believe so.
11         Q.   Earlier when you talked about
12   closing checklists going to the Lien Perfection
13   Group in Bangalore, was it JPMorgan's practice
14   to also have a copy of the closing checklist
15   sent to the TCP Corporates e-mail address?
16         MR. CALLAGY:  Objection to the
17   form.
18         A.   I don't know.
19         Q.   Do you recall whether you received
20   the documentation that you were asking for in
21   this request?
22         A.   I don't recall receiving anything.
23         MR. FISHER:  I'm going to ask the
24   court reporter to mark as Plaintiff's Exhibit 54
25   a document numbered JPMCB 69.

Page 76

1          (Exhibit 54 for identification,
2    Bates stamped JPMCB 69.)
3          Q.   Is the bottom e-mail an e-mail that
4    you sent to Evelyn Dixon?
5          A.   It appears to be, yes.
6          Q.   Who is Ms. Dixon?
7          A.   Evelyn Dixon works in our loan
8    documentation -- the group that keeps our loan
9    documentation.
10         Q.   And did you receive from Ms. Dixon
11   the information you were asking for?
12         A.   I don't recall.
13         Q.   And then going up an e-mail, it
14   appears that you forwarded your e-mail to
15   Ms. Dixon to Ms. Rarich and Ms. Tippitt.  Who
16   are they?
17         A.   I believe they were other
18   individuals that worked in the same group.
19         Q.   And did you get a response from
20   them?
21         A.   I don't recall.
22         MR. FISHER:  I'm going to ask the
23   court reporter to mark as Plaintiff's Exhibit 55
24   a document numbered JPMCB-1-287 through 289.
25         (Exhibit 55 for identification,

Duker, Richard W.                                    2/9/2010

20 (Pages 77 to 80)

Page 77

1    Bates stamped JPMCB-1-287 through 289.)
2        Q.    Is that a letter that you sent on
3    or about June 30, 2009?
4        A.    Yes.
5        Q.    Towards the bottom of the first
6    page there's reference to amounts outstanding
7    under the loan agreement and the other loan
8    documents.  And the number there is in excess of
9    1.4 billion.
10            Do you know whether the amount
11    stated there was ultimately transferred from GM
12    to JPMorgan?
13        A.    I don't recall, but I would assume
14    so.
15        Q.    On the second page of that exhibit,
16    next to the entry that has a C next to it
17    there's a $3.8 million number for estimated
18    LIBOR breakage costs.  What does that refer to?
19        A.    Generally in credit agreements, if
20    a borrower puts on a loan for some period of
21    time, whether it be three months, six months,
22    since banks match fund, that loan, if it's
23    broken early, there may be costs associated with
24    having to reinvest those funds at a different
25    interest rate.  So credit agreements provide for

Page 78

1    lenders to be reimbursed for any loss that they
2    incur related to the breakage of those loans.
3        Q.    And the next entry on that list is
4    an amount $448,884 in fees and disbursements of
5    Morgan Lewis.  What do those fees and
6    disbursements relate to?
7        A.    I don't have specifics but in
8    conjunction with their work on the first
9    amendment and thereafter up through this date.
10        Q.    And following the payoff of the
11    Term Loan, was a UCC amendment filed terminating
12    the financing statement that relates to the Term
13    Loan?
14        A.    I don't know.
15            MR. FISHER:  I'm going to ask the
16    court reporter to mark as Plaintiff's Exhibit 56
17    a document numbered JPMCB MLB 2387 to 2388.
18            (Exhibit 56 for identification,
19    Bates stamped JPMCB MLB 2387 through 2388.)
20        Q.    Mr. Duker, I don't see you anywhere
21    on this e-mail chain.  Have you previously seen
22    any of these e-mails before?
23        A.    I don't recall seeing this.
24        Q.    You do recall?
25        A.    I don't recall.

Page 79

1        Q.    And you don't know one way or
2    another whether a termination statement was
3    filed following the payoff of the Term Loan?
4        A.    I do not.
5        Q.    Were you involved in the
6    documentation that concerned the payoff of the
7    Term Loan?
8        A.    I was involved in the preparation
9    of the payoff letter.  That's the only thing I
10    recall.
11        Q.    Earlier when we looked at the
12    Gordon affidavit, we looked at an exhibit which
13    was something called the termination agreement
14    that related to the synthetic lease.  Do you
15    know whether there was any termination agreement
16    that related to the payoff of the Term Loan?
17            MR. CALLAGY:  Objection to the
18    form.
19        A.    I'm not aware of any.
20        Q.    In connection with the synthetic
21    lease -- the payoff of the synthetic lease
22    transaction, it's your understanding that Mayer
23    Brown, borrower's counsel, caused the mistake in
24    the termination statement to be filed?
25            MR. CALLAGY:  Objection to form.

Page 80

1        A.    I believe so.
2        Q.    And in your experience, is it
3    typical for borrower's counsel to file
4    termination statements?
5        A.    Situations vary.  I've seen it
6    before.
7        Q.    In your experience, how does the
8    borrower's counsel learn -- withdrawn.
9            Have you been involved in other
10    transactions, aside from the payoff of this
11    synthetic lease transaction, where borrower's
12    counsel caused the filing of the termination
13    statements?
14        A.    I'm not aware of specific examples,
15    but it would not be unusual.
16        Q.    Do you generally think that you
17    have been involved in such transactions and you
18    just can't recall any specific transaction right
19    now?
20        A.    Yes.
21        Q.    And do you know whether in those
22    other transactions there was a document called a
23    termination agreement?
24        A.    I don't know.
25        Q.    Can you think of any specific

Duker, Richard W.                                    2/9/2010

21 (Pages 81 to 84)

Page 81

1    transaction that you were involved with, aside
2    from the payoff of the synthetic lease, in which
3    borrower's counsel arranged for any UCC
4    termination statements to be filed?
5         A.    No.
6         Q.    In an effort to make this exhibit
7    somewhat more legible, we blew it up, but it
8    still is somewhat hard to read.
9              MR. FISHER:  I'm going to ask the
10   court reporter to mark as Plaintiff's Exhibit 57
11   a document numbered JPMCB-1-27 through 31.
12             (Exhibit 57 for identification,
13   Bates stamped JPMCB-1-27 through 31.)
14        Q.    Is Plaintiff's Exhibit 57 a
15   document that you recognize?
16        A.    No.
17        Q.    Do you have any understanding as to
18   who prepared this document?
19        A.    I do not.
20        Q.    Do the names listed on this
21   document appear to you to be parties who were
22   lenders under the Term Loan as of the date that
23   the Term Loan was paid off?
24        A.    I don't know the answer.
25        Q.    Who would know the answer to that?

Page 82

1         A.    The loan and agency group.
2         Q.    And in the loan and agency group,
3    specifically would that be Mr. Swint?
4         A.    Yes.
5              MR. FISHER:  John, if it's okay
6    with you, why don't we take a short break and I
7    think I may be either done or very close to
8    done.
9              MR. CALLAGY:  Okay.
10             (Recess taken.)
11   BY MR. FISHER:
12        Q.    I just have a few more questions.
13             Mr. Duker, did you do anything to
14   prepare for today's deposition?
15        A.    Yes.
16        Q.    Did you meet with anyone to prepare
17   for today's deposition?
18        A.    Yes.
19        Q.    Who did you meet with?
20        A.    My colleagues here from Kelley
21   Drye.
22        Q.    Anyone else?
23        A.    No.
24        Q.    And concerning the termination
25   statement that's the subject of this lawsuit,

Page 83

1    aside from counsel, have you had any discussions
2    with anyone about that termination statement?
3              MR. CALLAGY:  Other than he's
4    testified, you asked him questions about it
5    throughout the course of the day.
6         Q.    Other than anything as to which you
7    may have already testified, can you think of
8    anyone else with whom you've had a discussion
9    about the termination statement who was not
10   serving as counsel to JPMorgan?
11        A.    I'm sure it's come up by this
12   point.  I'm just trying to remember any
13   specifics.  I do now recall that we had a
14   meeting with some senior people in the bank,
15   Steve Black.
16             MR. CALLAGY:  Counsel was at that
17   meeting.  You can identify who was there but not
18   to say what was discussed.
19        A.    Counsel from Morgan Lewis was in
20   attendance, internal counsel.  I don't recall
21   who was all there when this topic came up.
22        Q.    When was that meeting?
23        A.    I don't know.
24        Q.    Was it after -- it was sometime
25   after you had already known that the termination

Page 84

1    statement had been filed?
2         A.    Yes.
3         Q.    Since learning that the termination
4    statement had been filed, have you had
5    communications with Mr. Merjian?
6         A.    I have not.
7         Q.    I thank you for your time, I don't
8    have any further questions.
9              MR. CALLAGY:  I have no questions.
10             (TIME NOTED:  12:48 p.m.)
11
12        _____
13
14        RICHARD W. DUKER
15
16   Subscribed and sworn to before me
16   this _____ day of _____, 2010.
17
18   _____
19
20
21
22
23
24
25

Duker, Richard W.                                              2/9/2010

22 (Pages 85 to 88)

Page 85

```
 1              C E R T I F I C A T E
 2   STATE OF NEW YORK  )
 3                       : ss.
 4   COUNTY OF NEW YORK )
 5
 6          I, SUZANNE PASTOR, a Shorthand
 7   Reporter and Notary Public within and for the
 8   State of New York, do hereby certify:
 9          That RICHARD W. DUKER, the witness
10   whose deposition is hereinbefore set forth, was
11   duly sworn by me and that such deposition is a
12   true record of the testimony given by the
13   witness.
14          I further certify that I am not
15   related to any of the parties to this action by
16   blood or marriage, and that I am in no way
17   interested in the outcome of this matter.
18          IN WITNESS WHEREOF, I have hereunto
19   set my hand this ____ day of _____, 2010.
20
21
22
23        _____
24        SUZANNE PASTOR
25
```

Page 86

```
 1   STATE OF NEW YORK.  )
 2                       ss:
 3   COUNTY OF NEW YORK  )
        I wish to make the following changes, for the
 4   following reasons:
 5   PAGE LINE _____
             CHANGE FROM:_____
 6           CHANGE TO:_____
     REASON: _____
 7
     ____ _____ CHANGE FROM:_____
 8           CHANGE TO:_____
     REASON: _____
 9
             CHANGE FROM:_____
10           CHANGE TO:_____
     REASON: _____
11
     ____ _____ CHANGE FROM:_____
12           CHANGE TO:_____
     REASON: _____
13
             CHANGE FROM:_____
14           CHANGE TO:_____
     REASON: _____
15
     ____ _____ CHANGE FROM:_____
16           CHANGE TO:_____
     REASON: _____
17
             CHANGE FROM:_____
18           CHANGE TO:_____
     REASON: _____
19
20        _____
21   Subscribed and sworn to before me
22   this _____ day of _____, 2010.
23
24        _____
25
```

Page 87

```
 1   ------------------INDEX----------------------
 2   WITNESS       EXAMINATION BY        PAGE
 3   Mr. Duker    Mr. Fisher
 4
 5   ----------------EXHIBITS--------------------
 6   PLAINTIFF'S    DESCRIPTION         PAGE
 7   Exhibit 36  JPMCB-1-60 through 1-26      12
 8   Exhibit 37  JPMCB CSM 112 through 158    13
 9   Exhibit 38  MB 5358 through 5362     14
10   Exhibit 39  JPMCB STB 896 through 1033   15
11   Exhibit 40  JPMCB 231 through 232        29
12   Exhibit 41  JPMCB 944 through 945        33
13   Exhibit 42  JPMCB STB 363 through 365    43
14   Exhibit 43  JPMCB 1643 through 1645      44
15   Exhibit 44  JPMCB 1092 through 1098      46
16   Exhibit 45  JPMCB 1230 through 1232      48
17   Exhibit 46  JPMCB 1803              49
18   Exhibit 47  JPMCB MLB 490 through 494    49
19   Exhibit 48  JPMCB-1-1               52
20   Exhibit 49  JPMCB 217 through 218        53
21   Exhibit 50  JPMCB-1-2               63
22   Exhibit 51  JPMCB-1-17 through 26        64
23   Exhibit 52  JPMCB 174 through 178        65
24   Exhibit 53  JPMCB 75                74
25   Exhibit 54  JPMCB 69                76
```

Page 88

```
 1   EXHIBIT INDEX (Continued):
 2   EXHIBIT       DESCRIPTION         PAGE
 3   Exhibit 55  JPMCB-1-287 through 289      76
 4   Exhibit 56  JPMCB MLB 2387 through 2388  78
 5   Exhibit 57  JPMCB-1-27 through 31        81
 6
 7
 8
 9        (Exhibits retained by counsel.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

09-00504-reg    Doc 41-7    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 7
Pg 1 of 2

# EXHIBIT 7

**Sylve, Frances**

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Tuesday, October 07, 2008 3:21 PM |
| **To:** | Perlowski, Michael J. |
| **Cc:** | Gonshorek, Stewart C. |
| **Subject:** | GM - 00652500 |

Per my voice message, please run full UCC searches relating to the following:

Borrower: General Motors Corporation

Agent: JPMorgan Chase Bank

States: Michigan and Delaware

I would like a list of the UCCs that need to be terminated. Let me know if you need anything else.

Thanks,
Ryan

_____

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com



EXHIBIT NO. 1
Perlowski

Kelly A. Siska

1

CONFIDENTIAL                                                    MB001110

**A2720**

# EXHIBIT 8

# A2721

EXHIBIT NO. 2
Perlowski

Kelly A. Siska

## Sylve, Frances

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Tuesday, October 07, 2008 5:17 PM |
| **To:** | Perlowski, Michael J. |
| **Subject:** | RE: General Motors Corporation  / JPMorgan--- Delaware Financing Statement Filings |

Per our conversation, the trust under this facility is Auto Facilities Real Estate Trust 2001-1.

Ryan

| | |
|---|---|
| **From:** | Perlowski, Michael J. |
| **Sent:** | Tuesday, October 07, 2008 4:39 PM |
| **To:** | Green, Ryan |
| **Cc:** | Gonshorek, Stewart C. |
| **Subject:** | General Motors Corporation  / JPMorgan--- Delaware Financing Statement Filings |

Ryan --

Any effective financing statement of record against General Motors Corporation ("GM") would be of record with the Office of the Delaware Secretary of State.  GM was formed in Delaware.

I completed a search identical to the one you requested earlier in the year for Jamie.  Given that as of May 7, 2008 there were 1,777 filings of record against GM in Delaware, we obtained a list of filings of record against GM and requested copies of those filings in favor of JPMorgan Chase Bank which are attached below.

A full search against GM in Delaware would amount to a significant sum.  Please let me know if we need to obtain a current list of filings of record against GM in Delaware or if what we did earlier this year is sufficient for your purposes.

-- Mike

| | |
|---|---|
| **From:** | Perlowski, Michael J. |
| **Sent:** | Wednesday, June 04, 2008 6:46 PM |
| **To:** | Romick, Jamie L. |
| **Cc:** | Hardy, Cole C. |
| **Subject:** | GM Facilities Trust No. 1999-1 -- Wells Fargo / JPMorgan Delaware Financing Statement Filings |

<< File: Part I-- GM Facilities Trust.pdf >>  << File: Part II - GM Facilities Trust.pdf >>  << File: JPMorgan Filings.pdf >>

Jamie --

Attached are the results of the search we conducted for financing statements made of record against GM Facilities Trust No. 1999-1 with the Office of the Delaware Secretary of State.

The following filings are still active, specifically:

1.)   in lieu of filing as to a financing statement originally filed in Maryland as to certain real property located in Baltimore County, Maryland in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4193449 8, file date July 9, 2004) ---- (Wilmington Trust Company, as Owner Trustee, also named as Debtor)

2.)   in lieu of filing as to a financing statement originally filed in Tennessee as to certain real property located in Shelby County, Tennessee in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4193457 1, file date July , 2004) ---- (Wilmington Trust Company, as Owner Trustee, also named as Debtor)

3.)   in lieu of filing as to a financing statement originally filed in West Virginia as to certain real property located in

1

MB001104



Berkeley County, West Virginia in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4193467 0, file date July 9, 2004)

4.) financing statement as to certain real property located in Baltimore County, Maryland in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4200984 5, file date July 16, 2004) ---- (Wilmington Trust Company, as Owner Trustee, also named as Debtor)

5.) financing statement as to certain real property located in Shelby County, Tennessee in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4200996 9, file date July 16, 2004) ---- (Wilmington Trust Company, as Owner Trustee, also named as Debtor)

6.) financing statement as to certain real property located in Bucks County, Pennsylvania in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4201007 4, file date July 16, 2004) ---- (Wilmington Trust Company, as Owner Trustee, also named as Debtor)

7.) financing statement as to certain real property located in Berkeley County, West Virginia in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4201028 0, file date July 16, 2004)

8.) financing statement as to certain real property located in Denton County, Texas in favor of Wells Fargo Bank Northwest, N.A., as Agent (file number 4201031 4, file date July 16, 2004)

Also attached hereto are copies of active financing statements that are of record in Delaware against General Motors Corporation and in favor of JPMorgan Chase Bank, specifically:

1.) filing as to leased equipment and related collateral (subsequently assigned to The Bank of New York Trust Company, N.A.) (file number 2085254 5, file date    April 5, 2002)

2.) blanket-type filing as to certain real property located in Marion County, Indiana and Will County, Illinois (file number 2092526 7, file date April 12, 2002)

3.) filing as to certain equipment and fixtures and related collateral located at certain specific facilities (file number 6416808 4, file date November 30, 2006)

Please let me know if you have any questions or if I can be of any other assistance.

--- Mike

| | |
|---|---|
| From: | Perlowski, Michael J. |
| Sent: | Monday, June 02, 2008 11:05 AM |
| To: | Romick, Jamie L. |
| Subject: | General Motors Corporation — Wells Fargo / JPMorgan Delaware Financing Statement Filings |

Jamie --

There are a number of attachments to each of the Wells Fargo filings and each UCC amendment or filing subsequent to the original financing statement filing is deemed a separate copy request. The Secretary of State won't limit copy requests to face pages or original filings only with the result that our request for documents will cost approximately $1,000 - $1,500.   If the attachments to the filings are particularly lengthy, the costs could exceed $1,500.

Please let me know if you want to proceed with the copy request.

----- Mike

2

CONFIDENTIAL

| From: | Romick, Jamie L. |
|---|---|
| Sent: | Friday, May 30, 2008 4:55 PM |
| To: | Perlowski, Michael J. |
| Cc: | Hardy, Cole C. |
| Subject: | FW: General Motors Corporation -- Wells Fargo / JPMorgan Delaware Financing Statement Filings |

Mike,

Thanks for this. Please send me the following:

-copies of the 3 active JP Morgan UCC's
- since you say it's just a nominal fee, let's get copies of the Wells Fargo UCC's that you list below that are active. I'd like to run through them to be safe.

For Auto Facilities Trust- was there a time period you limited your search to? I see that you found no results and just wanted to see if that was perhaps because we narrowed our search to a specific time frame.

I note that we didn't ask you for one key search: GM Facilities Trust No. 1999-1, as debtor, Wells Fargo as secured party.

How long will it take to get all of this?

Cole, after I review the above I'll let you know if any of them are applicable.

Thanks so much,

Jamie

**Jamie L. Romick**
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone: 312-701-8942
Fax: 312-706-8426
Email: jromick@mayerbrown.com

| From: | Perlowski, Michael J. |
|---|---|
| Sent: | Thursday, May 22, 2008 1:20 PM |
| To: | Hardy, Cole C.; Romick, Jamie L. |
| Subject: | General Motors Corporation -- Wells Fargo / JPMorgan Delaware Financing Statement Filings |

<< File: Auto Facilities Real Estate Trust.pdf >>  << File: JPMorgan.pdf >>  << File: Wells Fargo.pdf >>

Cole / Jamie --

    As of May 7, 2008, there had been 1,777 financing statements made of record against General Motors Corporation with the Office of the Delaware Secretary of State. We obtained a list of the filings from the Secretary of State's office, excerpts of which are attached hereto.

    With respect to filings made in favor of JPMorgan Chase, there appear to have been six (6) made of record, three (3) of which still appear to be effective. The filing dates are as follows:

    1.)  April 5, 2002

    2.)  April 12, 2002

    3.)  September 13, 2002  (terminated December 26, 2007)

3

CONFIDENTIAL



4.) September 17, 2002 (terminated December 26, 2007)

5.) November 30, 2006

6.) June 22, 2007 (terminated January 7, 2008)

As for filings made in favor of Wells Fargo Bank Northwest, National Association, there appear to have been fifty-six (56) made of record, only one (1) of which appears to have been terminated. The filing dates for those financing statements still active are as follows:

1.) December 19, 2001 (eight filings were effected on December 19, 2001)

2.) December 23, 2003

3.) March 24, 2004

4.) July 2, 2004

5.) July 9, 2004 (four filings were effected on July 9, 2004)

6.) July 16, 2004 (seven filings were effected on July 16, 2004)

7.) September 14, 2004

8.) September 17, 2004 (six filings were effected on September 17, 2004)

9.) September 20, 2004

10.) September 30, 2004 (five filings were effected on September 30, 2004)

11.) October 26, 2004

12.) October 28, 2004

13.) March 28, 2005

14.) March 30, 2005 (six filings were effected on March 30, 2005)

15.) April 5, 2005 (five filings were effected on April 5, 2005)

16.) April 11, 2005 (six filings were effected on April 11, 2005)

17.) June 23, 2005

We also conducted a search for filings of record in Delaware against Auto Facilities Real Estate Trust No. 2001-1. The search reported no filings of record. The results of the search are attached hereto with copies of selected pages from the list of filings effected against General Motors Corporation.

I'm unsure which filings, if any, might be responsive to your requests. You indicated that the JPMorgan filing would likely have been effected in May 2003. There would appear not to have been any filings effected against GM by JPMorgan in 2003. In any event, we could obtain copies of all of the JPMorgan filings at a nominal cost.

As for the Wells Fargo filings, there wouldn't appear to be any filings specific, or even close, to the 1999, 2000 and 2002 dates.

Please let me know how you might want to proceed.

-- Mike

4

**CONFIDENTIAL**



**MB001107**



| From: | Hardy, Cole C. |
|---|---|
| Sent: | Tuesday, May 13, 2008 1:43 PM |
| To: | Perlowski, Michael J. |
| Subject: | RE: |

Mike,

I was able to look up the months and years of the closings for the properties

*Secured Parties*
<u>JPMorgan Chase Bank</u>
- MS Property - May 5, 2003

<u>Wells Fargo Bank Northwest, N.A.</u>
- TN Property - November 18, 1999
- WV Property - April 25, 2000
- PA Property - March 22, 2002

Sorry for the confusion.

Cole

| From: | Perlowski, Michael J. |
|---|---|
| Sent: | Tuesday, May 13, 2008 12:38 PM |
| To: | Hardy, Cole C. |
| Cc: | Romick, Jamie L. |
| Subject: | RE: |

Some might consider that to be somewhat of a broad timeframe.   Do you know when the financings would have closed in 1999 or 2004, what month??



| From: | Hardy, Cole C. |
|---|---|
| Sent: | Tuesday, May 13, 2008 12:32 PM |
| To: | Perlowski, Michael J. |
| Cc: | Romick, Jamie L. |

Mike,

They should've been filed in either 1999 or 2004 (some properties were refinanced then).  The secured parties would have been JPMorgan Chase Bank (MS property) or Wells Fargo Bank Northwest, N.A. (TN, WV and PA properties).  Thanks.  Let me know if you need anymore information.

Cole

| From: | Perlowski, Michael J. |
|---|---|
| Sent: | Tuesday, May 13, 2008 12:27 PM |
| To: | Hardy, Cole C. |
| Cc: | Romick, Jamie L. |
| Subject: | RE: |

Cole --

The UCC records are organized by Debtor name, not by collateral description.  As you know, a search against General Motors would produce hundreds of filings.  Do you have a timeframe, a short one, during which the financing statements to be terminated might have been made of record and who the secured parties might have been?

-- Mike

| From: | Hardy, Cole C. |
|---|---|

5

CONFIDENTIAL

MB001108

**Sent:**          Tuesday, May 13, 2008 10:36 AM
**To:**            Perlowski, Michael J.
**Cc:**            Romick, Jamie L.
**Subject:**

Mike,

I was wondering if you could search for UCCs filed with the Delaware SOS for the following entities as debtors:

1) General Motors Corporation
2) Auto Facilities Real Estate Trust No. 2001-1

The property in the deal is located in the following town:

Brandon, Rankin County, Mississippi

ALSO,

I need any UCCs filed with the Delaware SOS with General Motors as the Debtor for the following properties:

200 Cabot Blvd. E., Langhorne, PA 19047
5115 Pleasant Hill Rd., Memphis, TN 38118
608 Caperton Blvd., Martinsburg, WV 25401

The purpose of these searches is for UCC Terminations.

Matter Number is 07146537.  Thanks.

Cole

6

CONFIDENTIAL                                          MB001109

**A2727**

09-00504-reg    Doc 41-9    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 9
Pg 1 of 8

# EXHIBIT 9

**Gonshorek, Stewart C.**

| | |
|---|---|
| From: | Perlowski, Michael J. |
| Sent: | Thursday, October 09, 2008 1:37 PM |
| To: | Green, Ryan |
| Cc: | Gonshorek, Stewart C. |
| Subject: | Auto Facilities Real Estate Trust 2001-1 / General Motors Corporation--JPMorgan |
| Attachments: | Auto Facilities Real Estate Trust 2001-1.pdf; GM - JPMorgan -- Indiana.pdf; GM - JPMorgan -- equipment -- fixtures.pdf |

      

Auto Facilities Real    GM - JPMorgan --    GM - JPMorgan --
Estate Tr...            Indiana.pdf (...      equipment -- ...

Ryan --

Attached are copies of the two active financing statements of record in Delaware against General Motors Corporation and in favor of JPMorgan Chase Bank and the results of a search conducted with the Office of the Delaware Secretary of State for financing statements of record against Auto Facilities Real Estate Trust 2001-1.

The filings in favor of JPMorgan Chase Bank, as Administrative Agent, are as follows:

1.) blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 20092826724, file date April 12, 2002); and

2.) financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities (file number 64160664, file date November 30, 2006).

As for Auto Facilities Real Estate Trust 2001-1, the active filings of record are as follows:

1.) blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 20092662, file date April 12, 2002); and

2.) blanket-type financing statement as to real property and related collateral located in Wayne County, Michigan (file number 2007 1919660, file date May 21, 2007).

Please let me know if you have any questions or if I can be of any other assistance.

--- Mike

EXHIBIT NO. 3
Perlowski

Kelly A. Siska

1

CONFIDENTIAL                                                    MB002414

# A2729

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 6416808 4 on 11.30.06 | |

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor **or** [ ] Secured Party of record. Check only **one** of these two boxes.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    [ ] DELETE name: Give record name to be deleted in item 6a or 6b.    [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR   GENERAL MOTORS CORPORATION | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR   JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with DE SOS [Matter No. 00652500] [General] [Doc. No. 1457978]

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

CONFIDENTIAL

MB002415

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
UCC Filings          800-828-0938

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research
41 State Street
Suite 600
Albany, NY 12207

melissa@nationalcorp.com

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 03:23 PM 11/30/2006
INITIAL FILING NUM: 6416808 4
AMENDMENT NUMBER: 0000000
SRV: 061094538

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: **GENERAL MOTORS CORPORATION**

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 300 RENAISSANCE CENTER | DETROIT | MI | 48265-3000 | USA |

1d. TYPE OF ORGANIZATION: Corporation | JURISDICTION OF ORGANIZATION: Delaware

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: **JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT**

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 2558 | HOUSTON | TX | 77252 | USA |

4. This FINANCING STATEMENT covers the following collateral:
THE ASSETS DESCRIBED ON ANNEX I ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN.

8. OPTIONAL FILER REFERENCE DATA
6701-619 -- DE - Secretary of State
F#176913
A#274606

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

CONFIDENTIAL                    MB002416

# A2731

This Annex I
consists of 4 pages

ANNEX I
TO
UCC-1 FINANCING STATEMENT

Debtor:          General Motors Corporation
                 300 Renaissance Center
                 Detroit, Michigan 48265-3000
                 (the "Debtor")

Secured Party:   JPMorgan Chase Bank, N.A., as Administrative Agent
                 P.O. Box 2558
                 Houston, TX 77252
                 (the "Agent")

The financing statement to which this Annex I is attached covers all of the following property of the Debtor now owned or at any time hereafter acquired (collectively, the "Collateral"):

(1)    all Equipment and all Fixtures, other than Excluded Equipment and Fixtures;

(2)    all Documents and General Intangibles attributable solely to Equipment or Fixtures, other than Excluded Equipment and Fixtures;

(3)    all books and records pertaining solely to Equipment or Fixtures (or Proceeds or products of Equipment or Fixtures), in each case, other than Excluded Equipment and Fixtures (or Proceeds or products thereof); and

(4)    to the extent not otherwise included in the foregoing clauses, all Proceeds and products of any and all of the foregoing.

As used herein, the following terms shall have the following meanings:

"Collateral Agreement": the collateral agreement, dated as of November 29, 2006, among the Debtor, Saturn Corporation and JPMorgan Chase Bank, N.A., as administrative agent (as the same may be amended, supplemented or otherwise modified from time to time).

"Credit Agreement": the term loan agreement, dated as of November 29, 2006, among the Debtor, Saturn Corporation, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent (as the same may be amended, supplemented or otherwise modified from time to time).

"Documents": all "Documents" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

[[2660674]]

CONFIDENTIAL                                      MB002417

"Equipment":  all "Equipment" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Excluded Equipment and Fixtures":  all Equipment and Fixtures, now owned or at any time hereafter acquired by the Debtor, which are not located at U.S. Manufacturing Facilities; provided, that no Equipment or Fixtures now owned or at any time hereafter acquired by the Debtor (a) located at a U.S. Manufacturing Facility or (b) transferred to a Non-U.S. Manufacturing Property other than (i) in the ordinary course of business or (ii) for a business purpose of the Debtor and its Subsidiaries (as determined in good faith by the Debtor) and not primarily for the purpose of (1) reducing the security for the Obligations or (2) making such Equipment and Fixtures available to other creditors, shall constitute Excluded Equipment and Fixtures.

"Fixtures":  all "Fixtures" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"General Intangible":  a "General intangible" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Governmental Authority":  any nation or government, any state, province, municipality or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory, taxing or administrative functions of government including the European Central Bank.

"Grantors":  a collective reference to the Debtor and Saturn Corporation, and each other direct or indirect wholly-owned domestic Subsidiary of the Debtor that at the option of the Debtor becomes a party to the Collateral Agreement, the Credit Agreement and each other relevant Loan Document, in each case by executing a joinder agreement in form and substance reasonably acceptable to the Agent.

"Lender":  each Lender party to the Credit Agreement.

"Lien":  any mortgage, pledge, lien, security interest, charge, statutory deemed trust, conditional sale or other title retention agreement or other similar encumbrance.

"Loan":  a loan made by a Lender to the Debtor pursuant to the Credit Agreement.

"Loan Documents": the Credit Agreement, the Security Documents, the Notes and any amendment, waiver, supplement or other modification to any of the foregoing.

"Non-U.S. Manufacturing Property":  any real property of a Grantor that is not part of a U.S. Manufacturing Facility.

"Note":  a promissory note, executed and delivered by the Debtor with respect to the Loans, substantially in the form of Exhibit B to the Credit Agreement.

"Obligations":  all obligations of any Grantor in respect of any unpaid Loans and any interest thereon (including interest accruing after the maturity of any Loan and interest

[[2660674]]

CONFIDENTIAL

MB002418

Case 13-2187, Document 42, 09/17/2013, 1043972, Page52 of 319
A2733
09-00504-reg     Doc 41-9     Filed 07/01/10     Entered 07/01/10 22:34:08     Exhibit 9
Pg 7 of 8

Page 3 of 4

accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to any Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) and all other obligations and liabilities of any Grantor to the Agent or to any Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with the Credit Agreement, any other Loan Document or any other document made, delivered or given in connection therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses or otherwise.

"Person": an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Proceeds": all "Proceeds" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Secured Parties": the collective reference to the Agent, each Lender and each other Person to which any Obligations are owed.

"Security Documents": the Collateral Agreement and all other security documents delivered to the Agent granting or purporting to grant a Lien on any property of any Person to secure the Obligations, including financing statements or financing change statements under the applicable Uniform Commercial Code.

"Subsidiary": as to any Person (the "parent"), any other Person of which at least a majority of the outstanding stock or other equity interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or comparable governing body of such Person (irrespective of whether or not at the time stock or other equity interests of any other class or classes of such Person shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the parent, or by one or more Subsidiaries, or by the parent and one or more Subsidiaries.

"UCC": the Uniform Commercial Code as from time to time in effect in the State of New York; provided, however, that, in the event that, by reason of mandatory provisions of law, any of the attachment, perfection or priority of the Agent's and the Secured Parties' security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

"U.S. Manufacturing Facility": (a) any plant or facility of a Grantor listed on Schedule 1 hereto, including all related or appurtenant land, buildings, Equipment and Fixtures, and (b) any plant or facility of a Grantor, including all related or appurtenant land, buildings, Equipment and Fixtures, acquired or leased by a Grantor after the date hereof which is located within the continental United States of America and at which manufacturing, production, assembly or processing activities are conducted.

[[2660674]]

CONFIDENTIAL                                                                                      MB002419

## Schedule 1
### to Annex 1 to UCC-1 Financing Statement

| Num | Facility | City | State |
|---|---|---|---|
| 1 | GM ASSEMBLY ARLINGTON | ARLINGTON | TX |
| 2 | GM ASSEMBLY BOWLING GREEN | BOWLING GREEN | KY |
| 3 | GM ASSEMBLY DETROIT HAMTRAMCK | DETROIT | MI |
| 4 | GM ASSEMBLY FAIRFAX | KANSAS CITY | KS |
| 5 | GM ASSEMBLY FLINT | FLINT | MI |
| 6 | GM ASSEMBLY FORT WAYNE | FORT WAYNE | IN |
| 7 | GM ASSEMBLY JANESVILLE | JANESVILLE | WI |
| 8 | GM ASSEMBLY LANSING DELTA TOWNSHIP | LANSING | MI |
| 9 | GM ASSEMBLY LANSING GRAND RIVER | LANSING | MI |
| 10 | GM ASSEMBLY LORDSTOWN | LORDSTOWN | OH |
| 11 | GM ASSEMBLY MORAINE | DAYTON | OH |
| 12 | GM ASSEMBLY ORION | LAKE ORION | MI |
| 13 | GM ASSEMBLY PONTIAC EAST | PONTIAC | MI |
| 14 | GM ASSEMBLY SATURN WILMINGTON | WILMINGTON | DE |
| 15 | GM ASSEMBLY SHREVEPORT | SHREVEPORT | LA |
| 16 | GM ASSEMBLY WENTZVILLE | WENTZVILLE | MO |
| 17 | GM MFD AMT (SAMCO) | NEW HUDSON | MI |
| 18 | GM MFD FLINT | FLINT | MI |
| 19 | GM MFD FLINT TOOL & DIE | FLINT | MI |
| 20 | GM MFD GRAND BLANC | GRAND BLANC | MI |
| 21 | GM MFD GRAND RAPIDS | WYOMING | MI |
| 22 | GM MFD INDIANAPOLIS | INDIANAPOLIS | IN |
| 23 | GM MFD LANSING REGIONAL STAMPING | LANSING | MI |
| 24 | GM MFD LORDSTOWN | LORDSTOWN | OH |
| 25 | GM MFD MANSFIELD | MANSFIELD | OH |
| 26 | GM MFD MARION | MARION | IN |
| 27 | GM MFD PARMA | PARMA | OH |
| 28 | GM MFD PONTIAC | PONTIAC | MI |
| 29 | GM MFD SHREVEPORT | SHREVEPORT | LA |
| 30 | GM POWERTRAIN ALLISON BALTIMORE | WHITE MARSH | MD |
| 31 | GM POWERTRAIN BAY CITY | BAY CITY | MI |
| 32 | GM POWERTRAIN BEDFORD | BEDFORD | IN |
| 33 | GM POWERTRAIN DEFIANCE | DEFIANCE | OH |
| 34 | GM POWERTRAIN FLINT ENGINE SOUTH | FLINT | MI |
| 35 | GM POWERTRAIN LIVONIA | LIVONIA | MI |
| 36 | GM POWERTRAIN MASSENA | MASSENA | NY |
| 37 | GM POWERTRAIN PARMA | PARMA | OH |
| 38 | GM POWERTRAIN ROMULUS ENGINE | ROMULUS | MI |
| 39 | GM POWERTRAIN TOLEDO | TOLEDO | OH |
| 40 | GM POWERTRAIN TONAWANDA | BUFFALO | NY |
| 41 | GM POWERTRAIN WARREN TRANSMISSION | WARREN | MI |
| 42 | GM POWERTRAIN WILLOW RUN | YPSILANTI | MI |

[[2660674]]

CONFIDENTIAL

**A2735**

# EXHIBIT 10

# A2736

**Sylve, Frances**

**From:** Perlowski, Michael J.
**Sent:** Thursday, October 09, 2008 1:37 PM
**To:** Green, Ryan
**Cc:** Gonshorek, Stewart C.
**Subject:** Auto Facilities Real Estate Trust 2001-1 / General Motors Corporation--JPMorgan

**Attachments:** Auto Facilities Real Estate Trust 2001-1.pdf; GM - JPMorgan -- Indiana.pdf; GM - JPMorgan -- equipment -- fixtures.pdf


Auto Facilities Real Estate Tr...


GM - JPMorgan -- Indiana.pdf


GM - JPMorgan -- equipment -- ...

Ryan --

Attached are copies of the two active financing statements of record in Delaware against General Motors Corporation and in favor of JPMorgan Chase Bank and the results of a search conducted with the Office of the Delaware Secretary of State for financing statements of record against Auto Facilities Real Estate Trust 2001-1.

The filings in favor of JPMorgan Chase Bank, as Administrative Agent, are as follows:

1.) blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 2092526 7, file date April 12, 2002); and

2.) financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities (file number 6416808 4, file date   November 30, 2006).

As for Auto Facilities Real Estate Trust 2001-1, the active filings of record are as follows:

1.) blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 2092532 5, file date April 12, 2002); and

2.) blanket-type financing statement as to real property and related collateral located in Wayne County, Michigan (file number 2007 1919660, file date May 21, 2007).

Please let me know if you have any questions or if I can be of any other assistance.

--- Mike

EXHIBIT NO. 4
Terlmski

Kelly A. Siska

1

CONFIDENTIAL

MB001023

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Please return to:
CT Corporation - UCC Services
Attn: Heather Pedroza
208 S. LaSalle Street
Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:19 PM 07/16/2004
INITIAL FILING NUM: 4200996 9
AMENDMENT   NUMBER: 0000000
SRV: 040524247

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1 DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: Wilmington Trust Company, as Owner Trustee

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Rodney Square North, 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION: Delaware banking corp | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME: GM Facilities Trust No. 1999-1

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION: statutory trust | 2f. JURISDICTION OF ORGANIZATION: Delaware | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3 SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: Wells Fargo Bank Northwest, N.A., as Agent

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Corporate Trust Services, MAC: U1228-120, 299 S. Main Street, 12th Fl. | Salt Lake | UT | 84111 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See attached Rider A

**5. ALTERNATIVE DESIGNATION** [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s)   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

GM TPC Amendment #04271102          9 yes attached          Pl 015011750-3

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV 07/29/98)          04271102-15

CONFIDENTIAL                                                                    MB001024

# A2738

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

Wilmington Trust Company, as Owner Trustee *

OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

Additional Debtor is a trust

*not in its individual capacity but solely as Owner Trustee
under the Trust Agreement dated as of May 28, 1999

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR  11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any
☐ NONE

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR  12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☒ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV 07/29/98)

CONFIDENTIAL

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

Wilmington Trust Company,
not in its individual capacity
but solely as Owner Trustee
under the Trust Agreement
dated as of May 28, 1999
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property
described on Exhibit A attached hereto (the "Tennessee Land"); all buildings, structures and
other improvements of every kind existing at any time and from time to time on or under the
Tennessee Land, together with any and all appurtenances to such buildings, structures or
improvements, including sidewalks, utility pipes, conduits and lines, parking areas and
roadways, and including all Modifications and other additions to or changes in any of the
foregoing but excluding any Modifications or other property in which the Lessee retains
ownership under the terms of the Tennessee Master Lease (all of the foregoing, collectively, the
"Improvements"), all of the Debtor's right, title and interest in, to and under the Tennessee
Master Lease, including, without limitation, all credits, options, deposits, rights of first offer,
rights of first refusal, extension rights and expansion rights (together with the Tennessee Land,
Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being collectively
referred to as the "Tennessee Property");

131879911  04271102                                                    Tennessee

CONFIDENTIAL                                                    MB001026

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the Tennessee Property or any part thereof;

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of, the Tennessee Property, but specifically excluding trade fixtures and other personal property of any tenant on the Tennessee Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D) all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the Tennessee Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E) all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the Tennessee Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Tennessee Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F) all books and records relating to or used in connection with the operation of the Tennessee Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G) all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the Tennessee Master Lease, including without limitation Article XIII of the Tennessee Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the Tennessee Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Tennessee Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Tennessee Property or any easement or other right therein;

(H) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the

131879911 04771102                                                                    Tennessee

CONFIDENTIAL                                                                    MB001027

Tennessee Property or any part thereof and all plans and specifications relating to the Tennessee Property; and

(I) all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the Tennessee Master Lease and the Tennessee Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the Tennessee Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the Tennessee Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above, (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the Tennessee Master Lease or the Tennessee Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease, (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the Tennessee Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the Tennessee Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the Tennessee Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the Tennessee Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the

131879914 04271102                                                                                    Tennessee

CONFIDENTIAL                                                                        MB001028

immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the Excepted Payments attributable to the Tennessee Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the Tennessee Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the Tennessee Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection, all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the Tennessee Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; *provided, however,* that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the Tennessee Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

13187991 1  04771102

Tennessee

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and other benefits at any time belonging or pertaining to the Tennessee Land or the Improvements thereon, including, without limitation, the use of any streets, ways, alleys, vaults or stripe of land adjoining, abutting, adjacent or contiguous to such Tennessee Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such Tennessee Land.

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"Tennessee Lease Supplement" means that certain Lease Supplement dated as of November 18, 1999, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"Tennessee Master Lease" means that certain Tennessee Master Lease and Open End Leasehold Deeds of Trust dated as of November 18, 1999, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the Tennessee Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<div align="center">END OF RIDER A</div>

13187991 1 04271102                                                           Tennessee

JUL-02-2004  14:57                                                    P.03/20

                                                                      TN
                                                                      SITE²

"EXHIBIT A"

Being the PVV SouthPoint 14, LLC property as recorded in Instrument Numbers JF-7620 & JF 7621, also being part of the Corporate Estate, Inc. property as recorded in Instrument Number GK-7964 and Mitchell Investments, LLC property as recorded in Instrument Number JF-7619, said recorded information being located at the Register's Office in Memphis, Shelby County, Tennessee, said property also being in the Southeast Quarter of Section 11, Township 1, Range 7 West and being more particularly described as follows:

Commencing at the southeast corner of said Section 11, said point being the centerline intersection of Pleasant Hill Road (50' prescriptive R.O.W.) and Holmes Road (R.O.W. varies); thence along the centerline of said Pleasant Hill Road, N 00°07'51" W a distance of 351.31 feet to a set P.K. nail, and the POINT OF BEGINNING: thence leaving the centerline of said Pleasant Hill Road, N 89°23'38" W a distance of 357.00 feet to a set iron pin; thence N 57°47'10" W a distance of 275.78 feet to a set iron pin; thence N 89°23'38" W a distance of 1,260.00 feet to a set iron pin, said pin being on the east line of Citation Drive (68' wide private drive); thence along the east line of said Citation Drive, N 00°36'22" E a distance of 836.00 feet to a set iron pin, said pin being on the south line of Corporate Estates, Inc. and Mitchell Investments, LLC property (FN-0987); thence S 89°23'38" E along said south line and the south line of the Industrial Board of the City of Memphis and the County of Shelby, Tennessee property (GG-9107) a distance of 1,839.26 feet to a set P.K. Nail, said nail being the southeast corner of said Industrial Board of the City of Memphis and The County of Shelby, Tennessee property and also being in the centerline of said Pleasant Hill Road; thence along said centerline, S 00°07'51" E a distance of 980.62 feet to the point of beginning. Containing 1,610,554 square feet or 36.973 acres.

TOGETHER WITH EASEMENT RIGHTS in and to the easements created under the following documents:

EASEMENT PARCEL 1 Sanitary Sewer, Building X
Grant of Easement, private Sanitary Sewer Easement No. 1 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1247, in the Register's Office of Shelby County, Tennessee.

EASEMENT PARCEL 2 Sanitary Sewer, Building X Expansion Property
Grant of Easement, private Sanitary Sewer Easement No. 2 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1248, in the Register's Office of Shelby County, Tennessee.

EASEMENT PARCEL 3 Sanitary Sewer, Building XII
Grant of Easement, private Sanitary Sewer Easement No. 3 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1249, in the Register's Office of Shelby County, Tennessee.

JUL-02-2004  14:58

P.04/28

TN
SITE 2

"EXHIBIT A" Continued

**EASEMENT PARCEL 4 Sanitary Sewer, Building XI**
Grant of Easement, private Sanitary Sewer Easement No. 4 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1250, the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 5 Sanitary Sewer, Building VI**
Grant of Easement, private Sanitary Sewer Easement No. 5 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1251, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 6 Sanitary Sewer, Building II**
Grant of Easement, private Sanitary Sewer Easement No. 6 of 6, dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1252, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 7 Private Storm Drainage Easement 1 of 4 (Building X)**
Grant of Easement (Drainage - Building X to Building XIV), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1258, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 8 Private Storm Drainage Easement 2 of 4 (Building X Expansion Property)**
Grant of Easement (Drainage - Building X Expansion to Building X and Building XIV), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1257, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 9 Private Storm Drainage Easement 3 of 4 (Building XII)**
Grant of Easement (Drainage - Building XII to Building X, Building X Expansion and Building XIV), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1255, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 10 Private Storm Drainage Easement 4 of 4; (Building XI)**
Grant of Easement (Drainage - Building XI to Building XIV, Building X, Building X Expansion), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1256, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 11 Private Storm Drainage Easement 1 of 1 (Building XV)**
Grant of Easement (Drainage - Building XV to Building XIV), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1259, in the Register's Office of Shelby County, Tennessee.

**EASEMENT PARCEL 12 - Grant of Easement Surface Water**
Grant of Easement (Surface Water), dated November 18, 1999, recorded November 18, 1999, at Instrument No. JW 1260, in the Register's Office of Shelby County, Tennessee.

CONFIDENTIAL

JUL-02-2004  14:58                                                              P.05/28
                                                                          Memphis
                                                                            TN
                                                                        S 1782  ③

"EXHIBIT A"

EASEMENT PARCEL 13 - Ingress/Egress
Easement for ingress and egress described in Declaration of Ingress-Egress Easement Agreement
of record at Instrument No. HU-5127, as amended by First Amendment to Declaration of
Ingress-Egress Easement Agreement recorded at Instrument No. JW 1254, both in the Register's
Office of Shelby County, Tennessee.

CONFIDENTIAL                                                              MB001033

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Please return to:
CT Corporation - UCC Services
Attn: Heather Perkins
208 S. LaSalle Street
Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:21 PM 07/16/2004
INITIAL FILING NUM: 4201007. 4
AMENDMENT NUMBER: 0000000
SRV: 040524272

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

**Wilmington Trust Company, as Owner Trustee ◆**

| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Rodney Square North. 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Delaware banking corp. | 1f. JURISDICTION OF ORGANIZATION Delaware | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

**GM Facilities Trust No. 1999-1**

| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION statutory trust | 2f. JURISDICTION OF ORGANIZATION Delaware | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

**Wells Fargo Bank Northwest, N.A., as Agent**

| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Corporate Trust Services. MAC: U1228-120. 299 S. Main Street. 12th Fl. | Salt Lake | UT | 84111 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See attached Rider A

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

GM TPC Amendment #04271102          9 pgs Attached          #P16150117504

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)          04271102-19

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME
Wilmington Trust Company, as Owner Trustee *

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

**10. MISCELLANEOUS:**

Additional Debtor is a trust

*not in its individual capacity but solely as Owner Trustee under the Trust Agreement dated as of May 28, 1999

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any ☐ NONE

**12. ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing
**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate
**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV 07/29/98)

CONFIDENTIAL

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

Wilmington Trust Company,
not in its individual capacity
but solely as Owner Trustee
under the Trust Agreement
dated as of May 28, 1999
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property
described on Exhibit A attached hereto (the "Pennsylvania Land"); all buildings, structures and
other improvements of every kind existing at any time and from time to time on or under the
Pennsylvania Land, together with any and all appurtenances to such buildings, structures or
improvements, including sidewalks, utility pipes, conduits and lines, parking areas and
roadways, and including all Modifications and other additions to or changes in any of the
foregoing but excluding any Modifications or other property in which the Lessee retains
ownership under the terms of the Pennsylvania Master Lease (all of the foregoing, collectively,
the "Improvements"), all of the Debtor's right, title and interest in, to and under the Pennsylvania
Master Lease, including, without limitation, all credits, options, deposits, rights of first offer,
rights of first refusal, extension rights and expansion rights (together with the Pennsylvania
Land, Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being
collectively referred to as the "Pennsylvania Property");

131901121 04271102                                                    Pennsylvania

CONFIDENTIAL                                              MB001036

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the Pennsylvania Property or any part thereof;

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in, any way in connection with any operation or letting of, the Pennsylvania Property, but specifically excluding trade fixtures and other personal property of any tenant on the Pennsylvania Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D) all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the Pennsylvania Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E) all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the Pennsylvania Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Pennsylvania Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F) all books and records relating to or used in connection with the operation of the Pennsylvania Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G) all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the Pennsylvania Master Lease, including without limitation Article XIII of the Pennsylvania Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the Pennsylvania Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Pennsylvania Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Pennsylvania Property or any easement or other right therein;

(H) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the

431901121 04271102                                                                    Pennsylvania

CONFIDENTIAL                                                    MB001037

Pennsylvania Property or any part thereof and all plans and specifications relating to the Pennsylvania Property; and

(I) all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the Pennsylvania Master Lease and the Pennsylvania Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the Pennsylvania Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the Pennsylvania Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above, (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the Pennsylvania Master Lease or the Pennsylvania Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease, (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the Pennsylvania Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the Pennsylvania Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the Pennsylvania Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the Pennsylvania Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and

13190112.1  04271102                                                    Pennsylvania

privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the Excepted Payments attributable to the Pennsylvania Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the Pennsylvania Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the Pennsylvania Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection; all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the Pennsylvania Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; *provided, however,* that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the Pennsylvania Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

f3J90112 t 04271f02                                                        Pennsylvania

CONFIDENTIAL                                                    MB001039

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and other benefits at any time belonging or pertaining to the Pennsylvania Land or the Improvements thereon, including, without limitation, the use of any streets, ways, alleys, vaults or strips of land adjoining, abutting, adjacent or contiguous to such Pennsylvania Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such Pennsylvania Land.

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"Pennsylvania Lease Supplement" means that certain Open End Mortgage Securing Future Advances and Lease Supplement dated as of March 22, 2002, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"Pennsylvania Master Lease" means that certain Pennsylvania Master Lease and Open End Mortgage dated as of March 22, 2002, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the Pennsylvania Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<div align="center">END OF RIDER A</div>

13190112.1 04Z11102                                                          Pennsylvania

CONFIDENTIAL                                                          MB001040

EXHIBIT A

Legal Description Falls Township, Bucks County, Commonwealth of Pennsylvania described as follows:

ALL THAT CERTAIN tract of land situated in the Township of Falls, County of Bucks, Commonwealth of Pennsylvania, as shown on Sheet 1, 2, 3, 4 and 5 of 32 of a Subdivision & Land Development Plan of General Motors Distribution Facility, prepared for Cutler Associates, Allentown, PA, dated September 1, 2000, last revised December 4, 2000 by Showalter & Associates, of Chalfont, PA and bounded and described as follows, to wit:

BEGINNING at the intersection of the southerly side of the ultimate right-of way of US Route 1 (S.R. 0001- 140 feet from center line) and the westerly side of the ultimate right-of-way of Stony Hill Road (S.R. 2069 – 190 feet from center line); Thence along the ultimate right-of-way of Stony Hill Road the following five (5) courses and distances: (1) South 17 degrees 42 minutes 26 seconds East, a distance of 100.51 feet to a point; (2) South 21 degrees 05 minutes 26 seconds East, a distance of 150.00 feet to a point; (3) North 80 degrees 28 minutes 14 seconds East, a distance of 44.43 feet to a point 150 feet from the center line of said road; (4) On a non-tangent curve to the left having a radius of 968.51 feet and an arc length of 193.84 feet and a chord bearing of S 32 degrees 59 minutes 42 seconds E for a distance of 193.52 feet to a point 150 feet from the center line; (5) South 50 degrees 27 minutes 23 seconds East, a distance of 78.50 feet to a point, a corner of a proposed Lot 5; Thence along the lands N/L of the proposed Lot 5 the following six (6) courses and distances: (1) South 39 degrees 32 minutes 37 seconds West, a distance of 73.78 feet to a point; (2) South 50 degrees 00 minutes 15 seconds West, a distance of 97.90 feet to a point of curvature; (3) On a tangent curve to the left having a radius of 250.00 feet and an arc length of 147.96 feet and a chord bearing of S 33 degrees 02 minutes 58 seconds W for a distance of 145.81 feet to a point of tangency; (4) South 16 degrees 05 minutes 40 seconds West, a distance of 163.89 feet to a point; (5) South 77 degrees 58 minutes 49 seconds East, a distance of 164.85 feet to a point; (6) South 07 degrees 42 minutes 31 seconds East, a distance of 20.00 feet to a point in line with the lands N/L of Conrail Intermodal Transportation Yard & Terminal; Thence along said lands, South 82 degrees 17 minutes 29 seconds West, a distance of 2207.50 feet to a point, a corner of a proposed Lot 3; Thence along the lands n/l of the proposed Lot 3, North 07 degrees 41 minutes 49 seconds West, a distance of 658.79 feet to a point on the cul-de-sac of Cabot Boulevard Extension (60' radius); Thence along Cabot Boulevard Extension the following two (2) courses and distances: (1) Around said cul-de-sac, on a non-tangent curve to the left having a radius of 60.00 feet, an arc length of 98.63 feet to a point; 2) North 11 degrees 53 minutes 07 seconds West, a distance of 77.00 feet to an existing angle point on the ultimate right of way of US Route 1 (110 feet from the center line); Thence along said ultimate right of way the following two (2) courses and distances: (1) North 78 degrees 06 minutes 53 seconds East, a distance of 1727.13 feet to a point 110 feet from the center line; (2) North 84 degrees 10 minutes 26 seconds East, a distance of 341.34 feet to a point 140 feet from the center line, said point being the true place of beginning.

BEING LOT #4 on said Plan.

131901121 04271102                                                        Pennsylvania

CONFIDENTIAL                                          MB001041

TOGETHER WITH GRANTS OF EASEMENT: Created in that certain Bargain And Sale Deed between Consolidated Rail Corporation and Duke Construction Limited Partnership dated 12/7/2000 and recorded in Record Book 2186 page 619 and incorporating by reference the defined terms therein:

A) A Perpetual Grant of Easement for Sanitary Sewer Line.

A perpetual, non-exclusive right of way and easement at any time, and from time to time, to construct, install, maintain, inspect, operate, repair, remove and replace a sanitary sewer line on, over, under and across Grantor Parcel II in the area described in Exhibit D .

B) Grant of Easements for Stormwater Drainage Facilities.

The following easements for stormwater drainage:

(i) a perpetual, non-exclusive right of way and easement to at any time, and from time to time, and from time, to construct, install, maintain, inspect, operate, repair, remove and replace a stormwater drainage line and to conduct and dispose of storm water from grantee's retention basin on, over, under and across Grantor Parcel II into and through the existing outflow channel located thereon, in the area described in Exhibit E ; and

(ii) a temporary, non-exclusive right of way and easement to at any time, and from time to time, to construct, install, maintain, inspect, operate, repair, remove and replace a 36" RCP line from the Premises onto and across Grantor Parcel II, and to drain surface water originating on the non-paved areas of the Premises through such Pipe and into Grantor's retention basin on Grantor Parcel II, all in the location described in Exhibit E-1 ; provided, however, that such easement shall terminate, and Grantee shall promptly take steps to Stub off or otherwise terminate storm water discharge through such pipe into Grantor's retention basin upon the earlier of: (a) commencement of construction by Grantor of Improvements on Lots 2nd/or 3 of Grantor Parcel I or (b) written notification to Grantee by Grantor based on an appropriate engineering study that requirements for additional discharge from the adjoining intermodal facility are reasonably anticipated to overburden the capacity of Grantor's retention basin if Grantee's discharge of storm water therein is not terminated.

C) Grant of Easement for Road Construction and Temporary Road Access.

Non-exclusive rights of way and easements encumbering Grantor Parcel I for:

(i) Improving, constructing and installing a road (the "Dedication Standard") to standards acceptable for public dedication over and across the paved and currently unpaved areas of Grantor Parcel I which currently serve as a continuation of the existing public portion of Cabot Boulevard to the West ("Existing Cabot Boulevard") from the easterly boundary thereof to the westerly boundary of the Premises, subject to any requirements for widening or realignment pursuant to the Dedication Standard,

(ii) Storing materials and machinery and otherwise staging the construction of New Cabot

£3190112 1  04271102                                                    Pennsylvania

CONFIDENTIAL                                                          MB001042

Boulevard, and

(iii) temporary access for vehicular and pedestrian traffic between existing Cabot Boulevard and the Premises, all of which easements shall be located in the respective areas described in Exhibit F. The easements granted under this subsection (4) C shall terminate on the date that New Cabot Boulevard is accepted for dedication by the applicable governmental authority and an instrument reflecting such dedication is recorded in the Office for the Recording of Deeds, Bucks County, Pennsylvania (the "Recording Office")

D) Grant of Easement for Road Access to Stoney Hill Road.

A perpetual, non-exclusive right of way and easement at any time and from time to time, to construct, install, maintain, inspect, operate, repair, remove and replace a private drive (the "Stoney Hill Access") on, over and across Grantor Parcel II from a point on the easterly boundary of the Premises to the current commencement of Stoney Hill Road, together with a temporary easement for storing materials and machinery and otherwise staging the construction of the Stoney Hill Access, such easements to be located in the areas described in Exhibit G. The easement for construction staging hereunder shall terminate on the date that the Stoney Hill Access is first completed and reasonably available for regular truck traffic to and from the Premises.

E) Grant of Easements for Utilities.

A perpetual, non-exclusive rights of way and easements on, over, across and under Grantor Parcel I, at any time, and from time to time, to construct, install, maintain, inspect, operate, repair, remove and replace facilities for furnishing the Premises with electricity, gas, potable and fire suppression water, and telephone/telecommunications services, such easements to be located within or alongside the contemplated right of way for New Cabot Boulevard in the areas described in Exhibit H . Grantee may, at some future time and from time to time, convey or dedicate to established public or private utility companies ("Utility Providers") the utility lines and related facilities which it has installed in the easement areas depicted on Exhibit H, in which event, Grantor shall grant or dedicate to the Utility Providers (using the Utility Providers' standard from, if requested) equivalent rights of way or easements for the aforesaid utility purposes.

BEING the same premises which Consolidated Rail Corporation, by Deed dated December 7, 2000 and recorded in and for the County of Bucks in Land Record Book 2186 Page 619, granted and conveyed unto Duke Construction Limited Partnership, an Indiana Limited Partnership, in fee.

131901121 04271102                                                              Pennsylvania

CONFIDENTIAL                                                              MB001043

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Please return to:
> CT Corporation - UCC Services
> Attn: Heather Pakes
> 208 S. LaSalle Street
> Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:24 PM 07/16/2004
INITIAL FILING NUM: 4201018 1
AMENDMENT  NUMBER: 0000000
SRV: 040524301

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| **GM Facilities Trust No. 1999-1** | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Delaware Statutory Trust | Delaware | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| **Wells Fargo Bank Northwest, N.A., as Agent** | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Corporate Trust Services, MAC: U1228-120, 299 S. Main Street, 12th Fl. | Salt Lake | UT | 84111 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Rider A attached hereto

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

GM TPC Amendment #04271102    9 pgs attchd    615011730-0

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    04271102-14

**CONFIDENTIAL**

**MB001044**

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR    **GM Facilities Trust No. 1999-1**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR    11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID#:  SSN OR EIN | ADD'L INFO RE | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any
| | ORGANIZATION DEBTOR | | | ☐ NONE

12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P'S    NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR    12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers  ☐ timber to be cut or  ☐ as-extracted collateral, or is filed as a ☐ fixture filing | 16. Additional collateral description:

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☒ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

GM Facilities Trust No. 1999-1
c/o Wilmington Trust Company, as Owner Trustee
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property described on Exhibit A attached hereto (the "Ohio Land"); all buildings, structures and other improvements of every kind existing at any time and from time to time on or under the Ohio Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, utility pipes, conduits and lines, parking areas and roadways, and including all Modifications and other additions to or changes in any of the foregoing but excluding any Modifications or other property in which the Lessee retains ownership under the terms of the Ohio Master Lease (all of the foregoing, collectively, the "Improvements"), all of the Debtor's right, title and interest in, to and under the Ohio Master Lease, including, without limitation, all credits, options, deposits, rights of first offer, rights of first refusal, extension rights and expansion rights (together with the Ohio Land, Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being collectively referred to as the "Ohio Property");

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the Ohio Property or any part thereof;

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with,

13187969 1  04271102

Ohio

CONFIDENTIAL

MB001046

in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of, the Ohio Property, but specifically excluding trade fixtures and other personal property of any tenant on the Ohio Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D)  all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the Ohio Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E)  all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the Ohio Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Ohio Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F)  all books and records relating to or used in connection with the operation of the Ohio Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G)  all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the Ohio Master Lease, including, without limitation Article XIII of the Ohio Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the Ohio Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Ohio Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Ohio Property or any easement or other right therein;

(H)  all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Ohio Property or any part thereof and all plans and specifications relating to the Ohio Property; and

(I)  all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the Ohio Master Lease and the Ohio Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits,

13167989 1  04271102

Ohio

CONFIDENTIAL

MB001047

insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the Ohio Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the Ohio Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above, (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the Ohio Master Lease or the Ohio Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease, (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the Ohio Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the Ohio Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the Ohio Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the Ohio Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the

03187989.1  04271102                                                                    Ohio

CONFIDENTIAL                                                              MB001048

Excepted Payments attributable to the Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the Ohio Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; *provided, however*, that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection, all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the Ohio Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; *provided, however*, that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and other benefits at any time belonging or pertaining to the Ohio Land or the Improvements thereon, including, without limitation, the use of any streets, ways, alleys, vaults or strips of land adjoining, abutting, adjacent or contiguous to such Ohio Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such Ohio Land.

13187989 1 04271162                                                                                    Ohio

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"Ohio Lease Supplement" means that certain Open End Mortgages Supplement and Lease Supplement dated as of October 14, 1999, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"Ohio Master Lease" means that certain Open End Mortgages and Ohio Master Lease dated as of October 14, 1999, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the Ohio Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<div align="center">END OF RIDER A</div>

13187989.1 04271102

Ohio

CONFIDENTIAL

MB001050

— EXHIBIT A —

TRACT I:

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, VILLAGE OF GROVEPORT, SECTION 29, TOWNSHIP 11, RANGE 21, CONGRESS LANDS AND BEING THE REMAINDER OF TRACT 14.851 ACRE TRACT AS CONVEYED TO DUKE CONSTRUCTION LIMITED PARTNERSHIP OF RECORD IN INSTRUMENT NUMBER 199901040000345 AND ALL OF THAT 16.192 ACRE TRACT AS CONVEYED TO DUKE CONSTRUCTION LIMITED PARTNERSHIP OF RECORD IN INSTRUMENT NUMBER 199901040404369 (ALL REFERENCES REFER TO THE RECORDS OF THE RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO) AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF COMMERCE CENTER DRIVE (PLAT BOOK 90, PAGE 04), WITH GREEN POINTE DRIVE SOUTH (PLAT BOOK 91, PAGE 23);

THENCE NORTH 89 DEG 44' 04" EAST, WITH THE CENTERLINE OF SAID GREEN POINTE DRIVE SOUTH, A DISTANCE OF 60.00 FEET TO A POINT;

THENCE SOUTH 01 DEG 55' 26" EAST, LEAVING SAID CENTERLINE, A DISTANCE OF 25.00 FEET TO AN IRON PIN SET IN THE SOUTHERLY RIGHT-OF-WAY LINE OF SAID GREEN POINTE DRIVE SOUTH, THE TRUE POINT OF BEGINNING;

THENCE WITH SAID SOUTHERLY RIGHT-OF-WAY LINE, THE FOLLOWING COURSES:

NORTH 89 DEG 00' 04" EAST, A DISTANCE OF 604.34 FEET TO AN IRON PIN SET AT A POINT OF CURVATURE;

WITH A CURVE TO THE LEFT, HAVING A CENTRAL ANGLE OF 18 DEG 13' 58" AND A RADIUS OF 1460.00 FEET, A CHORD BEARING AND DISTANCE OF NORTH 79 DEG 48' 21" EAST, 835.74 FEET TO AN IRON PIN SET AT A NORTHEASTERLY CORNER OF THAT REMAINDER TRACT AS CONVEYED TO DUKE REALTY LIMITED PARTNERSHIP OF RECORD IN INSTRUMENT NUMBER 199906120131261;

THENCE WITH A WESTERLY PERIMETER OF SAID DUKE REALTY TRACT, THE FOLLOWING COURSES:

SOUTH 18 DEG 27' 46" EAST, A DISTANCE OF 362.86 FEET TO AN IRON PIN SET;

SOUTH 01 DEG 55' 56" EAST, A DISTANCE OF 534.44 FEET TO AN IRON PIN SET;

SOUTH 43 DEG 04' 04" WEST, A DISTANCE OF 161.63 FEET TO AN IRON PIN SET;

THENCE SOUTH 89 DEG 00' 04" WEST, PARTLY WITH A NORTHERLY LINE OF SAID DUKE REALTY TRACT AND A NORTHERLY LINE OF THAT 27.837 ACRE TRACT AS CONVEYED TO DUKE REALTY LIMITED PARTNERSHIP OF RECORD IN INSTRUMENT NUMBER 199906120137169, A DISTANCE OF 1349.54 FEET TO AN IRON PIN SET IN THE EASTERLY RIGHT-OF-WAY LINE OF SAID COMMERCE CENTER DRIVE;

THENCE WITH SAID EASTERLY RIGHT-OF-WAY LINE, THE FOLLOWING COURSES:

NORTH 01 DEG 55' 56" WEST, A DISTANCE OF 757.00 FEET TO AN IRON PIN SET AT A POINT OF CURVATURE;

WITH A CURVE TO THE RIGHT, HAVING A CENTRAL ANGLE OF 90 DEG 00' 00" AND A RADIUS OF 30.00 FEET, A CHORD BEARING AND DISTANCE OF NORTH 43 DEG 04' 04" EAST, 42.43 FEET TO THE TRUE POINT OF BEGINNING AND CONTAINING 27.838 ACRES OF LAND, MORE OR LESS.

THE BASIS OF BEARINGS FOR THIS DESCRIPTION IS NORTH 18 DEG 58' 27" WEST FOR THE CENTERLINE OF SALYERSAYNE ROAD AS SHOWN OF RECORD IN DEED BOOK 3443, PAGE 804.

THE ABOVE TRACT IS ALSO DESCRIBED AS THE FOLLOWING TWO PARCELS.

PARCEL I:

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, VILLAGE OF GROVEPORT, SECTIONS 29 AND 28, TOWNSHIP 11, RANGE 21, CONGRESS LANDS AND BEING ALL OUT OF THAT TRACT OF LAND AS CONVEYED TO STATE BENEFITS CORPORATION (F.K.A. STATE INVESTMENT COMPANY), OF

**CONFIDENTIAL**

MB001051

RECORD IN DEED BOOK 3448, PAGES 574, 579, 564 AND 589 (ALL DEED REFERENCES REFER TO RECORDS OF THE RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO) AND DESCRIBED AS FOLLOWS:

BEGINNING FOR REFERENCE AT AN IRON PIN SET AT THE SOUTHEASTERLY CORNER OF THAT 64.850 ACRE TRACT AS CONVEYED TO EVANS REALTY LIMITED PARTNERSHIP, OF RECORD IN INSTRUMENT NUMBER 198809191412553, IN THE NORTHERLY LINE OF THAT TRACT OF LAND AS CONVEYED TO EVANS INCENTIVE CORPORATION (F.K.A. EVANS INVESTMENT COMPANY) OF RECORD IN DEED BOOK 3447, PAGE 446, SAID NORTHERLY LINE ALSO BEING THE NORTHERLY RIGHT-OF-WAY LINE OF THE OHIO CANAL, SAID BEGINNING POINT BEING SOUTH 86 DEG 18' 43" EAST, A DISTANCE OF 374.39 FEET FROM A CONCRETE RIGHT-OF-WAY MARKER FOUND AT THE INTERSECTION OF SAID NORTHERLY RIGHT-OF-WAY LINE WITH THE WESTERLY RIGHT-OF-WAY LINE OF LONDON-GROVEPORT ROAD (S.R. 317);

THENCE WITH SAID NORTHERLY LINE THE FOLLOWING COURSES:

NORTH 86 DEG 11' 43" WEST, A DISTANCE OF 98.16 FEET TO AN IRON PIN FOUND;

NORTH 88 DEG 03' 40" WEST, A DISTANCE OF 606.99 FEET TO AN IRON PIN SET IN THE EASTERLY RIGHT-OF-WAY LINE OF SAID CONNOCK CREEK DRIVE AS CONVEYED TO THE VILLAGE OF GROVEPORT OF RECORD IN DEED BOOK _____, PAGE _____;

THENCE NORTH 1 DEG 56' WEST, WITH SAID EASTERLY RIGHT-OF-WAY LINE, A DISTANCE OF 1181.34 FEET TO AN IRON PIN SET AND BEING THE TRUE POINT OF BEGINNING FOR THIS DESCRIPTION;

THENCE NORTH 1 DEG 56' 44" WEST, CONTINUING WITH SAID EASTERLY RIGHT-OF-WAY LINE, A DISTANCE OF 757.90 FEET TO AN IRON PIN SET AT A POINT OF CURVATURE;

THENCE WITH A CURVE TO THE RIGHT HAVING A CENTRAL ANGLE OF 90 DEG 00' 00", A RADIUS OF 30.00 FEET, WHOSE CHORD BEARS NORTH 46 DEG 03' 16" EAST, A CHORD DISTANCE OF 42.43 FEET TO AN IRON PIN SET IN THE SOUTHERLY RIGHT-OF-WAY LINE OF SAID GREEN POINTE DRIVE SOUTH - PHASE 2 AS CONVEYED TO THE VILLAGE OF GROVEPORT OF RECORD IN DEED BOOK _____, PAGE _____;

THENCE NORTH 86 DEG 03' 44" EAST, WITH SAID SOUTHERLY RIGHT-OF-WAY LINE, A DISTANCE OF 564.40 FEET TO AN IRON PIN SET IN THE WESTERLY LINE OF SAID 64.850 ACRE TRACT;

THENCE SOUTH 31 DEG 56' 09" EAST, WITH SAID WESTERLY LINE, A DISTANCE OF 817.90 FEET TO AN IRON PIN SET;

THENCE SOUTH 88 DEG 03' 44" WEST, WITH A NEW DIVISION LINE ACROSS SAID EVANS ADHESIVE CORPORATION TRACT, A DISTANCE OF 574.37 FEET TO THE TRUE POINT OF BEGINNING AND CONTAINING 11.142 ACRES OF LAND, MORE OR LESS.

THE BASIS OF BEARINGS FOR THIS DESCRIPTION IS NORTH 13 DEG 53' 57" WEST, FOR THE CENTERLINE OF SALTONDALE ROAD, AS SHOWN OF RECORD IN DEED BOOK 3448, PAGE 564.

PARCEL XI:

SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN, VILLAGE OF GROVEPORT, SECTIONS 29 AND 30, TOWNSHIP 11, RANGE 21, CONGRESS LANDS AND BEING ALL OUT OF THAT TRACT OF LAND AS CONVEYED TO EVANS ADHESIVE CORPORATION (F.K.A. EVANS INVESTMENT COMPANY), OF RECORD IN DEED BOOK 3447, PAGES 574, 579, 564 AND 589 (ALL DEED REFERENCES REFER TO RECORDS OF THE RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO) AND DESCRIBED AS FOLLOWS:

BEGINNING FOR REFERENCE AT AN IRON PIN SET AT THE SOUTHEASTERLY CORNER OF THAT 64.850 ACRE TRACT AS CONVEYED TO EVANS REALTY LIMITED PARTNERSHIP, OF RECORD IN INSTRUMENT NUMBER 198809191412553, IN THE NORTHERLY LINE OF THAT TRACT OF LAND AS CONVEYED TO EVANS ADHESIVE CORPORATION (F.K.A. EVANS INVESTMENT COMPANY) OF RECORD IN DEED BOOK 3447, PAGE 446, SAID NORTHERLY LINE ALSO BEING THE NORTHERLY RIGHT-OF-WAY LINE OF THE OHIO CANAL, SAID BEGINNING POINT BEING SOUTH 86 DEG 18' 43" EAST, A DISTANCE OF 374.39 FEET FROM A CONCRETE RIGHT-OF-WAY MARKER FOUND AT THE INTERSECTION OF SAID NORTHERLY RIGHT-OF-WAY LINE WITH THE WESTERLY RIGHT-OF-WAY LINE OF LONDON-GROVEPORT ROAD (S.R. 317);

THENCE NORTH 1 DEG 56' 09" WEST, ALONG THE EASTERLY LINE OF SAID 64.850 ACRE TRACT, A DISTANCE OF 1212.09 FEET TO AN IRON PIN SET AND BEING THE TRUE POINT OF BEGINNING FOR THIS DESCRIPTION;

THENCE NORTH 1 DEG 56' 09" WEST, CONTINUING WITH SAID EASTERLY LINE TO AN IRON PIN SET IN THE SOUTHERLY RIGHT-OF-WAY LINE OF SAID GREEN POINTE DRIVE SOUTH - PHASE 2, AS CONVEYED TO THE VILLAGE OF GROVEPORT OF RECORD IN DEED BOOK _____, PAGE _____;

THENCE NORTH 86 DEG 03' 44" EAST, WITH SAID SOUTHERLY RIGHT-OF-WAY LINE, A DISTANCE OF 370.34 FEET TO AN IRON PIN SET AT A POINT OF CURVATURE;

THENCE CONTINUING WITH SAID SOUTHERLY RIGHT-OF-WAY LINE, WITH A CURVE TO THE LEFT HAVING A CENTRAL ANGLE OF 21 DEG 38' 33", A RADIUS OF 1460.00 FEET, WHOSE CHORD BEARS NORTH 79 DEG 31' 46" EAST, A CHORD DISTANCE OF 548.33 FEET TO AN IRON PIN SET;

THENCE WITH A NEW DIVISION LINE ACROSS SAID 64.580 ACRE TRACT, THE FOLLOWING COURSES:

SOUTH 10 DEG 37' 45" EAST, A DISTANCE OF 203.00 FEET TO AN IRON PIN SET;

SOUTH 4 DEG 50' 94" EAST, A DISTANCE OF 334.44 FEET TO AN IRON PIN SET;

SOUTH 43 DEG 00' 04" WEST, A DISTANCE OF 163.43 FEET TO AN IRON PIN SET;

SOUTH 88 DEG 00' 04" WEST, A DISTANCE OF 753.17 FEET TO THE TRUE POINT OF BEGINNING AND CONTAINING 14.598 ACRES OF LAND, MORE OR LESS.

THE BASIS OF BEARINGS FOR THIS DESCRIPTION IS NORTH 23 DEG 89' 37" WEST FOR THE CENTERLINE OF SALTZGABER ROAD, AS SHOWN OF RECORD IN DEED BOOK 3446, PAGE 504.

TRACT II:

EASEMENT INTERESTS AS SET FORTH IN EASEMENT OF RECORD IN DETENTION FACILITY AND DRAINAGE EASEMENT OF RECORD IN INSTRUMENT NUMBER 199811250248188, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

TRACT III:

PARKING INTEREST AS SET FORTH IN ACCESS EASEMENT OF RECORD IN INSTRUMENT NUMBER 199905270248514, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

CONFIDENTIAL

MB001053

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 02:51 PM 12/26/2007
INITIAL FILING # 4201018 1
AMENDMENT     # 2007 4864822
SRV: 071361304

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

John Cunningham
CT
208 South LaSalle Street
Suite 814
Chicago, IL 60604

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
Document 4201018 1 filed 07/16/2004

2. TERMINATION

3. CONTINUATION

4. ASSIGNMENT

5. AMENDMENT (PARTY INFORMATION)

6. CURRENT RECORD INFORMATION

6a. ORGANIZATION'S NAME
GM Facilities Trust No. 1999-1

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION

7a. ORGANIZATION'S NAME

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

9a. ORGANIZATION'S NAME
Wells Fargo Bank Northwest, N.A., as Agent

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
07129724-84    File with Delaware S.O.S.

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

CONFIDENTIAL

MB001054

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Please return to:
CT Corporation - RCS Services
Attn: Bonnie Petras
208 S. LaSalle Street
Chicago, IL 60604

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:26 PM 07/16/2004
INITIAL FILING NUM: 4201026 4
AMENDMENT   NUMBER: 0000000
SRV: 040524317

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GM Facilities Trust No. 1999-1 | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street | Wilmington | DE | 19890 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Delaware Statutory Trust | Delaware | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wells Fargo Bank Northwest, N.A., as Agent | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Corporate Trust Services, MAC: U1228-120, 299 S. Main Street, 12th Fl. | Salt Lake | UT | 84111 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Rider A attached hereto

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

GM TPC Amendment #04271102    + vidiss actuelle    (6150117 50-R

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV 07/29/98)    04271102-16

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR  GM Facilities Trust No. 1999-1

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

16. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

GM Facilities Trust No. 1999-1
c/o Wilmington Trust Company, as Owner Trustee
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property described on Exhibit A attached hereto (the "Second Ohio Land"); all buildings, structures and other improvements of every kind existing at any time and from time to time on or under the Second Ohio Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, utility pipes, conduits and lines, parking areas and roadways, and including all Modifications and other additions to or changes in any of the foregoing but excluding any Modifications or other property in which the Lessee retains ownership under the terms of the Second Ohio Master Lease (all of the foregoing, collectively, the "Improvements"), all of the Debtor's right, title and interest in, to and under the Second Ohio Master Lease, including, without limitation, all credits, options, deposits, rights of first offer, rights of first refusal, extension rights and expansion rights (together with the Second Ohio Land, Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being collectively referred to as the "Second Ohio Property");

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the Second Ohio Property or any part thereof;

13187997.1 04271102                                                    Second Ohio

CONFIDENTIAL                                                    MB001057

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of, the Second Ohio Property, but specifically excluding trade fixtures and other personal property of any tenant on the Second Ohio Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D) all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the Second Ohio Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E) all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the Second Ohio Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Second Ohio Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F) all books and records relating to or used in connection with the operation of the Second Ohio Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G) all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the Second Ohio Master Lease, including without limitation Article XIII of the Second Ohio Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the Second Ohio Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Second Ohio Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Second Ohio Property or any easement or other right therein;

(H) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Second Ohio Property or any part thereof and all plans and specifications relating to the Second Ohio Property; and

13157997.1 04271102                                                                    Second Ohio

(I) all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the Second Ohio Master Lease and the Second Ohio Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the Second Ohio Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the Second Ohio Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above, (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the Second Ohio Master Lease or the Second Ohio Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease, (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the Second Ohio Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the Second Ohio Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the Second Ohio Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the Second Ohio Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title

13187997.1  04271102                                              Second Ohio

and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; *provided, however*, that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the Excepted Payments attributable to the Second Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the Second Ohio Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; *provided, however*, that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the Second Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection, all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the Second Ohio Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; *provided, however*, that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the Second Ohio Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, herditaments and other rights and other benefits at any time belonging or pertaining to the Second Ohio Land or the Improvements

13187997.1 04271102                                                                    Second Ohio

CONFIDENTIAL                                                                    MB001060

thereon, including, without limitation, the use of any streets, ways, alleys, vaults or stripe of land adjoining, abutting, adjacent or contiguous to such Second Ohio Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such Second Ohio Land.

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"Second Ohio Lease Supplement" means that certain Open End Mortgages Supplement and Lease Supplement dated as of January 14, 2000, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"Second Ohio Master Lease" means that certain Open End Mortgages and Second Ohio Master Lease dated as of January 14, 2000, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the Second Ohio Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<div align="center">END OF RIDER A</div>

13187997 1 04771102                                                        Second Ohio

CONFIDENTIAL                                                            MB001061

— EXHIBIT A —

SITUATE IN THE STATE OF OHIO, COUNTY OF BUTLER, TOWNSHIP OF UNION, BEING IN
SECTION 6, TOWN 2, RANGE 2, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SECTION OF 6 AT A P.K. NAIL (FOUND), N 00°
25' 00" E, 1665.12 FEET TO A POINT; THENCE LEAVING SAID SECTION LINE, S 58° 36'
46" E, 339.94 FEET TO A POINT IN THE EAST RIGHT-OF-WAY OF STATE ROUTE 747 AS
RECORDED IN DEED BOOK 1806, PAGE 411; THENCE ALONG THE GRANTOR'S SOUTH LINE, S
58° 36' 46" E, 1240.13 FEET TO A POINT, SAID POINT BEING THE TRUE POINT OF
BEGINNING FOR THE HEREIN DESCRIBED TRACT OF LAND; THENCE DEPARTING THE GRANTOR'S
SOUTH LINE ALONG HIS LINES, S 88° 56' 51" E, 1110.41 FEET TO A POINT; THENCE N 00°
08' 12" E, 1205.00 FEET TO A POINT; THENCE ALONG A NON-TANGENT CURVE TO THE LEFT
AN ARC DISTANCE OF 84.82 FEET AS DEFINED BY A RADIUS OF 54.00 FEET, CHORD BEARS
N 45° 08' 12" E, 76.37 FEET TO A POINT; THENCE S 89° 51' 48" E, 746.00 FEET TO A
POINT IN THE GRANTOR'S EAST LINE; THENCE WITH SAID LINE, S 00° 08' 12" W, 2270.81
FEET TO A POINT IN THE SOUTH LINE OF SECTION 6; THENCE WITH SAID SECTION LINE, N
84° 24' 29" W, 256.68 FEET TO A POINT; THENCE DEPARTING THE SOUTH LINE OF SECTION

4, N 58° 26' 46" W, 1935.60 FEET TO THE TRUE POINT OF BEGINNING, CONTAINING 47.571
ACRES.

MB001062

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 03:02 PM 12/26/2007
INITIAL FILING # 4201026 4
AMENDMENT      # 2007 4865241
SRV: 071361417

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

John Cunningham
CT
208 South LaSalle Street
Suite 814
Chicago, IL 60604

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. Initial FINANCING STATEMENT FILE #
Document 4201026 4 filed 07/16/2004

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. [X] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement described above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.

[ ] DELETE name: Give record name to be deleted in item 6a or 6b.

[✓] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
GM Facilities Trust No. 1999-1

OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
Wells Fargo Bank Northwest, N.A., as Agent

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
07129724 1D     File with Delaware S.O.S.                    JC 7113B2(1) RG

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

MB001063

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Please return to:
CT Corporation - UCC Services
Attn: Heather Pulver
208 S. LaSalle Street
Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:28 PM 07/16/2004
INITIAL FILING NUM: 4201028 0
AMENDMENT   NUMBER: 0000000
SRV: 040524328

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
GM Facilities Trust No. 1999-1

1c. MAILING ADDRESS: c/o Wilmington Trust Company, Rodney Square North, 1100 N. Market Street

CITY: Wilmington    STATE: DE    POSTAL CODE: 19890    COUNTRY: USA

1d. TAX ID #: SSN OR EIN | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION: Delaware Statutory Trust | 1f. JURISDICTION OF ORGANIZATION: Delaware | 1g. ORGANIZATIONAL ID #, if any

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Wells Fargo Bank Northwest, N.A., as Agent

3c. MAILING ADDRESS: c/o Corporate Trust Services, MAC: U1228-120, 299 S. Main Street, 12th Fl.

CITY: Salt Lake    STATE: UT    POSTAL CODE: 84111    COUNTRY: USA

4. This FINANCING STATEMENT covers the following collateral:

See Rider A attached hereto

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING

8. OPTIONAL FILER REFERENCE DATA
GM TPC Amendment #04271102    7 pages attached    61SD11780-10

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    04271102-17

**CONFIDENTIAL**

MB001064

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR    **GM Facilities Trust No. 1999-1**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e TYPE OF ORGANIZATION | 11f JURISDICTION OF ORGANIZATION | 11g ORGANIZATIONAL ID # if any | ☐ NONE

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - Insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☒ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

GM Facilities Trust No. 1999-1
c/o Wilmington Trust Company, as Owner Trustee
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property described on Exhibit A attached hereto (the "West Virginia Land"); all buildings, structures and other improvements of every kind existing at any time and from time to time on or under the West Virginia Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, utility pipes, conduits and lines, parking areas and roadways, and including all Modifications and other additions to or changes in any of the foregoing but excluding any Modifications or other property in which the Lessee retains ownership under the terms of the West Virginia Master Lease (all of the foregoing, collectively, the "Improvements"), all of the Debtor's right, title and interest in, to and under the West Virginia Master Lease, including, without limitation, all credits, options, deposits, rights of first offer, rights of first refusal, extension rights and expansion rights (together with the West Virginia Land, Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being collectively referred to as the "West Virginia Property");

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the West Virginia Property or any part thereof;

13187999.1 04271102                                                                West Virginia

CONFIDENTIAL                                                                MB001066

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of, the West Virginia Property, but specifically excluding trade fixtures and other personal property of any tenant on the West Virginia Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D) all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the West Virginia Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E) all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the West Virginia Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the West Virginia Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F) all books and records relating to or used in connection with the operation of the West Virginia Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G) all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the West Virginia Master Lease, including without limitation Article XIII of the West Virginia Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the West Virginia Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the West Virginia Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the West Virginia Property or any easement or other right therein;

(H) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the West Virginia Property or any part thereof and all plans and specifications relating to the West Virginia Property; and

13187999 1 04271102                                                                                    West Virginia

(I) all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the West Virginia Master Lease and the West Virginia Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the West Virginia Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the West Virginia Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above; (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the West Virginia Master Lease or the West Virginia Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease; (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the West Virginia Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the West Virginia Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the West Virginia Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the West Virginia Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable

under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the Excepted Payments attributable to the West Virginia Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the West Virginia Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; *provided, however,* that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the West Virginia Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection, all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the West Virginia Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; *provided, however,* that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the West Virginia Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and other

13187999.4   04278102                                                          West Virginia

CONFIDENTIAL

MB001069

benefits at any time belonging or pertaining to the West Virginia Land or the Improvements thereon, including, without limitation, the use of any streets, ways, alleys, vaults or stripe of land adjoining, abutting, adjacent or contiguous to such West Virginia Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such West Virginia Land.

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"West Virginia Lease Supplement" means that certain Credit Line Deed of Trust Lease Supplement dated as of April 25, 2000, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"West Virginia Master Lease" means that certain Open End Mortgages and West Virginia Master Lease dated as of April 25, 2000, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the West Virginia Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<p style="text-align:center">END OF RIDER A</p>

13187999 1 04271102

West Virginia

CONFIDENTIAL

**EXHIBIT A**

Legal Description

A parcel of real estate containing 59.33676 acres, more or less, lying and being in Opequon District, Berkeley County, West Virginia, as more fully set forth and described as D-1A (the "Parcel") upon a Plat thereof prepared by Triad Engineering, Inc., dated April 18, 2000 and recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Plat Cabinet No. 8 at Slides 103 and 104 (the "Plat")

13187999 1 04(27)1)02                                                                West Virginia

CONFIDENTIAL                                                    MB001071

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Please return to:
CT Corporation - UCC Services
Attn: Heather Peltron
188 S. LaSalle Street
Chicago, IL 60604

**DELAWARE DEPARTMENT OF STATE**
**U.C.C. FILING SECTION**
**FILED 04:30 PM 07/16/2004**
**INITIAL FILING NUM: 4201031 4**
**AMENDMENT NUMBER: 0000000**
**SRV: 040524336**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

GM Facilities Trust No. 1999-1

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

1c. MAILING ADDRESS: c/o Wilmington Trust Company, Rodney Square North. 1100 N Market Street | CITY: Wilmington | STATE: DE | POSTAL CODE: 19890 | COUNTRY: USA

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION: Delaware Statutory Trust | 1f. JURISDICTION OF ORGANIZATION: Delaware | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

Wells Fargo Bank Northwest, N.A., as Agent

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

3c. MAILING ADDRESS: c/o Corporate Trust Services, MAC: U1228-120, 299 S. Main Street, 12th Fl. | CITY: Salt Lake | STATE: UT | POSTAL CODE: 84111 | COUNTRY: USA

4. This FINANCING STATEMENT covers the following collateral:

See Rider A attached hereto

5. ALTERNATIVE DESIGNATION [if applicable] ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

GM TPC Amendment #04271102    9 page Attached    11150175012

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    04271102-18

CONFIDENTIAL

MB001072

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR **GM Facilities Trust No. 1999-1**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

CONFIDENTIAL

MB001073

THIS FINANCING STATEMENT IS PRESENTED TO A
FILING OFFICER FOR FILING PURSUANT TO THE
UNIFORM COMMERCIAL CODE

Debtor:

GM Facilities Trust No. 1999-1
c/o Wilmington Trust Company, as Owner Trustee
1100 North Market Street
Wilmington, Delaware 19890-0001

Secured Party:

Wells Fargo Bank Northwest, N.A., as Agent
Corporate Trust Services
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, Utah 84111

RIDER A to Financing Statement

The Collateral

This financing statement covers Debtor's interest in and to the following property:

(A) all of Debtor's right, title and interest in and to the parcel(s) of real property described on Exhibit A attached hereto (the "Texas Land"); all buildings, structures and other improvements of every kind existing at any time and from time to time on or under the Texas Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, utility pipes, conduits and lines, parking areas and roadways, and including all Modifications and other additions to or changes in any of the foregoing but excluding any Modifications or other property in which the Lessee retains ownership under the terms of the Texas Master Lease (all of the foregoing, collectively, the "Improvements"), all of the Debtor's right, title and interest in, to and under the Texas Master Lease, including, without limitation, all credits, options, deposits, rights of first offer, rights of first refusal, extension rights and expansion rights (together with the Texas Land, Improvements, Appurtenant Rights, Fixtures and Equipment relating thereto being collectively referred to as the "Texas Property");

(B) all the estate, right, title, claim or demand whatsoever of the Debtor in possession or expectancy, in and to the Texas Property or any part thereof;

(C) all of the fixtures, furnishings and fittings of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with,

13190106 1  04711102                                                              Texas

CONFIDENTIAL                                                                MB001074

in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of, the Texas Property, but specifically excluding trade fixtures and other personal property of any tenant on the Texas Property (all of the foregoing in this paragraph (C) being referred to as the "Fixtures");

(D) all of the equipment and apparatus of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by the Debtor, including but without limiting the generality of the foregoing, all storm doors and windows, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, building cleaning systems (including window cleaning apparatus), communication systems (including satellite dishes and antennae), sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits and fittings of every kind and description, but specifically excluding the property of any tenant on the Texas Property (all of the foregoing in this paragraph (D) being referred to as the "Equipment");

(E) all substitutes and replacements of, and all additions and improvements to, the Improvements, the Fixtures and the Equipment, subsequently acquired by the Debtor or constructed, assembled or placed by the Debtor on the Texas Land, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Texas Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by the Debtor;

(F) all books and records relating to or used in connection with the operation of the Texas Property or any part thereof and all general intangibles related to the operation of the Improvements now existing or hereafter arising;

(G) all insurance policies (including title insurance policies) required to be maintained by the Lessee pursuant to the Texas Master Lease, including without limitation Article XIII of the Texas Master Lease, including the right to collect and receive such proceeds in accordance with the terms of the Texas Master Lease; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Texas Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Texas Property or any easement or other right therein;

(H) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Texas Property or any part thereof and all plans and specifications relating to the Texas Property; and

(I) all of the estate, right, title, interest, benefits, powers and privileges of the Debtor, as lessor, under the Texas Master Lease and the Texas Lease Supplement (hereinafter referred to collectively as the "Assigned Lease") including (i) the immediate and continuing right, on a non-exclusive basis, to make claim for, receive and collect all rents, income, revenues, issues, profits,

43190106 1 04271102

Texas

CONFIDENTIAL                                                                                        MB001075

insurance proceeds, condemnation awards, sales proceeds and other sums payable to or receivable by the Debtor under the Assigned Lease, or pursuant to any provisions thereof (including, without limitation, all Basic Rent and Supplemental Rent) (collectively, the "Lease Rents"), including all cash, securities or letter of credit rights delivered or deposited pursuant thereto to secure performance by the Lessee of its obligations thereunder (in each case, other than Excepted Payments), (ii) the right and power (which right and power are coupled with an interest) upon the purchase by the Lessee of the interest of the Debtor in the Texas Property in accordance with the Assigned Lease to execute and deliver as irrevocable agent and attorney-in-fact of the Debtor an appropriate instrument necessary to convey the interest of the Debtor therein, or to pay over or assign to the Lessee those sums to which it is entitled if the Lessee becomes obligated to purchase the interest of the Debtor in the Texas Property and to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any such purchase and conveyance, (iii) the right, on a non-exclusive basis, to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any purchase or conveyance referred to in clause (ii) above, (iv) the right (subject to the consent of the Required Lenders), on a non-exclusive basis, to declare the Texas Master Lease or the Texas Lease Supplement to be in default and to give all notices with respect thereto, (v) subject to the terms of the Operative Documents (and to the consent of the Required Lenders), the right to exercise remedies under or with respect to the Assigned Lease, (vi) the right (subject to the consent of the Required Lenders or each Participant as provided in Section 14.5 of the Participation Agreement) to make all waivers, amendments and agreements on behalf of the Debtor under the Assigned Lease provided for or permitted under the Assigned Lease, without the written consent of the Debtor, (vii) the right (subject to the consent of the Required Lenders) to give all notices, consents, releases and other instruments provided under the Assigned Lease, (viii) the right, on a non-exclusive basis, to receive all notices sent to the Debtor under the Assigned Lease, (ix) the Debtor's interest under the Assigned Lease in the Lessee's tangible and intangible property used or arising in connection with the Texas Property, including, but not limited to, permits, licenses, contract rights and prepaid expenses, and (x) the right (subject to the consent of the Required Lenders) to do any and all other things whatsoever which the Debtor is or any lessor is, or may be, entitled to do under the Assigned Lease.

(J) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor to and under all other leases of the Texas Property, any license, concession, management, mineral or other agreements of a similar kind entered into by the Debtor that permit the use or occupancy of the Texas Property or any part thereof for any purpose in return for any payment, or permit the extraction or taking of any gas, oil, water or other minerals from the Texas Property or any part thereof in return for payment of any fee, rent or royalty, now or hereafter entered into by the Debtor (collectively, the "Other Leases" and, together with the Assigned Lease, the "Leases"), together with all estate, rights, title, interest, benefits, powers and privileges of the Debtor, as Debtor, under the Other Leases including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Other Leases (collectively, the "Other Lease Rents") and all estate, right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit delivered or deposited thereunder to secure performance by the lessees of their obligations thereunder; provided, however, that (i) the Debtor shall exclusively retain, and the Other Lease Rents shall in no event include, the

J3190106 1 04271102                                                                                  Texas

CONFIDENTIAL                                                                          MB001076

Excepted Payments attributable to the Texas Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(K) All of the estate, right, title, interest, benefits, powers and privileges of the Debtor, to and under all agreements or contracts for the sale or other disposition of all or any part of the Texas Property, now or hereafter entered into by the Debtor (collectively, the "Contracts"), together with all estate, right, title, interest, benefits, powers and privileges of the Debtor under the Contracts including, without limitation, the immediate and continuing right, on a non-exclusive basis, to make claim for, receive, collect and receipt for all charges, fees, income, issues, profits, receipts, rents, revenues or royalties payable under any of the Contracts (collectively, the "Contract Rents" and, together with the Lease Rents and the Other Lease Rents, the "Rents") and all right, title and interest of the Debtor thereunder, including all cash, securities or letters of credit deposited thereunder to secure performance by the obligors of their obligations thereunder; provided, however, that (i) the Debtor shall exclusively retain, and the Contract Rents shall in no event include, the Excepted Payments attributable to the Texas Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(L) On a non-exclusive basis, all of the right, title and interest of the Debtor in and to all claims and rights to the payment of money at any time arising in connection with any repudiation, rejection or breach of the Assigned Lease by the Lessee or a trustee or receiver of the Lessee (or any Other Lease by any lessee thereunder, trustee or receiver of any such lessee) under any insolvency statute, law or regulation, including, without limitation, all rights to recover damages arising out of such breach or rejection, all rights to charges payable by the Lessee or such trustee or receiver (or by such lessee, trustee or receiver) in respect of the Texas Property or any portions thereof following rejection, repudiation or disaffirmance of any Assigned Lease or following the entry of an order for relief under any insolvency statute, law or regulation in respect of the Lessee (or such lessee) and all rentals and other charges outstanding under the Assigned Lease (or Other Lease) as of the date of entry of such order for relief; provided, however, that (i) the Debtor shall exclusively retain all rights with respect to the Excepted Payments attributable to the Texas Property and (ii) any such amounts shall be applied in accordance with Section 5.4 of the Participation Agreement.

(M) all proceeds, both cash and noncash, of the foregoing;

Capitalized terms used herein and not otherwise defined shall have their respective meanings set forth in Appendix A to the Participation Agreement. For purposes of this Rider A, the following terms have the following respective meanings and reference to any agreement, document or instrument means such agreement, document or instrument as amended, restated, modified or supplemented from time to time:

"Appurtenant Rights" means (i) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and other benefits at any time belonging or pertaining to the Texas Land or the Improvements thereon, including, without limitation, the use of any streets, ways, alleys, vaults or strips of land adjoining, abutting, adjacent or contiguous to such Texas Land and (ii) all permits, licenses and rights, whether or not of record, appurtenant to such Texas Land.

131001061  04271102                                                                 Texas

CONFIDENTIAL

MB001077

"Excepted Payments" is as defined in Appendix A to the Participation Agreement.

"Lessee" means General Motors Corporation, a Delaware corporation, and its successors and assigns.

"Texas Lease Supplement" means that certain Texas Lease Supplement dated as of March 22, 2002, between Debtor, as Lessor, and General Motors Corporation, as Lessee, as amended from time to time.

"Texas Master Lease" means that certain Texas Master Lease and Deeds of Trust dated as of March 22, 2002, between Debtor as Lessor and Mortgagee and General Motors Corporation as Lessee or Mortgagor, as amended from time to time.

"Modifications" means alterations, renovations, improvements and additions to the Texas Property or any part thereof and substitutions and replacements thereof.

"Participation Agreement" means that Second Amended and Restated Participation Agreement dated as of June 30, 2004 among Lessee, as Lessee and as Certificate Holder, the Debtor, Hannover Funding Company LLC, as the CP Lender, the financial institutions listed on Schedule II thereto as Purchasers, Wells Fargo Bank Northwest, N.A., as Agent for the CP Lender and the Purchasers, and Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator.

<div align="center">END OF RIDER A</div>

53190106 1 04771102                                                                                Texas

CONFIDENTIAL                                                                    MB001078

GF# 565676
Mortgagee Policy No. 44-903-101-000565676                                    Page 1

EXHIBIT A

DESCRIPTION

Tract 1

Description of a 29.335 acre tract of land situated in the Thomas Epps Survey,
Abstract No. 395 and L. Dotson Survey, Abstract No. 383, Denton County, Texas, said
tract being all of Lot 3, Block 4, Alliance Gateway North Addition, an addition to
the City of Roanoke, Texas, according to the plat recorded in Cabinet T, Page 16, of
the Plat Records, Denton County, Texas; said 29.335 acre tract being more
particularly described as follows:

Commencing at a 1/2 inch iron rod found, said point being West right-of-way line of
said Freedom Drive (an 80 foot wide public right-of-way) and the Northeast corner of
Lot 1, Block 4 of the Alliance Gateway North Addition according to the plat recorded
in Cabinet S, Page 15, of the Deed Records, Denton County, Texas;

THENCE North 00 degrees 00 minutes 57 seconds West, along the West line of said
Freedom Drive, a distance of 180.67 feet to point;

THENCE South 89 degrees 59 minutes 03 seconds West, departing the West line of said
Freedom Drive, a distance of 40.00 feet to a 1/2 inch iron rod with "Pacheco Koch"
cap set for the Point of Beginning;

THENCE South 89 degrees 59 minutes 03 seconds West, a distance of 793.00 feet to a
1/2 inch iron rod with "Pacheco Koch" cap set for corner;

THENCE North 00 degrees 00 minutes 57 seconds West, a distance of 1600.00 feet to a
1/2 inch iron rod with "Pacheco Koch" cap set for corner;

THENCE North 89 degrees 59 minutes 03 seconds East, a distance of 800.00 feet to a
1/2 inch iron rod with "Pacheco Koch" cap set for corner in the said West line of
Freedom Drive;

THENCE in a Southerly direction, along the said West line of Freedom Drive, the
following six calls:

South 00 degrees 00 minutes 57 seconds East, a distance of 442.10 feet to a 1/2 inch
iron rod with "Pacheco Koch" cap set for corner, said point being the beginning of a
tangent curve to the left whose center bears North 89 degrees 59 minutes 03 seconds
East, a distance of 560.00 feet from said point;

Southerly, along said tangent curve to the left, through a central angle of 15
degrees 59 minutes 17 seconds, an arc distance of 180.27 feet, with a chord bearing
and distance of South 08 degrees 30 minutes 36 seconds, West, 180.00 feet to a 1/2
inch iron rod with "Pacheco Koch" cap set at the beginning of a reverse curve to the
right the radius of which bears South 78 degrees 59 minutes 46 seconds, West, a
distance of 560.00 feet, from said point;

Southerly along said reverse curve to the right through a central angle of 05 degrees
26 minutes 28 seconds, an arc distance of 81.67 feet with a chord bearing and
distance of South 08 degrees 37 minutes 00 seconds East, 81.64 feet to a 1/2 inch
iron rod with "Pacheco Koch" cap set at the beginning of a non-tangent curve to the
right the radius of which bears North 66 degrees 05 minutes 06 seconds West, a
distance of 180.00 feet from said point;

CONFIDENTIAL

MB001079

GF# 565676
Mortgagee Policy No. 44-903-101-000565676                                      Page 2

### DESCRIPTION

Southwesterly along the said non-tangent curve to the right through a central angle
of 06 degrees 04 minutes 08 seconds, an arc distance of 20.13 feet, with a chord
bearing and distance of South 26 degrees 56 minutes 59 seconds West, 20.12 feet to a
1/2 inch iron rod with "Pacheco Koch" cap set at the end of said curve;

South 29 degrees 59 minutes 02 seconds West, a distance of 53.71 feet to a 1/2 inch
iron rod with "Pacheco Koch" cap set at an angle point;

South 00 degrees 00 minutes 57 seconds East, a distance of 833.49 feet to the Point
of Beginning.


Tract 2

Being a tract of land situated in the L. Dotson Survey, Abstract No. 383 and the J.
Short Survey, Abstract No. 1236, Denton County, Texas and being a portion of those
tracts of land as described by deed to AIL Investment, LP and recorded in Volume
4258, Page 137 and Volume 4208, Page 1825, a portion of that tract of land as
described by deed to LCS Land Partners, Ltd. and recorded in Volume 4100, Page 245,
and a portion of those tracts of land as described deed to Lakeway Land, Ltd. and
recorded under Clerk's File No. 97-R0015424 and under Clerk's File No. 97-R0019427,
Real Property Records, Denton County, Texas, said tract of land being more
particularly described by metes and bounds as follows:

Beginning at the Northeast corner of Lot 1, Block 4, Alliance Gateway North Addition
as recorded in Cabinet S, Page 15 Plat Records, Denton County, Texas, said point
being in the Westerly right-of-way line of Freedom Drive as recorded in Volume 4389,
Page 1969 Real Property Records, Denton County, Texas, said point also being the
beginning of a curve to the left;

THENCE 121.76 feet along the arc of said curve to the left and along Northerly line
of said Lot 1, Block 4 through a central angle of 14 degrees 23 minutes 32 seconds, a
radius of 492.50 feet and a long chord of North 82 degrees 48 minutes 57 seconds,
123.45 feet;

THENCE South 89 degrees 59 minutes 03 seconds West, 1341.33 feet to a point in the
Westerly line of AIL Investment, LP tract (Volume 4258, Page 137) and the Easterly
right-of-way line of Lakeway Land, Ltd. (under Clerk's File No. 97-R0019474);

THENCE North 00 degrees 05 minutes 38 seconds West, 100.00 feet along the common
property line between said AIL Investment, LP tract and said Lakeway Land, Ltd.
tract;

THENCE South 89 degrees 59 minutes 03 seconds West, 710.78 feet;

THENCE North 00 degrees 00 minutes 57 seconds West, 50.00 feet;

THENCE North 89 degrees 59 minutes 03 seconds East, 842.28 feet;

THENCE North 43 degrees 37 minutes 28 seconds East, 91.54 feet to the beginning of a
curve to the left;

CONFIDENTIAL

MB001080

GF# 565676
Mortgagee Policy No. 44-901-101-000565676                                    Page 3

## DESCRIPTION

THENCE 126.27 feet along the arc of said curve to the left through a central angle of
15 degrees 57 minutes 33 seconds, a radius of 453.74 feet and a long chord of North
75 degrees 38 minutes 42 seconds East, 125.87 feet;

THENCE North 67 degrees 39 minutes 55 seconds East, 93.42 feet;

THENCE South 00 degrees 00 minutes 57 seconds East, 61.79 feet;

THENCE North 89 degrees 59 minutes 03 seconds East, 793.00 feet;

THENCE North 00 degrees 00 minutes 57 seconds East, 691.32 feet to a point in the
Westerly line of Freedom Drive;

THENCE North 89 degrees 59 minutes 03 seconds East, 10.00 feet along said Westerly
right-of-way line to the beginning of a curve to the right;

THENCE 47.12 feet along the arc of said curve to the right and continuing along said
Westerly right-of-way line through a central angle of 90 degrees 00 minutes 00
seconds, a radius of 30.00 feet and a long chord of South 45 degrees 00 minutes 57
seconds East, 42.43 feet;

THENCE South 00 degrees 00 minutes 57 seconds East, 861.79 feet continuing along said
Westerly right-of-way line to the Point of Beginning.

Save and Except that portion of the above described tract contained within the
boundaries of Freedom Drive as Dedicated by plat recorded in Cabinet T, Slide 16,
Plat Records, Denton County, Texas.

CONFIDENTIAL                                                    MB001081

**CORPORATION SERVICE COMPANY**
www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

Matter#    07146537
Project Id :
Additional Reference : NOT PROVIDED

Order#    593342-2
Order Date    06/02/2008

Entity Name :    GENERAL MOTORS CORPORATION    (Debtor)

Jurisdiction :    DE-SECRETARY OF STATE

Request for :    Copy Request Retrieval
Copy Type :    UCC COPIES

Result :    All copies retrieved.

Ordered by MICHAEL PERLOWSKI at MAYER BROWN LLP

Thank you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at www.incspot.com.

If you have any questions concerning this order or IncSpot, please feel free to contact us.

DINA BAILEY
dibailey@cscinfo.com

Corporation Service Company(R) Terms and Conditions
You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

**CONFIDENTIAL**

**MB001082**

# A2796

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| Denise Wilson | 8162211000 |

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

GILMORE & BELL, P.C.

2405 GRAND BOULEVARD

SUITE 1100

KANSAS CITY MO 64108

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 12:33 PM 04/05/2002
INITIAL FILING NUM: 2065254 5
AMENDMENT   NUMBER: 0000000
SRV: 020229021

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | GENERAL MOTORS CORPORATION | | | | |
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| | 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| | 767 FIFTH AVENUE 14TH FLOOR | NEW YORK | | NY | 10153 | US |

| | 1d. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | CORPORATION | DE | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| | 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| | | | | | |

| | 2d. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | JPMORGAN CHASE BANK | | | | |
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| | 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| | 450 WEST 33RD STREET 15TH FLOOR | NEW YORK | | NY | 10001 | US |

10. Miscellaneous:
K-105778

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
K-105778

CONFIDENTIAL

MB001083

A2797

## UCC FINANCING STATEMENT ADDENDUM – COLLATERAL

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | GENERAL MOTORS CORPORATION | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

This FINANCING STATEMENT covers the following collateral

Equipment and fixtures constituting Leased Property (as defined in the hereinaft er defined Lease) under that certain Lease Agreement, dated as of March 1, 2002, between the Debtor and the Unified Government of Wyandotte County/Kansas City, Kansas (the "Lease"), as amended or supplemented from time to time, and products and proceeds thereof.

CONFIDENTIAL

MB001084

# A2798

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

9009335778

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC DIRECT SERVICES

2727 ALLEN PARKWAY

SUITE 1000

HOUSTON TX 77019

DELAWARE DEPARTMENT OF STATE
O.C.C. FILING SECTION
FILED 06:21 PM 03/21/2007
INITIAL FILING # 2085254 5
AMENDMENT        # 2007 1062594
SRV: 070345810

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE #

2085254 5

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |
|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description; or describe collateral ☐ assigned.

9. **NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT**

JP Morgan Chase Bank

10. OPTIONAL FILER REFERENCE DATA

OK-0-24238379-089672 GMC/KANSAS1 GMC/Kansas City K

CONFIDENTIAL

MB001085

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

0008335770

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC DIRECT SERVICES

2727 ALLEN PARKWAY

SUITE 1000

HOUSTON TX 77019

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 10:51 AM 03/23/2007
INITIAL FILING # 2085254 5
AMENDMENT     # 2007 1086999
SRV: 070352413

1a. INITIAL FINANCING STATEMENT FILE #
2085254 5

1b. This FINANCING STATEMENT AMENDMENT is
☐ to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor _or_ ☑ Secured Party of record. Check only _one_ of these two boxes.
Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☑ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JP MORGAN CHASE BANK | | | |

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| THE BANK OF NEW YORK TRUST COMPANY, N.A. | | | |

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 601 TRAVIS STREET | HOUSTON | TX | 77002 | US |

| 7d. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION |
|---|---|
| | |

8. AMENDMENT (COLLATERAL CHANGE): check only _one_ box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT
JP MORGAN CHASE BANK

10. OPTIONAL FILER REFERENCE DATA
OZ-0-24247706-089672 GMI/KANSAS1 GMI/Kansas City K

CONFIDENTIAL

MB001086

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** (optional)

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

    Intercounty Clearance Corp
    440 Ninth Avenue
    New York, NY 10001

P11463

DK "Central/SOS" Secretary of State

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 01:59 PM 04/12/2002
INITIAL FILING NUM: 2092526 7
AMENDMENT   NUMBER: 0000000
SRV: 020235671

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** GENERAL MOTORS CORPORATION | | | | | |
| OR **1b. INDIVIDUAL'S LAST NAME** | | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **1c. MAILING ADDRESS** 767 FIFTH AVENUE | **CITY** NEW YORK | **STATE** NY | **POSTAL CODE** 10153 | | **COUNTRY** USA |
| **1d. TAX ID #: SSN OR EIN** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** Corporation | **1f. JURISDICTION OF ORGANIZATION** Delaware | **1g. ORGANIZATIONAL ID #, if any** 0056025 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | | |
| OR **2b. INDIVIDUAL'S LAST NAME** | | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | | **COUNTRY** |
| **2d. TAX ID #: SSN OR EIN** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID #, if any** | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | | | |
| OR **3b. INDIVIDUAL'S LAST NAME** | | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **3c. MAILING ADDRESS** 1 CHASE MANHATTAN PLAZA | **CITY** NEW YORK | **STATE** NY | **POSTAL CODE** 10081 | | **COUNTRY** |

**4. This FINANCING STATEMENT covers the following collateral:**

~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

To be filed with the Secretary of State of Delaware.

See Schedule I and Exhibit A attached hereto and made a part hereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 0000128694 | | | | | No. Add Streets | |

— NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**Filing Office Copy**    00773

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York NY
(212) 594-C020

CONFIDENTIAL

MB001087

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME
**GENERAL MOTORS CORPORATION**

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

12. ☐ ADDITIONAL SECURED PARTY'S or ☒ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME
**AUTO FACILITIES REAL ESTATE TRUST 2001-1**

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS C/O WILMINGTON TRUST COMPANY - 1100 NORTH MARKET SQUARE | CITY WILMINGTON | STATE DE | POSTAL CODE 19890-0001 | COUNTRY USA |
|---|---|---|---|---|

13. The FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing

14. Description of real estate:

   See Exhibit A attached hereto
   and incorporated herein by
   reference.

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

Auto Facilities Real Estate Trust
2001-1
c/o Wilimington Trust Company
1100 North Market St.
Wilmington, DE  19809-0001

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

0000128694    DE.*Central/SOS* Secretary of State    00773

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York, NY
(212) 594-0020

CONFIDENTIAL

MB001088

SCHEDULE I
TO
UCC-1 FINANCING STATEMENT

DEBTOR:          GENERAL MOTORS CORPORATION
                 767 Fifth Avenue
                 New York, New York 10153

SECURED PARTY:   AUTO FACILITIES REAL ESTATE TRUST 2001-1
                 c/o Wilmington Trust Company
                 1100 North Market Street
                 Wilmington, Delaware 19890-0001

ASSIGNEE OF
SECURED PARTY:   JPMORGAN CHASE BANK, as Administrative Agent
                 1 Chase Manhattan Plaza
                 New York, New York 10081

This Financing Statement covers all of Debtor's right, title and interest in, to, and under the following property now owned or at any time hereafter acquired by Debtor, or in which Debtor may acquire any right, title or interest (all of which property being described below being hereafter collectively called the "Collateral"):

(A)    the parcel of real property described on Exhibit A attached hereto (the "Land"), together with (i) the Improvements, (ii) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and benefits at any time belonging or pertaining to the Land or the Improvements, including, without limitation, the use of any streets, ways, alleys, vaults or strips of land adjoining, abutting, adjacent or contiguous to the Land and all permits, licenses and rights, whether of not of record, appurtenant to the Land, and (iii) all fixtures relating to the Improvements, including all components thereof, located in or on such Improvements, together with all replacements, modifications, alterations and additions thereto, but specifically excluding trade fixtures and other personal property of any subtenant at the Property (the property and interests described in clauses (i), (ii) and (iii), together with the Land, are collectively referred to as the "Property");

(B)    all the estate, right, title, claim or demand whatsoever of Debtor, in possession or expectancy, in and to the Property or any part thereof;

(C)    all easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water and riparian rights, development rights, air rights, mineral rights and all estates, rights, titles, interests, privileges, licenses, tenements, hereditaments and appurtenances belonging, relating or appertaining to the Property, and any

509420-0198-06817-NY02.2173861.1

CONFIDENTIAL                                          MB001089

2

reversions, remainders, rents, issues, profits and revenue thereof and all land lying in the bed of any street, road or avenue, in front of or adjoining the Property to the center line thereof;

(D)    all substitutes and replacements of, and all additions and improvements to, the Property, subsequently acquired by or released to Debtor or constructed, assembled or placed by Debtor on the Property, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by Debtor;

(E)    all leases, subleases, underlettings, concession agreements, management agreements, licenses and other agreements relating to the use or occupancy of the Property or any part thereof, now existing or subsequently entered into by Debtor and whether written or oral and all guarantees of any of the foregoing with respect to the Property, as any of the foregoing may be amended, restated, extended, renewed or modified from time to time, and all rights of Debtor in respect of cash and securities deposited thereunder and the right to receive and collect the revenues, income, rents, issues and profits thereof, together with all other rents, royalties, issues, profits, revenue, income and other benefits arising from the use and enjoyment of the Collateral;

(F)    all unearned premiums under insurance policies now or subsequently obtained by Debtor relating to the Property and Debtor's interest in and to all proceeds of any such insurance policies (including title insurance policies), including the right to collect and receive such proceeds; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Property or any easement or other right therein; and

(G)    all amendments, modifications, substitutions, replacements and additions of any of the foregoing, all proceeds, both cash and noncash, of any of the foregoing.

509420-0198-08617-NY02.2173867.1

CONFIDENTIAL

MB001090

3

For purposes hereof, the following terms shall have the meanings set forth below:.

"Backup Facility Banks" is defined in the Preamble to the Participation Agreement.

"Backup Facility Loan" is any advance of funds made by a Backup Facility Bank under Section 2.2(a) of the Loan Facility Agreement and any portion of an RFC Loan which has been purchased by a Backup Facility Bank and converted pursuant to Section 2.3 of the Loan Facility Agreement.

"Improvements" shall mean the buildings, structures, and other improvements of every kind existing at any time and from time to time on or under the Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, curbs, gutters, flood controls, sanitary tie-ins, utility pipes, conduits and lines, parking areas and roadways, and including all additions to or changes in the Improvements at any time but excluding any additions or improvements or other property in which Lessee retains ownership under the terms of the Lease, and all equipment, apparatus, furnishings, fittings and personal property of every kind and nature whatsoever purchased, leased or otherwise acquired by the Debtor using the proceeds of Loans or the Investor Contributions and now or subsequently attached to, contained in or used or usable in any way in connection with any operation or letting of the Land, including but without limiting the generality of the foregoing, all screens, awnings, shades, blinds, curtains, draperies, artwork, holiday decorations, bidets, toilets, carpets, rugs, storm doors and windows, shelving, furniture and furnishings, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilation, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, loading and unloading equipment and systems, stoves, ranges, laundry equipment, cleaning systems (including window cleaning apparatus), telephones, communication systems (including satellite dishes and antennae), televisions, computers, sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits, appliances, fittings and fixtures of every kind and description.

"Initial Closing Date" shall mean October 31, 2001.

"Investor Contribution" is defined in Section 1.2 of the Participation Agreement.

"Lease" means the Lease, dated as of the Initial Closing Date between Secured Party and Debtor, together with any Memoranda of Lease and Supplement.

"Liquidity Agreement" means that certain Liquidity Agreement dated as of the Initial Closing Date among RFC, the Backup Facility Banks, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

"Loans" means the collective reference to Backup Facility Loans and RFC Loans.

"Loan Facility Agreement" means the Loan Facility Agreement dated as of the Initial Closing Date among RFC, the Backup Facility Banks, Secured Party, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

509420-0198-08617-NY02.2173867.1

CONFIDENTIAL

MB001091

**A2805**

4

"Participation Agreement" means the Participation Agreement dated as of the Initial Closing Date among Debtor, Secured Party, Wilmington Trust Company, the investors party thereto, RFC, the Backup Facility Banks, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

"RFC" means Relationship Funding Company, LLC, a Delaware limited liability company.

"RFC Loans" means any advance of funds made by RFC pursuant to Section 2.1 of the Loan Facility Agreement, and the portion of any Backup Facility Loan, which is repurchased by RFC pursuant to Section 3.11 of the Liquidity Agreement.

509420-0198-08617-NY02.2173867.1

CONFIDENTIAL

MB001092

A2806

Exhibit A

Land

509420-0198-08617-NY02.2173867.1

CONFIDENTIAL

MB001093

REVISION NUMBER : 2
COMMITMENT NUMBER: 06016118-450

PARCEL I: (FEE)

A part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East; thence on the South line of said quarter section, South 89°58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a point on the proposed northerly right-of-way line of Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00°11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44°57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D.,LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land South 27°04'49" East 230.75 feet to a point on the North line of land described in a deed to Atlantis Limited, recorded as Instrument Number 77-71815 in said Recorder's Office; thence on said North line, North 89°58'39" West 125.00 feet to the Northwest corner of said land; thence on the West line of said land, South 00°18'43" West 1265.59 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 17°50'46" and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 661.79 feet (said arc being subtended by a chord which bears North 73°26'52" West 659.11 feet to the Point of Beginning), containing 15.187 acres, more or less.

PARCEL II: (FEE)

A part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East; thence on the South line of said Quarter Section, South 89°58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a point on the proposed northerly right-of-way line Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said

CONFIDENTIAL

MB001094

line, North 00°11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44°57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land and also the westerly line of land also described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166352, the following two (2) courses: 1) South 27°04'49" East 755.96 feet; 2) South 44°01'47" East 845.73 feet to a point on the northerly right-of-way lie of Decatur Boulevard, the Grant of Right-of-Way of which is recorded as Instrument Number 99-25069 in said Recorder's Office, said point being on a non-tangent curve, concave southerly, having a central angle of 11°51'28" and a radius of 646.96 feet; thence southwesterly on said curve and right-of-way line an arc distance of 133.89 feet (said arc being subtended by a chord which bears South 60°37'31" West 133.65 feet); thence North 6°12'36" East 51.15 feet; thence North 44°01'47" West 354.67 feet; thence North 89°32'06" West 56.07 feet; thence South 44°57'34" West 662.94 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 20°09'52" and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 747.75 feet(said arc being subtended by a chord which bears North 72°17'23" West 743.90 feet to the Point of Beginning.

CONFIDENTIAL

REVISION NUMBER: 2
COMMITMENT NO. 06016118-450

EXCEPTING THEREFROM the following described real estate:

As part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14, Range 02 East; thence on the South line of said quarter section, South 89°58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a point on the proposed northerly right-of-way line of Ameriplex Parkway(unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00°11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44°57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land South 27°04'49" East 230.75 feet to a point on the North line of land described in a deed to Atlantis Limited, recorded as Instrument Number 77-71815 in said Recorder's Office; thence on said North line, North 89°58'39" West 125.00 feet to the Northwest corner of said land; thence on the West line of said land, South 00°18'43" West 1265.59 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 17°50'46" and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 661.79 feet (said arc being subtended by a chord which bears North 73°26'52" West 659.11 feet to the Point of Beginning, containing 15.187 acres, more or less.

PARCELS I and II, when combined are the same as the following perimeter description:

A part of the Southwest Quarter of Section 3, Township 14, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East ; thence on the South line of said quarter section, South 89°58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a

point on the proposed northerly right-of-way line Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00°11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line North 44°57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land and also the westerly line of land also described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166352, the following two (2) courses: 1) South 27°04'49" East 755.96 feet; 2) South 44°01'47" East 845.73 feet to a point on the northerly right of way line of Decatur Boulevard, the Grant of Right-of-Way of which is recorded as Instrument Number 99-25069 in said Recorder's Office, said point being on a non-tangent curve, concave southerly, having a central angle of 11°51'28" and a radius of 646.96 feet, thence southwesterly on said curve and right-of-way line an arc distance of 133.89 feet (said arc being subtended by a chord which bears South 60°37'31" West 133.65 feet); thence North 6°12'36" East 51.15 feet; thence North 44°01'47" West 354.67 feet, thence north 89°32'06" West 56.07 feet; thence South 44°57'34" West 662.94 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 20°09'52" and a radius of 2124.67 feet thence westerly on said curve and unrecorded right-of-way line an arc distance of 747.75 feet (said arc being subtended by a chord which bears North 72°17'23" West 743.90 feet to the Point of Beginning, containing 26.497 acres, more or less.

PARCEL III: (DRAINAGE)

Non-exclusive Temporary Drainage Easement dated January 12, 2000 and recorded January 19, 2000 as Instrument No. 2000-8126 to be created upon and over the following described land:

A strip of land, 30 feet in width, over a part of the Southwest Quarter of Section3, Township 14 North, Range 02 East of the Second Principal Meridian, lying 15 feet on each side of the following described centerline:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East, thence on the South line thereof, South 89 degrees 58 minutes 39 seconds East 736.17 feet; thence North 00 degrees 11 minutes 13 seconds East 20.00 feet to a point on the North right-of-way line of Milhouse Road, being the POINT OF BEGINNING of the herein described centerline; thence continuing North 00 degrees 11 minutes 13 seconds East 450.86 feet to a point on the northerly right-of-way line of future Ameriplex Parkway (unrecorded), and there terminating; the side lines of said strip to be lengthened or shortened to begin at the North right-of-way line of Milhouse Road and end at the northerly right-of-way of future Ameriplex Parkway, containing 0.310 acres, more or less.

CONFIDENTIAL

MB001097

A2811

LOT 3 IN CARLOW CORPORATE CENTER SOUTH UNIT 1, A PART OF THE SOUTHEAST 1/4 OF SECTION 30, TOWNSHIP 37 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 10, 2001 AS DOCUMENT R2001-104725 IN WILL COUNTY, ILLINOIS.

Property Address:
1355 Remington Blvd.
Bolingbrook, Illinois 60440

P.I.N.:
12-02-30-403-001-0000

CONFIDENTIAL                                                              MB001098

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
UCC Filings                                    800-828-0938

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research
41 State Street
Suite 600
Albany, NY  12207

melissa@nationalcorp.com

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 03:23 PM 11/30/2006
INITIAL FILING NUM: 6416808 4
AMENDMENT NUMBER: 0000000
SRV: 061094538

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| GENERAL MOTORS CORPORATION | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 300 RENAISSANCE CENTER | DETROIT | MI | 48265-3000 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION Delaware | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 2558 | HOUSTON | TX | 77252 | USA |

4. This FINANCING STATEMENT covers the following collateral:

THE ASSETS DESCRIBED ON ANNEX I ATTACHED HERETO AND INCORPORATED BY
REFERENCE HEREIN.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
6701-619 -- DE - Secretary of State

F#176913
A#274606

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

CONFIDENTIAL                                                                    MB001099

This Annex I
consists of 4 pages

ANNEX I
TO
UCC-1 FINANCING STATEMENT

Debtor:              General Motors Corporation
                     300 Renaissance Center
                     Detroit, Michigan 48265-3000
                     (the "Debtor")

Secured Party:       JPMorgan Chase Bank, N.A., as Administrative Agent
                     P.O. Box 2558
                     Houston, TX 77252
                     (the "Agent")

        The financing statement to which this Annex I is attached covers all of the
following property of the Debtor now owned or at any time hereafter acquired (collectively, the
"Collateral"):

        (1)    all Equipment and all Fixtures, other than Excluded Equipment and
               Fixtures;

        (2)    all Documents and General Intangibles attributable solely to Equipment or
               Fixtures, other than Excluded Equipment and Fixtures;

        (3)    all books and records pertaining solely to Equipment or Fixtures (or
               Proceeds or products of Equipment or Fixtures), in each case, other than
               Excluded Equipment and Fixtures (or Proceeds or products thereof); and

        (4)    to the extent not otherwise included in the foregoing clauses, all Proceeds
               and products of any and all of the foregoing.

        As used herein, the following terms shall have the following meanings:

        "Collateral Agreement": the collateral agreement, dated as of November 29, 2006,
among the Debtor, Saturn Corporation and JPMorgan Chase Bank, N.A., as administrative agent
(as the same may be amended, supplemented or otherwise modified from time to time).

        "Credit Agreement": the term loan agreement, dated as of November 29, 2006,
among the Debtor, Saturn Corporation, the lenders party thereto and JPMorgan Chase Bank,
N.A., as administrative agent (as the same may be amended, supplemented or otherwise
modified from time to time).

        "Documents": all "Documents" as such term is defined in Section 9-102 of the
UCC as in effect on November 29, 2006.

[[2660674]]

CONFIDENTIAL                                                                MB001100

Page 2 of 4

"Equipment": all "Equipment" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Excluded Equipment and Fixtures": all Equipment and Fixtures, now owned or at any time hereafter acquired by the Debtor, which are not located at U.S. Manufacturing Facilities; provided, that no Equipment or Fixtures now owned or at any time hereafter acquired by the Debtor (a) located at a U.S. Manufacturing Facility or (b) transferred to a Non-U.S. Manufacturing Property other than (i) in the ordinary course of business or (ii) for a business purpose of the Debtor and its Subsidiaries (as determined in good faith by the Debtor) and not primarily for the purpose of (1) reducing the security for the Obligations or (2) making such Equipment and Fixtures available to other creditors, shall constitute Excluded Equipment and Fixtures.

"Fixtures": all "Fixtures" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"General Intangible": a "General intangible" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Governmental Authority": any nation or government, any state, province, municipality or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory, taxing or administrative functions of government including the European Central Bank.

"Grantors": a collective reference to the Debtor and Saturn Corporation, and each other direct or indirect wholly-owned domestic Subsidiary of the Debtor that at the option of the Debtor becomes a party to the Collateral Agreement, the Credit Agreement and each other relevant Loan Document, in each case by executing a joinder agreement in form and substance reasonably acceptable to the Agent.

"Lender": each Lender party to the Credit Agreement.

"Lien": any mortgage, pledge, lien, security interest, charge, statutory deemed trust, conditional sale or other title retention agreement or other similar encumbrance.

"Loan": a loan made by a Lender to the Debtor pursuant to the Credit Agreement.

"Loan Documents": the Credit Agreement, the Security Documents, the Notes and any amendment, waiver, supplement or other modification to any of the foregoing.

"Non-U.S. Manufacturing Property": any real property of a Grantor that is not part of a U.S. Manufacturing Facility.

"Note": a promissory note, executed and delivered by the Debtor with respect to the Loans, substantially in the form of Exhibit B to the Credit Agreement.

"Obligations": all obligations of any Grantor in respect of any unpaid Loans and any interest thereon (including interest accruing after the maturity of any Loan and interest

[[2660674]]

CONFIDENTIAL

MB001101

Page 3 of 4

accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to any Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) and all other obligations and liabilities of any Grantor to the Agent or to any Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with the Credit Agreement, any other Loan Document or any other document made, delivered or given in connection therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses or otherwise.

"Person": an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Proceeds": all "Proceeds" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Secured Parties": the collective reference to the Agent, each Lender and each other Person to which any Obligations are owed.

"Security Documents": the Collateral Agreement and all other security documents delivered to the Agent granting or purporting to grant a Lien on any property of any Person to secure the Obligations, including financing statements or financing change statements under the applicable Uniform Commercial Code.

"Subsidiary": as to any Person (the "parent"), any other Person of which at least a majority of the outstanding stock or other equity interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or comparable governing body of such Person (irrespective of whether or not at the time stock or other equity interests of any other class or classes of such Person shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the parent, or by one or more Subsidiaries, or by the parent and one or more Subsidiaries.

"UCC": the Uniform Commercial Code as from time to time in effect in the State of New York; provided, however, that, in the event that, by reason of mandatory provisions of law, any of the attachment, perfection or priority of the Agent's and the Secured Parties' security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

"U.S. Manufacturing Facility": (a) any plant or facility of a Grantor listed on Schedule 1 hereto, including all related or appurtenant land, buildings, Equipment and Fixtures, and (b) any plant or facility of a Grantor, including all related or appurtenant land, buildings, Equipment and Fixtures, acquired or leased by a Grantor after the date hereof which is located within the continental United States of America and at which manufacturing, production, assembly or processing activities are conducted.

[[2560674]]

CONFIDENTIAL                                                     MB001102

# A2816

09-00504-reg    Doc 41-10    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 10
Pg 82 of 82

Page 4 of 4

### Schedule 1
### to Annex 1 to UCC-1 Financing Statement

| Num | Facility | City | State |
|---|---|---|---|
| 1 | GM ASSEMBLY ARLINGTON | ARLINGTON | TX |
| 2 | GM ASSEMBLY BOWLING GREEN | BOWLING GREEN | KY |
| 3 | GM ASSEMBLY DETROIT HAMTRAMCK | DETROIT | MI |
| 4 | GM ASSEMBLY FAIRFAX | KANSAS CITY | KS |
| 5 | GM ASSEMBLY FLINT | FLINT | MI |
| 6 | GM ASSEMBLY FORT WAYNE | FORT WAYNE | IN |
| 7 | GM ASSEMBLY JANESVILLE | JANESVILLE | WI |
| 8 | GM ASSEMBLY LANSING DELTA TOWNSHIP | LANSING | MI |
| 9 | GM ASSEMBLY LANSING GRAND RIVER | LANSING | MI |
| 10 | GM ASSEMBLY LORDSTOWN | LORDSTOWN | OH |
| 11 | GM ASSEMBLY MORAINE | DAYTON | OH |
| 12 | GM ASSEMBLY ORION | LAKE ORION | MI |
| 13 | GM ASSEMBLY PONTIAC EAST | PONTIAC | MI |
| 14 | GM ASSEMBLY SATURN WILMINGTON | WILMINGTON | DE |
| 15 | GM ASSEMBLY SHREVEPORT | SHREVEPORT | LA |
| 16 | GM ASSEMBLY WENTZVILLE | WENTZVILLE | MO |
| 17 | GM MFD AMT (SAMCO) | NEW HUDSON | MI |
| 18 | GM MFD FLINT | FLINT | MI |
| 19 | GM MFD FLINT TOOL & DIE | FLINT | MI |
| 20 | GM MFD GRAND BLANC | GRAND BLANC | MI |
| 21 | GM MFD GRAND RAPIDS | WYOMING | MI |
| 22 | GM MFD INDIANAPOLIS | INDIANAPOLIS | IN |
| 23 | GM MFD LANSING REGIONAL STAMPING | LANSING | MI |
| 24 | GM MFD LORDSTOWN | LORDSTOWN | OH |
| 25 | GM MFD MANSFIELD | MANSFIELD | OH |
| 26 | GM MFD MARION | MARION | IN |
| 27 | GM MFD PARMA | PARMA | OH |
| 28 | GM MFD PONTIAC | PONTIAC | MI |
| 29 | GM MFD SHREVEPORT | SHREVEPORT | LA |
| 30 | GM POWERTRAIN ALLISON BALTIMORE | WHITE MARSH | MD |
| 31 | GM POWERTRAIN BAY CITY | BAY CITY | MI |
| 32 | GM POWERTRAIN BEDFORD | BEDFORD | IN |
| 33 | GM POWERTRAIN DEFIANCE | DEFIANCE | OH |
| 34 | GM POWERTRAIN FLINT ENGINE SOUTH | FLINT | MI |
| 35 | GM POWERTRAIN LIVONIA | LIVONIA | MI |
| 36 | GM POWERTRAIN MASSENA | MASSENA | NY |
| 37 | GM POWERTRAIN PARMA | PARMA | OH |
| 38 | GM POWERTRAIN ROMULUS ENGINE | ROMULUS | MI |
| 39 | GM POWERTRAIN TOLEDO | TOLEDO | OH |
| 40 | GM POWERTRAIN TONAWANDA | BUFFALO | NY |
| 41 | GM POWERTRAIN WARREN TRANSMISSION | WARREN | MI |
| 42 | GM POWERTRAIN WILLOW RUN | YPSILANTI | MI |

[[2660674]]

CONFIDENTIAL

MB001103

A2817

# EXHIBIT 11

| From: | Silva, Ann B. <asilva@morganlewis.com> on behalf of Toder, Richard S. <rtoder@morganlewis.com> |
|---|---|
| Sent: | Friday, June 19, 2009 10:00 AM |
| To: | stephen.karotkin@weil.com; tmayer@kramerlevin.com; john.rapisardi@cwt.com |
| Cc: | Toder, Richard S. <rtoder@morganlewis.com>; Gottfried, Andrew D. <agottfried@morganlewis.com> |
| Subject: | GM - Mayer Brown Affidavit |
| Attach: | XScan001.pdf;exhs001.pdf |

Message from Richard Toder
and Andy Gottfried:

As we advised each of you yesterday, on October 30, 2008, an unauthorized UCC-3 termination statement was filed by Mayer Brown (acting as counsel for GM in an unrelated synthetic lease financing transaction in which JPMorgan Chase was Administrative Agent), with respect to the Delaware UCC-1 financing statement relating to the Term Loan Collateral. Attached herewith is an Affidavit executed by the Mayer Brown partner in charge of the synthetic lease transaction, which sets forth the circumstances under which the termination statement was filed, and makes clear that such action was unauthorized.

We received the Affidavit last night by e-mail and the exhibits were not affixed. We are attaching for your reference a set of the exhibits that we discussed with Mayer Brown as being the exhibits that will be attached to the original Affidavit, that we expect to receive either today or Monday via Federal Express.

We are hopeful that this clarifies the situation and removes any doubt that the termination statement was ineffective.

**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0600
Main: 212.309.6000 | Fax: 212.309.6001
www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.



EXHIBIT NO. 6
Perlowski

Kelly A. Siska

JPMCB - 00000076

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

GENERAL MOTORS CORPORATION, et al.,

               Debtors.

----------------------------------------------------------x

Chapter 11
Case No. 09-50026 (REG)

STATE OF ILLINOIS      )
                       : ss.
COUNTY OF COOK      )

        Robert E. Gordon, being duly sworn, deposes and says:

        1.      I am a partner in the law firm Mayer Brown LLP ("Mayer Brown"). My practice concentrates in real estate and lease finance transactions.

        2.      Mayer Brown represented General Motors Corporation ("GM") in a synthetic lease transaction (the "Transaction") in 2001. I was responsible for the Transaction at Mayer Brown. That Transaction was set forth in a Participation Agreement dated October 31, 2001, among GM, as Lessee and Construction Agent, Auto Facilities Real Estate Trust 2001-1, as Lessor, Wilmington Trust Company, as Trustee, the Persons named therein as Investors, the Persons name therein as Backup Facility Banks, Relationship Funding Company, LLC, and The Chase Manhattan Bank (now know as JPMorgan Chase Bank), as Administrative Agent.

        3.      The Transaction financed GM's acquisition of certain real property (the "Properties").

        4.      In accordance with the Transaction, UCC financing statements were filed, including a UCC-1 financing statement filed with the Secretary of State of Delaware listing GM as debtor and JPMorgan Chase Bank, as Administrative Agent, as secured party. A copy of this

CHDB02 5248573.2

JPMCB - 00000077

UCC-1 financing statement filed in Delaware listing GM as debtor (the "GM Lease Financing Statement") is attached as Exhibit A.

5.    On October 30, 2008, GM paid all outstanding amounts due under the Transaction and exercised the purchase option provided for therein. As part of the termination of the Transaction, the parties executed a Termination Agreement and Release of Operative Agreements dated October 30, 2008 (the "Termination Agreement"). A copy of the Termination Agreement is attached as Exhibit B.

6.    Pursuant to the Termination Agreement, GM was "authorize[d] . . . to file a termination of any existing Financing Statement relating to the Properties" that were financed in the Transaction. See Exhibit B.

7.    In accordance with the authority given to GM in the Termination Agreement, Mayer Brown, as counsel to GM, caused a UCC termination statement to be filed with respect to the GM Lease Financing Statement filed for the Transaction. A copy of this termination statement is attached as Exhibit C.

8.    Unbeknownst to me, the paralegal tasked with filing the termination statement for the GM Leasing Financing Statement referred to above also caused a termination statement to be filed with respect to a UCC-1 financing statement that is entirely unrelated to the Transaction or the Properties (the "Unrelated Financing Statement"). A copy of this UCC termination statement (the "Unrelated Termination Statement") is attached as Exhibit D.

9.    The Unrelated Financing Statement, attached as Exhibit E, lists GM as debtor and JPMorgan Chase Bank, N.A., as secured party, but the terms of the financing statement demonstrate that it relates to collateral pledged under a November 29, 2006 term loan agreement (the "Term Loan Agreement") and did not relate to the Transaction or the Properties.

CHDB02 5248573.2                                        2

JPMCB - 00000078

Mayer Brown has never represented GM with respect to the Term Loan Agreement among GM

and others and JPMorgan Chase Bank, N.A., as Administrative Agent.

      10.     GM was not authorized by the Termination Agreement to terminate any

financing statement related to the Term Loan Agreement.

                    Robert E. Gordon

Sworn to before me this
18TH day of June, 2009

Notary Public

```
┌─────────────────────────────┐
│      "OFFICIAL SEAL"         │
│      Elizabeth A. Dwyer      │
│  Notary Public, State of Illinois │
│  My Commission Exp. 05/18/2010   │
└─────────────────────────────┘
```

JPMCB - 00000079

EXHIBIT A

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 01:59 PM 04/12/2002
INITIAL FILING NUM: 2092526 7
AMENDMENT NUMBER: 0000000
SRV: 020235671

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Intercounty Clearance Corp
440 Ninth Avenue
New York, NY 10001

P11463

DE, "Central/SOS" Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **GENERAL MOTORS CORPORATION** | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **767 FIFTH AVENUE** | CITY **NEW YORK** | | STATE **NY** | POSTAL CODE **10153** | COUNTRY **USA** |
| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Corporation** | 1f. JURISDICTION OF ORGANIZATION **Delaware** | 1g. ORGANIZATIONAL ID #, if any **0056825** | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT** | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **1 CHASE MANHATTAN PLAZA** | CITY **NEW YORK** | | STATE **NY** | POSTAL CODE **10081** | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

XXXX XXXXXXXXXX X XXX XXXXXXX XXXXXXXXXXXXXXXXXXXXXX XX XXXXX XXXXXXXXX

To be filed with the Secretary of State of Delaware.

See Schedule I and Exhibit A attached hereto and made a part hereof.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
0000128694

No. Add. Sheets

— NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Filing Office Copy       00773

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York, NY
(212) 594-0020

JPMCB - 00000080

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

**GENERAL MOTORS CORPORATION**

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

12. ☐ ADDITIONAL SECURED PARTY'S   or ☒ ASSIGNOR S/P'S   NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

**AUTO FACILITIES REAL ESTATE TRUST 2001-1**

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| C/O WILMINGTON TRUST COMPANY - 1100 NORTH MARKET SQUARE | WILMINGTON | DE | 19890-0001 | USA |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing

14. Description of real estate:

See Exhibit A attached hereto
and incorporated herein by
reference.

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above described real estate (if Debtor does not have a record interest):

Auto Facilities Real Estate Trust
     2001-1
c/o Wilimington Trust Company
1100 North Market St.
Wilmington, DE   19809-0001

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust   or ☐ Trustee acting with respect to property held in trust   or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY—NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

0000J28694          DE, *Central/SOS* Secretary of State          00773

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York, NY
(212) 594-0020

JPMCB - 00000081

SCHEDULE I
TO
UCC-1 FINANCING STATEMENT

DEBTOR:              GENERAL MOTORS CORPORATION
                    767 Fifth Avenue
                    New York, New York 10153

SECURED PARTY:      AUTO FACILITIES REAL ESTATE TRUST 2001-1
                    c/o Wilmington Trust Company
                    1100 North Market Street
                    Wilmington, Delaware 19890-0001

ASSIGNEE OF
SECURED PARTY:      JPMORGAN CHASE BANK, as Administrative Agent
                    1 Chase Manhattan Plaza
                    New York, New York 10081

This Financing Statement covers all of Debtor's right, title and interest in, to, and under the following property now owned or at any time hereafter acquired by Debtor, or in which Debtor may acquire any right, title or interest (all of which property being described below being hereafter collectively called the "Collateral"):

(A)    the parcel of real property described on Exhibit A attached hereto (the "Land"), together with (i) the Improvements, (ii) all agreements, easements, rights of way or use, rights of ingress or egress, privileges, appurtenances, tenements, hereditaments and other rights and benefits at any time belonging or pertaining to the Land or the Improvements, including, without limitation, the use of any streets, ways, alleys, vaults or strips of land adjoining, abutting, adjacent or contiguous to the Land and all permits, licenses and rights, whether or not of record, appurtenant to the Land, and (iii) all fixtures relating to the Improvements, including all components thereof, located in or on such Improvements, together with all replacements, modifications, alterations and additions thereto, but specifically excluding trade fixtures and other personal property of any subtenant at the Property (the property and interests described in clauses (i), (ii) and (iii), together with the Land, are collectively referred to as the "Property");

(B)    all the estate, right, title, claim or demand whatsoever of Debtor, in possession or expectancy, in and to the Property or any part thereof;

(C)    all easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water and riparian rights, development rights, air rights, mineral rights and all estates, rights, titles, interests, privileges, licenses, tenements, hereditaments and appurtenances belonging, relating or appertaining to the Property, and any

509420-0198-08617-NY02.2173867.1

JPMCB - 00000082

2

reversions, remainders, rents, issues, profits and revenue thereof and all land lying in the bed of any street, road or avenue, in front of or adjoining the Property to the center line thereof;

(D)    all substitutes and replacements of, and all additions and improvements to, the Property, subsequently acquired by or released to Debtor or constructed, assembled or placed by Debtor on the Property, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Property or offsite, and, in each such case, without any further mortgage, conveyance, assignment or other act by Debtor;

(E)    all leases, subleases, underlettings, concession agreements, management agreements, licenses and other agreements relating to the use or occupancy of the Property or any part thereof, now existing or subsequently entered into by Debtor and whether written or oral and all guarantees of any of the foregoing with respect to the Property, as any of the foregoing may be amended, restated, extended, renewed or modified from time to time, and all rights of Debtor in respect of cash and securities deposited thereunder and the right to receive and collect the revenues, income, rents, issues and profits thereof, together with all other rents, royalties, issues, profits, revenue, income and other benefits arising from the use and enjoyment of the Collateral;

(F)    all unearned premiums under insurance policies now or subsequently obtained by Debtor relating to the Property and Debtor's interest in and to all proceeds of any such insurance policies (including title insurance policies), including the right to collect and receive such proceeds; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Property for the taking by eminent domain, condemnation or otherwise, of all or any part of the Property or any easement or other right therein; and

(G)    all amendments, modifications, substitutions, replacements and additions of any of the foregoing, all proceeds, both cash and noncash, of any of the foregoing.

JPMCB - 00000083

3

For purposes hereof, the following terms shall have the meanings set forth below:.

"Backup Facility Banks" is defined in the Preamble to the Participation Agreement.

"Backup Facility Loan" is any advance of funds made by a Backup Facility Bank under Section 2.2(a) of the Loan Facility Agreement and any portion of an RFC Loan which has been purchased by a Backup Facility Bank and converted pursuant to Section 2.3 of the Loan Facility Agreement.

"Improvements" shall mean the buildings, structures, and other improvements of every kind existing at any time and from time to time on or under the Land, together with any and all appurtenances to such buildings, structures or improvements, including sidewalks, curbs, gutters, flood controls, sanitary tie-ins, utility pipes, conduits and lines, parking areas and roadways, and including all additions to or changes in the Improvements at any time but excluding any additions or Improvements or other property in which Lessee retains ownership under the terms of the Lease, and all equipment, apparatus, furnishings, fittings and personal property of every kind and nature whatsoever purchased, leased or otherwise acquired by the Debtor using the proceeds of Loans or the Investor Contributions and now or subsequently attached to, contained in or used or usable in any way in connection with any operation or letting of the Land, including but without limiting the generality of the foregoing, all screens, awnings, shades, blinds, curtains, draperies, artwork, holiday decorations, bidets, toilets, carpets, rugs, storm doors and windows, shelving, furniture and furnishings, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilation, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, loading and unloading equipment and systems, stoves, ranges, laundry equipment, cleaning systems (including window cleaning apparatus), telephones, communication systems (including satellite dishes and antennae), televisions, computers, sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, conduits, appliances, fittings and fixtures of every kind and description.

"Initial Closing Date" shall mean October 31, 2001.

"Investor Contribution" is defined in Section 1.2 of the Participation Agreement.

"Lease" means the Lease, dated as of the Initial Closing Date between Secured Party and Debtor, together with any Memoranda of Lease and Supplement.

"Liquidity Agreement" means that certain Liquidity Agreement dated as of the Initial Closing Date among RFC, the Backup Facility Banks, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

"Loans" means the collective reference to Backup Facility Loans and RFC Loans.

"Loan Facility Agreement" means the Loan Facility Agreement dated as of the Initial Closing Date among RFC, the Backup Facility Banks, Secured Party, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

509420-0198-08617-NY02.2173867.1

JPMCB - 00000084

Case 13-2187, Document 42, 09/17/2013, 1043972, Page146 of 319

4

"Participation Agreement" means the Participation Agreement dated as of the Initial Closing Date among Debtor, Secured Party, Wilmington Trust Company, the investors party thereto, RFC, the Backup Facility Banks, and The Chase Manhattan Bank (n/k/a JPMorgan Chase Bank).

"RFC" means Relationship Funding Company, LLC, a Delaware limited liability company.

"RFC Loans" means any advance of funds made by RFC pursuant to Section 2.1 of the Loan Facility Agreement, and the portion of any Backup Facility Loan, which is repurchased by RFC pursuant to Section 3.11 of the Liquidity Agreement.

509420-0198-08617-NY02.2173867.1

JPMCB - 00000085

Exhibit A

Land

509420-0198-08617-NY02.2173867.1

JPMCB - 00000086

REVISION NUMBER : 2
COMMITMENT NUMBER: 06016118-450

PARCEL I: (FEE)

A part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East; thence on the South line of said quarter section, South 89° 58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a point on the proposed northerly right-of-way line of Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00° 11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44° 57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D.,LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land South 27°04'49" East 230.75 feet to a point on the North line of land described in a deed to Atlantis Limited, recorded as Instrument Number 77-71815 in said Recorder's Office; thence on said North line, North 89°58'39" West 125.00 feet to the Northwest corner of said land; thence on the West line of said land, South 00°18'43" West 1265.59 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 17°50'46" and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 661.79 feet (said are being subtended by a chord which bears North 73°26'52" West 659.11 feet to the Point of Beginning), containing 15.187 acres, more or less.

PARCEL II: (FEE)

A part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East; thence on the South line of said Quarter Section, South 89°58'39" East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11'13" East 472.92 feet to a point on the proposed northerly right-of-way line Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said

JPMCB - 00000087

line, North 00°11ʹ13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44°57ʹ32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land and also the westerly line of land also described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166352, the following two (2) courses: 1) South 27°04ʹ49" East 755.96 feet; 2) South 44°01ʹ47" East 845.73 feet to a point on the northerly right-of-way lie of Decatur Boulevard, the Grant of Right-of-Way of which is recorded as Instrument Number 99-25069 in said Recorder's Office, said point being on a non-tangent curve, concave southerly, having a central angle of 11°51ʹ28" and a radius of 646.96 feet; thence southwesterly on said curve and right-of-way line an arc distance of 133.89 feet (said arc being subtended by a chord which bears South 60°37ʹ31" West 133.65 feet); thence North 6°12ʹ36" East 51.15 feet; thence North 44°01ʹ47" West 354.67 feet; thence North 89°32ʹ06" West 56.07 feet; thence South 44°57ʹ34" West 662.94 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 20°09ʹ52" and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 747.75 feet(said arc being subtended by a chord which bears North 72°17ʹ23" West 743.90 feet to the Point of Beginning.

JPMCB - 00000088

REVISION NUMBER: 2
COMMITMENT NO. 06016118-450

EXCEPTING THEREFROM the following described real estate:

As part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14, Range 02 East; thence on the South line of said quarter section, South 89°58′39″ East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11′13″ East 472.92 feet to a point on the proposed northerly right-of-way line of Ameriplex Parkway(unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00°11′13″ East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line, North 44°57′32″ East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land South 27°04′49″ East 230.75 feet to a point on the North line of land described in a deed to Atlantis Limited, recorded as Instrument Number 77-71815 in said Recorder's Office; thence on said North line, North 89°58′39″ West 125.00 feet to the Northwest corner of said land; thence on the West line of said land, South 00°18′43″ West 1265.59 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 17°50′46″ and a radius of 2124.67 feet; thence westerly on said curve and unrecorded right-of-way line an arc distance of 661.79 feet (said arc being subtended by a chord which bears North 73°26′52″ West 659.11 feet to the Point of Beginning, containing 15.187 acres, more or less.

PARCELS I and II, when combined are the same as the following perimeter description:

A part of the Southwest Quarter of Section 3, Township 14, Range 02 East of the Second Principal Meridian, Decatur Township, Marion County, Indiana, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East ; thence on the South line of said quarter section, South 89°58′39″ East 721.20 feet to the Southeast corner of land described in a deed to Richard S. and Carrie E. Edwards, recorded as Instrument Number 76-70011 in the Marion County Recorder's Office; thence on the East line of said Edwards and the prolongation thereof, North 00°11′13″ East 472.92 feet to a

point on the proposed northerly right-of-way line Ameriplex Parkway (unrecorded), said point being the POINT OF BEGINNING of the herein described real estate; thence continuing on said line, North 00°11'13" East 625.66 feet to a point on the southeasterly line of land described in a deed to the Indianapolis Airport Authority, recorded as Instrument Number 95-01734; thence on said southeasterly line North 44°57'32" East 929.24 feet to the northwesterly corner of land described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166351 in said Recorder's Office; thence on the westerly line of said land and also the westerly line of land also described in a deed to Decatur P.D., LLC, recorded as Instrument Number 99-166352, the following two (2) courses: 1) South 27°04'49" East 755.96 feet; 2) South 44°01'47" East 845.73 feet to a point on the northerly right of way line of Decatur Boulevard, the Grant of Right-of-Way of which is recorded as Instrument Number 99-25069 in said Recorder's Office, said point being on a non-tangent curve, concave southerly, having a central angle of 11°51'28" and a radius of 646.96 feet, thence southwesterly on said curve and right-of-way line an arc distance of 133.89 feet (said arc being subtended by a chord which bears South 60°37'31" West 133.65 feet); thence North 6°12'36" East 51.15 feet; thence North 44°01'47" West 354.67 feet, thence north 89°32'06" West 56.07 feet; thence South 44°57'34" West 662.94 feet to a point on the aforesaid unrecorded right-of-way line of Ameriplex Parkway, said point being on a non-tangent curve, concave southerly, having a central angle of 20°09'52" and a radius of 2124.67 feet thence westerly on said curve and unrecorded right-of-way line an arc distance of 747.75 feet (said arc being subtended by a chord which bears North 72°17'23" West 743.90 feet to the Point of Beginning, containing 26.497 acres, more or less.

PARCEL III: (DRAINAGE)

Non-exclusive Temporary Drainage Easement dated January 12, 2000 and recorded January 19, 2000 as Instrument No. 2000-8126 to be created upon and over the following described land:

A strip of land, 30 feet in width, over a part of the Southwest Quarter of Section 3, Township 14 North, Range 02 East of the Second Principal Meridian, lying 15 feet on each side of the following described centerline:

Commencing at the Southwest corner of the Southwest Quarter of Section 3, Township 14 North, Range 02 East, thence on the South line thereof, South 89 degrees 58 minutes 39 seconds East 736.17 feet; thence North 00 degrees 11 minutes 13 seconds East 20.00 feet to a point on the North right-of-way line of Milhouse Road, being the POINT OF BEGINNING of the herein described centerline; thence continuing North 00 degrees 11 minutes 13 seconds East 450.86 feet to a point on the northerly right-of-way line of future Ameriplex Parkway (unrecorded), and there terminating; the side lines of said strip to be lengthened or shortened to begin at the North right-of-way line of Milhouse Road and end at the northerly right-of-way of future Ameriplex Parkway, containing 0.310 acres, more or less.

JPMCB - 00000090

LOT 3 IN CARLOW CORPORATE CENTER SOUTH UNIT 1, A PART OF THE SOUTHEAST 1/4 OF SECTION 30, TOWNSHIP 37 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 10, 2001 AS DOCUMENT R2001-104725 IN WILL COUNTY, ILLINOIS.

Property Address:
1355 Remington Blvd.
Bolingbrook, Illinois 60440

P.I.N.:
12-02-30-403-001-0000

JPMCB - 00000091

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

8008335778

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC DIRECT SERVICES

2727 ALLEN PARKWAY

SUITE 1000

HOUSTON TX 77019

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 01:34 PM 03/05/2007*
*INITIAL FILING # 2092526 7*
*AMENDMENT      # 2007 0812718*
*SRV: 070278695*

---

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2092526 7 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of those two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT

JPMorgan Chase Bank, as Administrative Agent

10. OPTIONAL FILER REFERENCE DATA

DE-0-23995124-509420/0198 General Motors 000000

JPMCB - 00000092

Exhibit B

TERMINATION AGREEMENT AND RELEASE
OF OPERATIVE AGREEMENTS

October 30, 2008

The parties to this Termination Agreement and Release of Operative Agreements (this
"Termination and Release") acknowledge that the Lessee is exercising the Maturity Date
Purchase Option pursuant to Section 20.2 of the Lease.

In consideration of ONE DOLLAR ($1.00) and other good and valuable consideration,
the receipt and sufficiency of which is hereby confessed and acknowledged, the undersigned,
each of which is a party to one or more of the agreements identified as the Operative
Agreements, hereby agree that (i) each of such Operative Agreements and any Commitment
thereunder is hereby terminated and is discharged and of no further force or effect as of the date
hereof, and (ii) the Administrative Agent and the Lessor do hereby (x) release all of their Liens
and Lessor Liens against the Properties created by the Operative Agreements, (y) acknowledge
that such Liens and Lessor Liens are forever released, satisfied and discharged and (x) authorize
Lessee to file a termination of any existing Financing Statement relating to the Properties.  The
foregoing notwithstanding, the following provisions shall survive the termination hereby (A) any
provision of the Operative Agreements which survives termination by its express terms, (B) the
indemnification obligations set forth in Sections 12.1 (General Indemnity) and 12.2 (General Tax
Indemnity) of the Participation Agreement (as defined herein), and (C) the obligations of the
Lessee to pay Transaction Expenses pursuant to Section 8.2(iii) of the Participation Agreement.

All capitalized terms not otherwise defined herein shall have the meanings set forth in
Annex A to that certain Participation Agreement dated as of October 31, 2001, among General
Motors Corporation, as Lessee and Construction Agent, Auto Facilities Real Estate Trust 2001-1,
as Lessor, Wilmington Trust Company, as Trustee, the Persons named therein as Investors, the
Persons named therein as Backup Facility Banks, Relationship Funding Company, LLC, and
JPMorgan Chase Bank, as Administrative Agent, as amended (the "Participation Agreement").

This Termination and Release may be executed in counterparts, each of which shall be
deemed to be an original, and all of which, when taken together, shall be deemed to be a single
document.

This Termination and Release shall be governed by, and construed and interpreted in
accordance with, the internal laws of the State of New York, without regard to conflicts of law
principles (other than Title 14 of Article 5 of the New York General Obligations Law), except to
the extent the application of laws of another jurisdiction are mandatory.

[ *The remainder of this page is intentionally left blank.* ]

*Termination Agreement and*
*Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000093

The undersigned have executed this Termination and Release as of the date first above here written.

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:    Wilmington Trust Company, not in its
       individual capacity but solely as Trustee

By: _____
    Name:
    Title:            Michael B. McCarthy
                      Vice President

GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By: _____
    Name:
    Title:

WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth in the Participation Agreement

By: _____
    Name:
    Title:             Michael B. McCarthy
                       Vice President

RELATIONSHIP FUNDING COMPANY, LLC

By: _____
    Name:
    Title:

S-1                          *Termination Agreement and*
                             *Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000094

The undersigned have executed this Termination and Release as of the date first above here written.

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:    Wilmington Trust Company, not in its
       individual capacity but solely as Trustee

       By:_____
          Name:
          Title:

GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY:_____

By:_____
   Name:
   Title:    DEBRA HOMIC HOGE
             DIRECTOR
             WORLDWIDE REAL ESTATE

JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By:_____
   Name:
   Title:

WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth in the Participation Agreement

By:_____
   Name:
   Title:

RELATIONSHIP FUNDING COMPANY, LLC

By:_____
   Name:
   Title:

S-1                          *Termination Agreement and*
                             *Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000095

The undersigned have executed this Termination and Release as of the date first above here written.

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:    Wilmington Trust Company, not in its
      individual capacity but solely as Trustee

By:_____
      Name:
      Title:


GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

By:_____
      Name:
      Title:


JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By:_____
      Name:
      Title:    **RICHARD W. DUKER**
             **MANAGING DIRECTOR**


WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth in the Participation Agreement

By:_____
      Name:
      Title:


RELATIONSHIP FUNDING COMPANY, LLC

By:_____
      Name:
      Title:


S-1                              *Termination Agreement and*
                              *Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000096

The undersigned have executed this Termination and Release as of the date first above here written.

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:    Wilmington Trust Company, not in its
       individual capacity but solely as Trustee

By: _____
    Name:
    Title:

GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By: _____
    Name:
    Title:

WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth in the Participation Agreement

By: _____
    Name:       Michael B. McCarthy
    Title:         Vice President

RELATIONSHIP FUNDING COMPANY, LLC

By: _____
    Name:
    Title:

S-1                            *Termination Agreement and*
                               *Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000097

**A2840**

09-00504-reg    Doc 41-11    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 11
Pg 24 of 37

The undersigned have executed this Termination and Release as of the date first above here written.

<div style="margin-left:40%;">

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:    Wilmington Trust Company, not in its
        individual capacity but solely as Trustee

By:_____
    Name:
    Title:


GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

By:_____
    Name:
    Title:


JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By:_____
    Name:
    Title:


WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth in the Participation Agreement

By:_____
    Name:
    Title:


RELATIONSHIP FUNDING COMPANY, LLC

By: _____
    Name: Thomas J. Irvin
    Title: Manager

</div>

S-1                                    *Termination Agreement and*
                                       *Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000098

BTMU CAPITAL CORPORATION, as Secured
Investor

By: _____

    Name:  Cheryl A. Behan
    Title:    Senior Vice President


JH EQUITY REALTY INVESTORS, INC., as
Equity Investor

By: _____

    Name:
    Title:


By: _____

    Name:
    Title:


CITIBANK, N.A., as a Backup Facility Bank


By: _____

    Name:
    Title:


BNP PARIBAS, as a Backup Facility Bank


By: _____

    Name:
    Title:


By: _____

    Name:
    Title:


HSBC BANK USA, as a Backup Facility Bank


By: _____

    Name:
    Title:

*Termination Agreement and*
*Release of Operative Agreements*

JPMCB - 00000099

BTMU CAPITAL CORPORATION, as Secured
Investor

By:_____
    Name:
    Title:


JH EQUITY REALTY INVESTORS, INC., as
Equity Investor

By:_____
    Name:   R. Douglas Donaldson
    Title:      Treasurer

By:_____
    Name:
    Title:    Louise E. Colby
          Vice President


CITIBANK, N.A., as a Backup Facility Bank


By:_____
    Name:
    Title:


BNP PARIBAS, as a Backup Facility Bank


By:_____
    Name:
    Title:


By:_____
    Name:
    Title:


HSBC BANK USA, as a Backup Facility Bank


By:_____
    Name:
    Title:

*Termination Agreement and*
*Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000100

BTMU CAPITAL CORPORATION, as Secured
Investor

By:_____
    Name:
    Title:


JH EQUITY REALTY INVESTORS, INC., as
Equity Investor

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:


CITIBANK, N.A., as a Backup Facility Bank

By:_____
    Name:  Wayne Beckmann
    Title:  Managing Director


BNP PARIBAS, as a Backup Facility Bank

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:


HSBC BANK USA, as a Backup Facility Bank

By:_____
    Name:
    Title:


*Termination Agreement and*
*Release of Operative Agreements*

JPMCB - 00000101

BTMU CAPITAL CORPORATION, as Secured
Investor

By:_____
    Name:
    Title:


JH EQUITY REALTY INVESTORS, INC., as
Equity Investor

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:


CITIBANK, N.A., as a Backup Facility Bank


By:_____
    Name:
    Title:


BNP PARIBAS, as a Backup Facility Bank

By:_____
    Name:    Lloyd G. Cox
    Title:    Managing Director

By:_____
    Name:    Barry Mendelsohn
    Title:    Director


HSBC BANK USA, as a Backup Facility Bank


By:_____
    Name:
    Title:

*Termination Agreement and*
*Release of Operative Agreements*

9191785 2 27-Oct-08 11:00 00652500

HSBC BANK USA, N.A., as a Backup Facility
Bank

By:_____

      Name: Paul L. Hatton
      Title: Managing Director

*Termination Agreement and*
*Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

JPMCB - 00000103

*CREDIT SUISSE, CAYMAN ISLANDS BRANCH*

(formerly) CREDIT SUISSE FIRST BOSTON, as a Backup
Facility Bank

By: _____
    Name: Mark Gleason
    Title: Managing Director

By: _____
    Name: Shaheen Malik
    Title: Associate

*Termination Agreement and*
*Release of Operative Agreements*

9191785.2 27-Oct-08 11:00 00652500

*EXHIBIT C*

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Bryan Kluever
CT
208 South LaSalle Street
Suite 814
Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 07:18 PM 10/30/2008
INITIAL FILING # 2092526 7
AMENDMENT    # 2008 3661426
SRV: 081081587

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
2092526 7 of 4.12.02

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☒ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.

☐ DELETE name: Give record name to be deleted in item 6a or 6b.

☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
GENERAL MOTORS CORPORATION

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) or ADDED INFORMATION:

7a. ORGANIZATION'S NAME

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
File with DE SOS [Matter No. 00652500-14] [General] [Doc. No. 1457980]    BK 74018460-1    leg

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

JPMCB - 00000105

*Exhibit D*

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Bryan Kluever
CT
208 South LaSalle Street
Suite 814
Chicago, IL 60604

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 07:22 PM 10/30/2008
INITIAL FILING # 6416808 4
AMENDMENT    # 2008 3561491
SRV: 081081602

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
6416808 4 on 11.30.06

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☒ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
GENERAL MOTORS CORPORATION

OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. SEE INSTRUCTIONS | ADD'L INFO RE | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE
| ORGANIZATION DEBTOR | | | |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
File with DE SOS [Matter No. 00652500] [General-13] [Doc. No. 1459798]    BE 7401 84650-5    ipg

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

JPMCB - 00000106

ExHIBIT E

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
UCC Filings                     800-828-0938

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

National Corporate Research
41 State Street
Suite 600
Albany, NY 12207

melissa@nationalcorp.com

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 03:23 PM 11/30/2006
INITIAL FILING NUM: 6416808 4
AMENDMENT NUMBER: 0000000
SRV: 061094538

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 300 RENAISSANCE CENTER | DETROIT | MI | 48265-3000 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | ORGANIZATION DEBTOR | Corporation | Delaware | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names   ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)   ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 2558 | HOUSTON | TX | 77252 | USA |

4. This FINANCING STATEMENT covers the following collateral:

THE ASSETS DESCRIBED ON ANNEX I ATTACHED HERETO AND INCORPORATED BY
REFERENCE HEREIN.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | F#176913 | | |
| 6701-619 -- DE - Secretary of State | | | | A#274606 | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

JPMCB - 00000107

This Annex I
consists of 4 pages

ANNEX I
TO
UCC-1 FINANCING STATEMENT

Debtor:        General Motors Corporation
               300 Renaissance Center
               Detroit, Michigan 48265-3000
               (the "Debtor")

Secured Party:  JPMorgan Chase Bank, N.A., as Administrative Agent
                P.O. Box 2558
                Houston, TX 77252
                (the "Agent")

The financing statement to which this Annex I is attached covers all of the following property of the Debtor now owned or at any time hereafter acquired (collectively, the "Collateral"):

(1)     all Equipment and all Fixtures, other than Excluded Equipment and Fixtures;

(2)     all Documents and General Intangibles attributable solely to Equipment or Fixtures, other than Excluded Equipment and Fixtures;

(3)     all books and records pertaining solely to Equipment or Fixtures (or Proceeds or products of Equipment or Fixtures), in each case, other than Excluded Equipment and Fixtures (or Proceeds or products thereof); and

(4)     to the extent not otherwise included in the foregoing clauses, all Proceeds and products of any and all of the foregoing.

As used herein, the following terms shall have the following meanings:

"Collateral Agreement": the collateral agreement, dated as of November 29, 2006, among the Debtor, Saturn Corporation and JPMorgan Chase Bank, N.A., as administrative agent (as the same may be amended, supplemented or otherwise modified from time to time).

"Credit Agreement": the term loan agreement, dated as of November 29, 2006, among the Debtor, Saturn Corporation, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent (as the same may be amended, supplemented or otherwise modified from time to time).

"Documents": all "Documents" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

[[26606747]]

JPMCB - 00000108

Page 2 of 4

"Equipment": all "Equipment" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Excluded Equipment and Fixtures": all Equipment and Fixtures, now owned or at any time hereafter acquired by the Debtor, which are not located at U.S. Manufacturing Facilities; provided, that no Equipment or Fixtures now owned or at any time hereafter acquired by the Debtor (a) located at a U.S. Manufacturing Facility or (b) transferred to a Non-U.S. Manufacturing Property other than (i) in the ordinary course of business or (ii) for a business purpose of the Debtor and its Subsidiaries (as determined in good faith by the Debtor) and not primarily for the purpose of (1) reducing the security for the Obligations or (2) making such Equipment and Fixtures available to other creditors, shall constitute Excluded Equipment and Fixtures.

"Fixtures": all "Fixtures" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"General Intangible": a "General Intangible" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Governmental Authority": any nation or government, any state, province, municipality or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory, taxing or administrative functions of government including the European Central Bank.

"Grantors": a collective reference to the Debtor and Saturn Corporation, and each other direct or indirect wholly-owned domestic Subsidiary of the Debtor that at the option of the Debtor becomes a party to the Collateral Agreement, the Credit Agreement and each other relevant Loan Document, in each case by executing a joinder agreement in form and substance reasonably acceptable to the Agent.

"Lender": each Lender party to the Credit Agreement.

"Lien": any mortgage, pledge, lien, security interest, charge, statutory deemed trust, conditional sale or other title retention agreement or other similar encumbrance.

"Loan": a loan made by a Lender to the Debtor pursuant to the Credit Agreement.

"Loan Documents": the Credit Agreement, the Security Documents, the Notes and any amendment, waiver, supplement or other modification to any of the foregoing.

"Non-U.S. Manufacturing Property": any real property of a Grantor that is not part of a U.S. Manufacturing Facility.

"Note": a promissory note, executed and delivered by the Debtor with respect to the Loans, substantially in the form of Exhibit B to the Credit Agreement.

"Obligations": all obligations of any Grantor in respect of any unpaid Loans and any interest thereon (including interest accruing after the maturity of any Loan and interest

[[2660674]]

JPMCB - 00000109

Page 3 of 4

accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to any Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) and all other obligations and liabilities of any Grantor to the Agent or to any Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with the Credit Agreement, any other Loan Document or any other document made, delivered or given in connection therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses or otherwise.

"Person": an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Proceeds": all "Proceeds" as such term is defined in Section 9-102 of the UCC as in effect on November 29, 2006.

"Secured Parties": the collective reference to the Agent, each Lender and each other Person to which any Obligations are owed.

"Security Documents": the Collateral Agreement and all other security documents delivered to the Agent granting or purporting to grant a Lien on any property of any Person to secure the Obligations, including financing statements or financing change statements under the applicable Uniform Commercial Code.

"Subsidiary": as to any Person (the "parent"), any other Person of which at least a majority of the outstanding stock or other equity interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or comparable governing body of such Person (irrespective of whether or not at the time stock or other equity interests of any other class or classes of such Person shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the parent, or by one or more Subsidiaries, or by the parent and one or more Subsidiaries.

"UCC": the Uniform Commercial Code as from time to time in effect in the State of New York; provided, however, that, in the event that, by reason of mandatory provisions of law, any of the attachment, perfection or priority of the Agent's and the Secured Parties' security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

"U.S. Manufacturing Facility": (a) any plant or facility of a Grantor listed on Schedule 1 hereto, including all related or appurtenant land, buildings, Equipment and Fixtures, and (b) any plant or facility of a Grantor, including all related or appurtenant land, buildings, Equipment and Fixtures, acquired or leased by a Grantor after the date hereof which is located within the continental United States of America and at which manufacturing, production, assembly or processing activities are conducted.

[[2560674]]

JPMCB - 00000110

# A2853

**Schedule 1**
**to Annex 1 to UCC-1 Financing Statement**

| Num | Facility | City | State |
|---|---|---|---|
| 1 | GM ASSEMBLY ARLINGTON | ARLINGTON | TX |
| 2 | GM ASSEMBLY BOWLING GREEN | BOWLING GREEN | KY |
| 3 | GM ASSEMBLY DETROIT HAMTRAMCK | DETROIT | MI |
| 4 | GM ASSEMBLY FAIRFAX | KANSAS CITY | KS |
| 5 | GM ASSEMBLY FLINT | FLINT | MI |
| 6 | GM ASSEMBLY FORT WAYNE | FORT WAYNE | IN |
| 7 | GM ASSEMBLY JANESVILLE | JANESVILLE | WI |
| 8 | GM ASSEMBLY LANSING DELTA TOWNSHIP | LANSING | MI |
| 9 | GM ASSEMBLY LANSING GRAND RIVER | LANSING | MI |
| 10 | GM ASSEMBLY LORDSTOWN | LORDSTOWN | OH |
| 11 | GM ASSEMBLY MORAINE | DAYTON | OH |
| 12 | GM ASSEMBLY ORION | LAKE ORION | MI |
| 13 | GM ASSEMBLY PONTIAC EAST | PONTIAC | MI |
| 14 | GM ASSEMBLY SATURN WILMINGTON | WILMINGTON | DE |
| 15 | GM ASSEMBLY SHREVEPORT | SHREVEPORT | LA |
| 16 | GM ASSEMBLY WENTZVILLE | WENTZVILLE | MO |
| 17 | GM MFD AMT (SAMCO) | NEW HUDSON | MI |
| 18 | GM MFD FLINT | FLINT | MI |
| 19 | GM MFD FLINT TOOL & DIE | FLINT | MI |
| 20 | GM MFD GRAND BLANC | GRAND BLANC | MI |
| 21 | GM MFD GRAND RAPIDS | WYOMING | MI |
| 22 | GM MFD INDIANAPOLIS | INDIANAPOLIS | IN |
| 23 | GM MFD LANSING REGIONAL STAMPING | LANSING | MI |
| 24 | GM MFD LORDSTOWN | LORDSTOWN | OH |
| 25 | GM MFD MANSFIELD | MANSFIELD | OH |
| 26 | GM MFD MARION | MARION | IN |
| 27 | GM MFD PARMA | PARMA | OH |
| 28 | GM MFD PONTIAC | PONTIAC | MI |
| 29 | GM MFD SHREVEPORT | SHREVEPORT | LA |
| 30 | GM POWERTRAIN ALLISON BALTIMORE | WHITE MARSH | MD |
| 31 | GM POWERTRAIN BAY CITY | BAY CITY | MI |
| 32 | GM POWERTRAIN BEDFORD | BEDFORD | IN |
| 33 | GM POWERTRAIN DEFIANCE | DEFIANCE | OH |
| 34 | GM POWERTRAIN FLINT ENGINE SOUTH | FLINT | MI |
| 35 | GM POWERTRAIN LIVONIA | LIVONIA | MI |
| 36 | GM POWERTRAIN MASSENA | MASSENA | NY |
| 37 | GM POWERTRAIN PARMA | PARMA | OH |
| 38 | GM POWERTRAIN ROMULUS ENGINE | ROMULUS | MI |
| 39 | GM POWERTRAIN TOLEDO | TOLEDO | OH |
| 40 | GM POWERTRAIN TONAWANDA | BUFFALO | NY |
| 41 | GM POWERTRAIN WARREN TRANSMISSION | WARREN | MI |
| 42 | GM POWERTRAIN WILLOW RUN | YPSILANTI | MI |

[[2660674]]

**A2854**

# EXHIBIT 12

Berlin, Linda F.

| | |
|---|---|
| om: | Gordon, Robert E. |
| t: | Wednesday, October 01, 2008 8:46 AM |
| o: | Green, Ryan |
| Subject: | FW: Chase Synthetic Lease |

Ryan:

Please put together this checklist draft. You should try to locate the document checklist from another recent release from this synthetic lease. Also, please break out the checklist to have separate sections for the different properties, as well as sections for general documents. Make sure to include required directions to the the trustee.

Robert

**Robert E. Gordon**
Mayer Brown LLP

Tel: 312 701 7153
rgordon@mayerbrown.com
Fax: 312 701 7711

71 S. Wacker Drive
Chicago, IL 60606
www.mayerbrown.com

Please consider the environment before printing this e-mail.

**From:** Gordon, Robert E.
**Sent:** Wednesday, October 01, 2008 8:44 AM
**To:** 'arun.sundaram@gm.com'
**Cc:** jeffrey.holy@gm.com; Green, Ryan; timothy.conder@gm.com
**Subject:** RE: Chase Synthetic Lease

Arun:

We will put together an initial draft of a brief checklist of required documents for the release and transfer.

Robert

**Robert E. Gordon**
Mayer Brown LLP

Tel: 312 701 7153
ordon@mayerbrown.com
ax: 312 701 7711

EXHIBIT NO. 7
Green

Kelly A. Siska

1

CONFIDENTIAL                                                    MB002461

# A2856

71 S. Wacker Drive
Chicago, IL 60606
www.mayerbrown.com

Please consider the environment before printing this e-mail.

---

**From:** arun.sundaram@gm.com [mailto:arun.sundaram@gm.com]
**Sent:** Tuesday, September 30, 2008 5:12 PM
**To:** Gordon, Robert E.
**Cc:** jeffrey.holy@gm.com; Green, Ryan; timothy.conder@gm.com
**Subject:** Re: Chase Synthetic Lease

Bob,

Thanks for the note below. We will be taking Option 1 i.e. buy back the properties. Can you please advise what paper work we should do between now and Oct 31. Plan to reach out to banks to let them know about the approach tomorrow.

Regards,
Arun


General Motors Corporation
New York Treasurers Office | Structured Finance
Office:   +1 212 418 6219
         +1 212 418 6419
mail:   arun.sundaram@gm.com


"Gordon, Robert E." <RGordon@mayerbrown.com>          To <jeffrey.holy@gm.com>, <arun.sundaram@gm.com>, <timothy.conder@gm.com>
                                                       cc "Green, Ryan" <Ryan.Green@mayerbrown.com>
09/23/2008 06:14 PM                                    Subject Chase Synthetic Lease


Pursuant to Section 20 of the Lease (copy attached), GM has the following options with respect to the upcoming maturity of the JP Morgan Chase Synthetic Lease (the Maturity Date is October 31, 2008):

1.    GM can purchase the remaining properties from Lessor. Absent notice otherwise, GM is obligated to proceed with this option.

2.    GM can elect to have its designee purchase the remaining properties. This option requires notice to the Lessor pursuant to the general notice provision of the Lease. <u>Question</u>: Please let us know if you would like to discuss proceeding with this option.

If GM chooses options (1) or (2) above, the properties will be transferred in accordance with Section 19.1(a) (attached for your reference) and the closing date will be the Maturity Date (or earlier upon 30 days' notice).

      GM can purchase all of the beneficial interests in the lessor Trust. This option requires notice to Lessor pursuant to both Section 20.4 and the general notice provision of the Lease. <u>Question</u>: Please let us know if you would like to discuss proceeding with this option.

2

CONFIDENTIAL                                          MB002462

4.    GM can elect to have its designee purchase all of the beneficial interests in the lessor Trust.  This option requires notice to Lessor pursuant to both Section 20.4 and the general notice provision of the Lease.  Question: Please let us know if you would like to discuss proceeding with this option.

GM chooses options (3) or (4) above, such interests will be transferred in accordance with Section 19.1(b) (attached for your reference) and the closing date must occur before the Maturity Date.

Please note the following other considerations:
1.    The Lease allows GM, upon giving Lessor at least 12 months' prior written notice, the right to remarket the remaining properties at the end of the Lease in lieu of purchasing the remaining properties.  We presume that GM did not elect to remarket and did not provide such notice on before October 31, 2007.  Please confirm.
2.    The Lease sets forth an early purchase option which would allow GM to purchase any or all of the remaining properties before the Maturity Date.  Exercising this early purchase option may require 30 days prior written notice.  We presume that GM does not wish to exercise this early termination purchase option.

Please let us know if you would like to discuss the options mentioned above.

Robert

<<XScan001.PDF>>

**Robert E. Gordon**
Mayer Brown LLP

Tel: 312 701 7153
rgordon@mayerbrown.com
x: 312 701 7711

71 S. Wacker Drive
Chicago, IL 60606
www.mayerbrown.com

Please consider the environment before printing this e-mail.

IRS CIRCULAR 230 NOTICE.  Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties.  If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.
This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. [attachment "XScan001.PDF" deleted by Arun Sundaram/US/GM/GMC]



3

CONFIDENTIAL

MB002463

**A2858**

09-00504-reg    Doc 41-13    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 13
Pg 1 of 9

# EXHIBIT 13

**Berlin, Linda F.**

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Wednesday, October 15, 2008 9:47 AM |
| **To:** | arun.sundaram@GM.COM; timothy.conder@gm.com |
| **Subject:** | GM/JPMorgan Chase Synthetic Lease Releases (Auto Facilities Real Estate Trust 2001-1) |

Arun and Tim,

Attached find a checklist for the above-referenced transaction.  I plan on sending draft documents to counsel for the Trustee and the Administrative Agent shortly.

Please let me know if you have any questions or comments.

Thanks,
Ryan

_____

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com

GM Checklist -
Release of Prop...

EXHIBIT NO. _10_
Green
DK
Kelly A. Siska

1

CONFIDENTIAL                                                                                      MB005592

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

16-Nov-09

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| **1** | **Letter of Direction** | SI | MB | 5225216.2 | MB preparing | |
| **2** | **SPO Headquarters, Grand Blanc, MI** | | | | | |
| A | Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004378* | Agent | MB | 1457570.1 | MB preparing | |
| B | Release of Assignment of Leases (record) *Lease §19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004379* | Agent | MB | 1457572.1 | MB preparing | |
| C | Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C) Recorded 1/10/03, Instrument No. 200301100004374* | Trust | MB | 1457574.1 | MB preparing | |
| D | Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E | Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5225459.2 | MB preparing | |
| F | Termination of UCCs *Lease §19.1(a)(vi) Financing statement recorded 8/25/04, Instrument No. 200408250089800* | Agent | MB | | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (2).XLS  11/16/2009  1:37 PM  00652500

CONFIDENTIAL

MB005593

17-Nov-09

CLOSING LIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

**PARTIES AND COUNSEL**

| | |
|---|---|
| Lessee/Purchaser | General Motors Corporation ("GM") |
| | Tim Conder |
| | (313) 665-6606 |
| | Timothy.Conder@gm.com |
| | |
| | Gordon Ing |
| | |
| | Gordon.M.Ing@gm.com |
| | |
| | Arun Sundaram |
| | (212) 418-6219 |
| | Arun.Sundaram@gm.com |
| Counsel to Lessee/Purchaser | Mayer Brown LLP ("MB") |
| | 71 S. Wacker Drive |
| | Chicago, IL 60606 |
| | |
| | Robert Gordon |
| | (312) 701-7153 |
| | rgordon@mayerbrown.com |
| | |
| | Ryan Green |
| | (312) 701-8032 |
| | ryan.green@mayerbrown.com |
| Lessor/Seller | Auto Facilities Real Estate Trust 2001-1 |
| Trustee | Wilmington Trust Company |
| | 1100 North Market Street |
| | Wilmington, Delaware 19890-0001 |
| Counsel to Trustee | Richards, Layton & Finger |
| | Glenn Kenton |
| Administrative Agent | JPMorgan Chase Bank ("Agent") |
| | Richard Duker (Credit Contact) |
| | (212) 270-3057 (phone) |
| | (212) 270-5127 (fax) |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS  11/17/2009  6:58 AM  00652500

**CONFIDENTIAL**

MB005594

A2862

CLOSING LIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

Doris Mesa (Administrative Contact)
(212) 552-7285 (phone)
(212) 552-5650 (fax)

**Counsel to Administrative Agent**
Simpson Thatcher & Bartlett
Mardi Merjian

**Title Company**
LandAmerica Commonwealth ("TC")
William Wineman
248-816-3820 (Phone)
248-649-1626 (Fax)
1050 Wilshire Drive, Suite 310
Troy, MI 48081
wwineman@landam.com

**Conduit**
Relationship Funding Company, LLC ("RFC")

**Secured Investor**
BTM Capital Corporation ("SI")

**Equity Investor**
JH Equity Realty Investors ("EI")

**Backup Facility Banks**
JPMorgan Chase Bank
Citibank, N.A.
BNP Paribas
HSBC Bank USA
Credit Suisse First Boston

**Properties**
SPO Headquarters Building, Grand Blanc, MI
Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI
GM Powertrain L6 Engine Plant, Flint, MI

GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS  11/17/2009  6:58 AM  00652500

CONFIDENTIAL

MB005595

**A2863**

## CLOSING CHECKLIST

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Financing statement recorded 8/25/04, Instrument No. 200408250089803, Amendment recorded in Instrument No. 20070601004790* | | | | | |
| G Affidavit for Title Company re: no liens Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| H Title Commitment/Underlying Documents | TC | TC | N/A | Received | |
| I Title Policy | TC | TC | N/A | At closing | |
| J Payoff Letter | Agent | Agent | | Open | |
| **3 Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI** | | | | | |
| A Release of Mortgage (record) Lease §19.1(a)(i)(C), 19.1(a)(vi) | Agent | MB | | MB preparing | |
| B Release of Assignment of Leases (record) Lease §19.1(a)(vi) | Agent | MB | | MB preparing | |
| C Release of Short Form Memorandum of Lease (record) Lease §19.1(a)(i)(C) | Trust | MB | | MB preparing | |
| D Quitclaim Deed (record) Lease §19.1(a)(i)(A) | Trust | MB | | MB preparing | |
| E Bill of Sale and Assignment Lease §19.1(a)(i)(B) | Trust | MB | 5225468.1 | MB preparing | |

CONFIDENTIAL

MB005596

## CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Termination of UCCs<br>*Lease §19.1(a)(vi)*<br>file number 2007 1919660, file date 5/21/07 | Agent | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens<br>*Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **4    GM Powertrain L6 Engine Plant, Flint, MI** | | | | | |
| A  Release of Mortgage (record)<br>*Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record)<br>*Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record)<br>*Lease §19.1(a)(i)(C)* | Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record)<br>*Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment<br>*Lease §19.1(a)(i)(B)* | Trust | MB | 5225467.1 | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (2).XLS  11/16/2009  1:37 PM  00652500

CONFIDENTIAL

MB005597

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Termination of UCCs Lease §19.1(a)(vi) | Agent | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **5  General Documentation** | | | | | |
| A  Termination of UCCs (central, DE filings) Blanket-type financing statements as to real property and related collateral located in Marion County, Indiana (file number 2092532 5, file date 4/12/02 and file number 2092526 7, file date 4/12/02)) financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities (file number 6416808 4, file date 11/30/06) | Agent | MB | 9191785.2 | MB preparing | |
| B  Termination of Operative Agreements *Participation Agreement §14.10* | GM, Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | | MB preparing | |
| C  IRS Form W-9 | US Participants | US Participants | N/A | | |

CONFIDENTIAL                                                                 MB005598

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| D  IRS Form W-8BEN | Non-US Participants | Non-US Participants | N/A | | |
| E  FIRPTA Affidavit<br>*Lease §19.1(a)(ii)* | Trust | MB | 5225470.1 | MB preparing | |
| F  Authority and Organizational Documents required by TC | Trust | MB | 5225546.1 | MB preparing | |
| G  Representation and Warranty regarding the absence of liens<br><br>*Lease §19.1(a)(iv)* | Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9197777.2 | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (2).XLS  11/16/2009  1:57 PM  00652500

CONFIDENTIAL

MB005599

# EXHIBIT 14



**arun.sundaram@gm.com** To: RICHARD.DUKER@jpmorgan.com
cc: timothy.conder@gm.com, jeffrey.holy@gm.com, "Green, Ryan"
<Ryan.Green@mayerbrown.com>
10/15/2008 11:47 AM
Subject: Re: Auto Facilities Real Estate Trust

Rick,

Our lawyers (Mayer Brown) might be reaching out to you (Agent) and the Trustee to discuss the closing process. In any case, attached is the check-list developed by Mayer Brown. Please let us know if you have any questions.

Regards,
Arun

General Motors Corporation
New York Treasurers Office | Structured Finance
Office: +1 212 418 6219
Fax:    +1 212 418 6419
Email:  arun.sundaram@gm.com

RICHARD.DUKER@jpmorgan.com

To  "Arun Sundaram" <arun.sundaram@gm.com>

09/09/2008 05:39 PM

cc

Subject Auto Facilities Real Estate Trust

Arun,

With the facility expiring in October, I wanted to confirm your plans/timing for the repurchase of the remaining properties.

Thanks

Rick

Generally, this communication is for informational purposes only and it is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. In the event you are receiving the offering materials attached below related to your interest in hedge funds or private equity, this communication may be intended as an offer or solicitation for the purchase or sale of such fund(s). All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co., its subsidiaries and affiliates.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard

EXHIBIT NO. 12
Green  PJS

Kelly A. Siska

copy format. Thank you.
Please refer to http://www.jpmorgan.com/pages/disclosures for
disclosures relating to UK legal entities.

| GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS | Type: application/vnd.ms-excel<br>Name: GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS |
|---|---|

JPMCB - 00000907

17-Dec-09

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

**PARTIES AND COUNSEL**

| | |
|---|---|
| Lessee/Purchaser | General Motors Corporation ("GM") |
| | Tim Conder<br>(313) 665-6606<br>Timothy.Conder@gm.com |
| | Gordon Ing |
| | Gordon.M.Ing@gm.com |
| | Arun Sundaram<br>(212) 418-6219<br>Arun.Sundaram@gm.com |
| Counsel to Lessee/Purchaser | Mayer Brown LLP ("MB")<br>71 S. Wacker Drive<br>Chicago, IL 60606 |
| | Robert Gordon<br>(312) 701- 7153<br>rgordon@mayerbrown.com |
| | Ryan Green<br>(312) 701- 8032<br>ryan.green@mayerbrown.com |
| Lessor/Seller | Auto Facilities Real Estate Trust 2001-1 |
| Trustee | Wilmington Trust Company<br>1100 North Market Street<br>Wilmington, Delaware 19890-0001 |
| Counsel to Trustee | Richards, Layton & Finger<br>Glenn Kenton |
| Administrative Agent | JPMorgan Chase Bank ("Agent") |
| | Richard Duker (Credit Contact)<br>(212) 270-3057 (phone)<br>(212) 270-5127 (fax) |

JPMCB - 00000908 12/17/2009 12:00 PM 00652800

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| | |
|---|---|
| Counsel to Administrative Agent | Doris Mesa (Administrative Contact)<br>(212) 552-7265 (phone)<br>(212) 552-5650 (fax)<br>Simpson Thacher & Bartlett<br>Mardi Merjian |
| Title Company | LandAmerica Commonwealth ("TC")<br>William Wineman<br>248-816-3820 (Phone)<br>248-649-1626 (Fax)<br>1050 Wilshire Drive, Suite 310<br>Troy, MI 48081<br>wwineman@landam.com |
| Conduit | Relationship Funding Company, LLC ("RFC") |
| Secured Investor | BTM Capital Corporation ("SI") |
| Equity Investor | JH Equity Realty Investors ("EI") |
| Backup Facility Banks | JPMorgan Chase Bank<br>Citibank, N.A.<br>BNP Paribas<br>HSBC Bank USA<br>Credit Suisse First Boston |
| Properties | SPO Headquarters Building, Grand Blanc, MI<br>Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI<br>GM Powertrain L6 Engine Plant, Flint, MI |

2

JPMCB - 00000908  12/17/2009  12:00 PM  0065250O

**A2872**

17-Dec-09

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| **1** | **Letter of Direction** | SI | MB | 5225216.2 | MB preparing | |
| **2** | **SPO Headquarters, Grand Blanc, MI** | | | | | |
| A | Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004378* | Agent | MB | 1457570.1 | MB preparing | |
| B | Release of Assignment of Leases (record) *Lease §19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004379* | Agent | MB | 1457572.1 | MB preparing | |
| C | Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C) Recorded 1/10/03, Instrument No. 200301100004374* | Trust | MB | 1457574.1 | MB preparing | |
| D | Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E | Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5225459.2 | MB preparing | |
| F | Termination of UCCs *Lease §19.1(a)(vi) Financing statement recorded 8/25/04, Instrument No. 20040825089800* | Agent | MB | | MB preparing | |

1

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING CHECKLIST

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Financing statement recorded 8/25/04, Instrument No. 20040825089803, Amendment recorded in Instrument No. 200706010047290* | | | | | |
| G  Affidavit for Title Company re: no liens *Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Received | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **3**  Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI | | | | | |
| A  Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record) *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C)* | Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5225468.1 | MB preparing | |

2.

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING CHECKLIST

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Termination of UCCs<br>*Lease §19.1(a)(vi)*<br>*file number 2007 1919660, file date 5/21/07* | Agent | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens<br>*Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **4**  GM Powertrain L6 Engine Plant, Flint, MI | | | | | |
| A  Release of Mortgage (record)<br>*Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record)<br>*Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of<br>Lease (record)<br>*Lease §19.1(a)(i)(C)* | Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record)<br>*Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment<br>*Lease §19.1(a)(i)(B)* | Trust | MB | 5225467.1 | MB preparing | |

3

# A2875

**CLOSING CHECKLIST**
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Termination of UCCs Lease §19.1(a)(vi) | Agent | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **5  General Documentation** | | | | | |
| A  Termination of UCCs (central, DE filings) *Blanket-type financing statements as to real property and related collateral located in Marion County, Indiana (file number 2092532 5, file date 4/12/02 and file number 2092526 7, file date 4/12/02)) financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities (file number 6416808 4, file date 11/30/06)* | Agent | MB | 9191785.2 | MB preparing | |
| B  Termination of Operative Agreements | GM, Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | | MB preparing | |
| *Participation Agreement §14.10* | | | | | |
| C  IRS Form W-9 | US Participants | US Participants | N/A | | |

4

**A2876**

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING CHECKLIST
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| D IRS Form W-8BEN | Non-US Participants | Non-US Participants | N/A | | |
| E FIRPTA Affidavit *Lease §19.1(a)(ii)* | Trust | MB | 5225470.1 | MB preparing | |
| F Authority and Organizational Documents required by TC | Trust | MB | 5225546.1 | MB preparing | |
| G Representation and Warranty regarding the absence of liens *Lease §19.1(a)(iv)* | Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9197777.2 | MB preparing | |

5

JPMCB - 00000908  12/17/2009  12:00 PM  00652500

A2877

# EXHIBIT 15



**From:**        Green, Ryan [Ryan.Green@mayerbrown.com]
**Sent:**        Wednesday, October 15, 2008 12:48 PM
**To:**          Merjian, Mardi R; Kenton@rlf.com
**Subject:**     GM/JPMorgan Chase Synthetic Lease Property Releases (Auto Facilities Real Estate Trust 2001-1)
**Attachments:** GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS

Mardi and Glenn,

Attached find a draft of the checklist for the above-referenced transaction.  I expect to send draft documents later today.

Best,
Ryan

Ryan C. Green
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com



<<GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS>>

IRS CIRCULAR 230 NOTICE.  Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties.  If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

EXHIBIT NO. _13_

Kelly A. Siska

JPMCB-STB-00000072

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| Letter of Direction | SI | MB | 5225216.3 | MB preparing | |
| **SPO Headquarters, Grand Blanc, MI** | | | | | |
| A  Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004378* | Agent | MB | 1457570.1 | MB preparing | |
| B  Release of Assignment of Leases (record) *Lease §19.1(a)(vi) Recorded 1/10/03, Instrument No. 200301100004379* | Agent | MB | 1457572.1 | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C) Recorded 1/10/03, Instrument No. 200301100004374* | Trust | MB | 1457574.1 | MB preparing | |
| D  Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5225459.2 | MB preparing | |
| F  Termination of UCCs *Lease §19.1(a)(vi) Financing statement recorded 8/25/04, Instrument No. 200408250089800* | Agent | MB | | MB preparing | |

3M Checklist - Release of Properties from JPM Chase Synthetic Lease (4).XLS

JPMCB-STB-00000073

**A2880**

09-00504-reg    Doc 41-15    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 15
Pg 4 of 7

## CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Financing statement recorded 8/25/04, Instrument No. 200408250089803, Amendment recorded in Instrument No. 200706010047290* | | | | | |
| G  Affidavit for Title Company re: no liens *Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Received | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI** | | | | | |
| A  Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record) *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C)* | Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5225468.1 | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (4).XLS

## CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Termination of UCCs  *Lease §19.1(a)(vi)*  file number 2007 1919660, file date 5/21/07 | Agent | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens  *Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **GM Powertrain L6 Engine Plant, Flint, MI** | | | | | |
| A  Release of Mortgage (record)  *Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record)  *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record)  *Lease §19.1(a)(i)(C)* | Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record)  *Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment  *Lease §19.1(a)(i)(B)* | Trust | MB | 5225467.1 | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (4).XLS

JPMCB-STB-00000075

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F Termination of UCCs *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| G Affidavit for Title Company re: no liens *Lease §19.1(a)(vi)* | Trust | MB | | MB preparing | |
| H Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I Title Policy | TC | TC | N/A | At closing | |
| J Payoff Letter | Agent | Agent | | Open | |
| **General Documentation** | | | | | |
| A Termination of UCCs (central, DE filings) *Blanket-type financing statements as to real property and related collateral located in Marion County, Indiana (file number 2092532 5, file date 4/12/02 and file number 2092526 7, file date 4/12/02)) financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities (file number 6416808 4, file date 11/30/06)* | Agent | MB | | MB preparing | |
| B Termination of Operative Agreements | GM, Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9191785.2 | MB preparing | |
| *Participation Agreement §14.10* | | | | | |
| C IRS Form W-9 | US Participants | US Participants | N/A | | |

³M Checklist - Release of Properties from JPM Chase Synthetic Lease (4).XLS

JPMCB-STB-00000076

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| D IRS Form W-8BEN | Non-US Participants | Non-US Participants | N/A | | |
| E FIRPTA Affidavit *Lease §19.1(a)(ii)* | Trust | MB | 5225470.1 | MB preparing | |
| F Certificate of Trust | Trust | MB | 5225546.1 | MB preparing | |
| G Certificate regarding the absence of liens | Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9197777.2 | MB preparing | |
| *Lease §19.1(a)(iv)* | | | | | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (4).XLS

JPMCB-STB-00000077

**A2884**

# EXHIBIT 16

Case 13-2187, Document 42, 09/17/2013, 1043972, Page204 of 319

A2885

09-00504-reg   Doc 414-16   Filed 07/01/10   Entered 07/01/10 22:34:08   Exhibit 16
Pg 2 of 90
(Auto Facilities Real Estate Trust 2001-1)   Page 1 of 1



**From:**    Green, Ryan [Ryan.Green@mayerbrown.com]

**Sent:**    Wednesday, October 15, 2008 5:27 PM

**To:**    Merjian, Mardi R; Ledyard, Michael

**Cc:**    arun.sundaram@gm.com; timothy.conder@gm.com; Gordon, Robert E.; Gonshorek, Stewart C.; McCarthy, Michael B.

**Subject:**    GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1)

**Attachments:**    General Documentation (incl. Letter of Direction); Grand Blanc, MI ; Detroit, MI; Flint, MI; GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS

Mardi and Michael,

Attached please find an updated checklist and drafts of the closing documents (except the deeds and title affidavits, which will follow).

Note that we are awaiting updated title commitments and underlying title documents relating to the properties in Flint and Detroit. The drafts relating to these properties remain subject to our review of the related title documents.

Also, note that the drafts are being transmitted to our client simultaneously and remain subject to our client's review.



Please contact me with any questions or comments you may have.

Best,
Ryan

**Ryan C. Green.**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com
<<General Documentation (incl. Letter of Direction)>> <<Grand Blanc, MI >> <<Detroit, MI>> <<Flint, MI>> <<GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS>>

---

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

EXHIBIT NO. 15
Green PB
Kelly A. Siska

JPMCB-STB-00000184

Case 13-2187, Document 42, 09/17/2013, 1043972, Page205 of 319

# A2886

09-00504-reg Doc 41-16 Filed 07/01/10 Entered 07/01/10 22:34:08 Exhibit 16
General Documentation (incl. Letter of Direction) Page 1 of 1
Pg 3 of 90



| | |
|---|---|
| **From:** | Green, Ryan [Ryan.Green@mayerbrown.com] |
| **Sent:** | Wednesday, October 15, 2008 4:40 PM |
| **To:** | Green, Ryan |
| **Subject:** | General Documentation (incl. Letter of Direction) |
| **Attachments:** | GM/JPMorgan Chase: termination agreement (initial draft).DOC; GM/JPM Chase - Certificate regarding absence of liens (initial draft).DOC; GM-SPO Letter of Direction (MB Draft 10/15).DOC; GM-SPO - FIRPTA - Auto Facilities Real Estate Trust 2001-1.DOC; Certificate of Trust - Michigan Release.DOC; fw8ben[1].pdf; fw9[1].pdf; gm/2000 lease financing - ucc3 - general [3].PDF; gm/2000 lease financing – ucc3 - general [2].PDF; gm/2000 lease financing – ucc3 - general [1].PDF |

<<GM/JPMorgan Chase: termination agreement (initial draft).DOC>> <<GM/JPM Chase - Certificate regarding absence of liens (initial draft).DOC>> <<GM-SPO Letter of Direction (MB Draft 10/15).DOC>> <<GM-SPO - FIRPTA - Auto Facilities Real Estate Trust 2001-1.DOC>> <<Certificate of Trust - Michigan Release.DOC>> <<fw8ben[1].pdf>> <<fw9[1].pdf>> <<gm/2000 lease financing – ucc3 - general [3].PDF>> <<gm/2000 lease financing - ucc3 - general [2].PDF>> <<gm/2000 lease financing - ucc3 - general [1].PDF>>

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com

JPMCB-STB-00000185

Mayer Brown Draft 10/15/08



TERMINATION AGREEMENT AND RELEASE
OF OPERATIVE AGREEMENTS

October __, 2008

The parties to this Termination Agreement and Release of Operative Agreements (this "Termination and Release") acknowledge that the Lessee is exercising the Maturity Date Purchase Option pursuant to Section 20.2 of the Lease.

In consideration of ONE DOLLAR ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby confessed and acknowledged, the undersigned, each of which is a party to one or more of the agreements identified as the Operative Agreements, hereby agree that (i) each of such Operative Agreements and any Commitment thereunder is hereby terminated and is discharged and of no further force or effect as of the date hereof, and (ii) the Administrative Agent and the Lessor do hereby (x) release all of their Liens and Lessor Liens against the Properties created by the Operative Agreements, (y) acknowledge that such Liens and Lessor Liens are forever released, satisfied and discharged and (x) authorize Lessee to file a termination of any existing Financing Statement relating to the Properties. The foregoing notwithstanding, the following provisions shall survive the termination hereby (A) any provision of the Operative Agreements which survives termination by its express terms, (B) the indemnification obligations set forth in Sections 12.1 (General Indemnity) and 12.2 (General Tax Indemnity) of the Participation Agreement (as defined herein), and (C) the obligations of the Lessee to pay Transaction Expenses pursuant to Section 8.2(iii) of the Participation Agreement.

All capitalized terms not otherwise defined herein shall have the meanings set forth in Annex A to that certain Participation Agreement dated as of October 31, 2001, among General Motors Corporation, as Lessee and Construction Agent, Auto Facilities Real Estate Trust 2001-1, as Lessor, Wilmington Trust Company, as Trustee, the Persons named therein as Investors, the Persons named therein as Backup Facility Banks, Relationship Funding Company, LLC, and JPMorgan Chase Bank, as Administrative Agent, as amended (the "Participation Agreement").

This Termination and Release may be executed in counterparts, each of which shall be deemed to be an original, and all of which, when taken together, shall be deemed to be a single document.

This Termination and Release shall be governed by, and construed and interpreted in accordance with, the internal laws of the State of New York, without regard to conflicts of law principles (other than Title 14 of Article 5 of the New York General Obligations Law), except to the extent the application of laws of another jurisdiction are mandatory.

[ *The remainder of this page is intentionally left blank.* ]

*Termination Agreement and*
*Release of Operative Agreements*

JPMCB-STB-00000186



The undersigned have executed this Termination and Release as of the date first above here written.

AUTO FACILITIES REAL ESTATE TRUST
2001-1, as Lessor

By:      Wilmington Trust Company, not in its
         individual capacity but solely as Trustee

         By:_____
              Name:
              Title:


GENERAL MOTORS CORPORATION, as Lessee
and Construction Agent

By:_____
     Name:
     Title:


JPMORGAN CHASE BANK, as Administrative
Agent and a Backup Facility Bank

By:_____
     Name:
     Title:


WILMINGTON TRUST COMPANY, in its
individual capacity, only to the extent expressly set
forth herein

By:_____
     Name:
     Title:


RELATIONSHIP FUNDING COMPANY, LLC

By:_____
     Name:
     Title:


S-1                      *Termination Agreement and*
                         *Release of Operative Agreements*

JPMCB-STB-00000187

BTMU CAPITAL CORPORATION, as Secured
Investor

By:_____
    Name:
    Title:


JH EQUITY REALTY INVESTORS, INC., as
Equity Investor

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:


CITIBANK, N.A., as a Backup Facility Bank

By:_____
    Name:
    Title:


BNP PARIBAS, as a Backup Facility Bank

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:


HSBC BANK USA, as a Backup Facility Bank

By:_____
    Name:
    Title:

*Termination Agreement and*

JPMCB-STB-00000188

CREDIT SUISSE FIRST BOSTON, as a Backup
Facility Bank

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

*Termination Agreement and*

JPMCB-STB-00000189

Mayer Brown Draft 10/9/08



## _CERTIFICATE_

TO:    General Motors Corporation

This Certificate is delivered to you pursuant to Section 19.1(a)(iv) of the Lease executed in connection with that certain Participation Agreement, dated as of October 31, 2001, among General Motors Corporation, as Lessee and Construction Agent, Auto Facilities Real Estate Trust 2001-1, as Lessor, Wilmington Trust Company, as Trustee, the Persons named therein as Investors, the Persons named therein as Backup Facility Banks, Relationship Funding Company, LLC, and JPMorgan Chase Bank, as Administrative Agent, as amended (the "Participation Agreement"). Capitalized terms used but not otherwise defined herein have the respective meanings specified in Annex A to the Participation Agreement.

The undersigned hereby certifies as to the absence of (i) any Liens created by the Operative Agreements that are attributable to such Person and (ii) any Lessor Liens attributable to such Person.

The undersigned has caused this Certificate to be executed and delivered by a duly authorized officer thereof as of this ____ day of October, 2008.

[_____]¹
a [_____]

By: _____
Name: _____
Title: _____

---

¹ To be delivered by Auto Facilities Real Estate Trust 2001-1, JPMorgan Chase Bank, Relationship Funding Company, LLC, Citibank, N.A., BNP Paribas, HSBC Bank USA, Credit Suisse First Boston, BTM Capital Corporation and JH Equity Realty Investors.

JPMCB-STB-00000190



October __, 2008

Wilmington Trust Company
1100 North Market Street
Wilmington, DE 19890-0001

RE:    Auto Facilities Real Estate Trust 2001-1

Gentlemen:

Pursuant to Section 4.2(a) of the Trust Agreement, dated as of October 31, 2001 (the "Trust Agreement"), among BTMU Capital Corporation (f/k/a BTM Capital Corporation), as Secured Investor, JH Equity Realty Investors, Inc., as Equity Investor, and Wilmington Trust Company, as Trustee (the "Trustee") thereunder, the undersigned as the "Required Investors", hereby authorizes and directs you, in your capacity as Trustee, to execute, deliver and perform the documents listed on Exhibit A hereto in connection with the sale by the captioned trust of all of its right, title and interest in and to the real and personal property owned by it in Grand Blanc, Michigan, Detroit, Michigan, and Flint, Michigan, in such forms as may be delivered to the Trust by the law firm of Mayer Brown, LLP and acceptable to the Secured Investor.



The undersigned confirms that such authorization and direction and each such action by you pursuant to the foregoing authorization and direction (i) is not inconsistent with the terms of the Operative Agreements to which the Trustee is a party and, (ii) is covered by the indemnification provided under Section 4.3 of the Trust Agreement and Section 12.1 of the Participation Agreement.

Capitalized terms used but not defined herein shall have the respective meanings provided in or by reference in the Participation Agreement.

CHDB02 5225216.3 15-Oct-08 11:35 00652500                    1



IN WITNESS WHEREOF, the undersigned has duly executed and delivered this direction letter as of the date set forth above.

BTMU Capital Corporation

By:_____
Name:
Title:



JPMCB-STB-00000192



# EXHIBIT A

<u>Grand Blanc, Michigan:</u>

1. Termination of Short Form Memorandum of Lease

2. Quitclaim Deed

3. Bill of Sale and Assignment

4. Title Affidavit

<u>Detroit, Michigan</u>

1. Termination of Short Form Memorandum of Lease

2. Quitclaim Deed

3. Bill of Sale and Assignment

4. Title Affidavit

<u>Flint, Michigan</u>



1. Termination of Short Form Memorandum of Lease

2. Quitclaim Deed

3. Bill of Sale and Assignment

4. Title Affidavit

<u>General Documentation</u>

1. Certificate regarding the absence of liens

2. FIRPTA

3. Certificate of Trust

4. Termination and Release of Operative Agreements

CHDB02 5225216.3 15-Oct-08 11:35 00652500                3

JPMorgan Chase Synthetic Lease Releases

JPMCB-STB-00000193

**A2895**



## CERTIFICATE OF NON-FOREIGN STATUS

Section 1445 of the Internal Revenue Code of 1986, as amended (the "Code"), provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person.  For U.S. tax purposes (including Code section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity.  To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Auto Facilities Real Estate Trust 2001-1, a Delaware statutory trust ("Transferor"), the undersigned, in accordance with Treasury regulation §1.1445-2(b)(2), hereby certifies the following on behalf of Transferor:

1.    Transferor is not a foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign person (as those terms are defined in the Code and Income Tax Regulations);

2.    Transferor is not a disregarded entity as defined in §1.1445-2(b)(2)(iii);

3.    Transferor's U.S. Employer Identification Number is 51-6524430; and

4.    Transferor's office address is 1100 N. Market St., Wilmington, DE 19890.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct, and complete, and I further declares that I have authority to sign this document on behalf of Transferor.

Date: October ____, 2008

**AUTO FACILITIES REAL ESTATE TRUST
2001-1**, a Delaware statutory trust

By:    Wilmington Trust Company, not in its individual capacity but solely as Trustee

By:_____
Name:_____
Title:_____

*GM-SPO*
*FIRPTA*
*Auto Facilities Real Estate Trust 2001-1*

CHDB02 5225470.1 10-Oct-08 18:53 00652500

JPMCB-STB-00000194

CERTIFICATE OF TRUST



STATE OF _____

COUNTY OF _____

The undersigned Trustee, being first duly sworn, on oath state:

1. The name of the trust is: <u>Auto Facilities Real Estate Trust No. 2001-1</u>

2. The date of the trust instrument is: <u>October 31, 2001</u>

3. The name and mailing address of each grantor is:

   Name: <u>Auto Facilities Real Estate Trust No. 2001-1</u>

   Address: <u>Rodney Square North, 1100 North Market Street, Wilmington, DE 19890-0001</u>

4. The name and mailing address of each trustee empowered to act under the trust instrument at the time of execution of this certificate:

   Name: <u>Wilmington Trust Corporation</u>

   Address: <u>Rodney Square North, 1100 North Market Street, Wilmington, DE 19890-0001</u>

5. The legal description of all interests in real property owned by or conveyed to the trust:

   "See Exhibit (A) attached hereto for legal description"

6. The anticipated date of termination of the Trust is:

   UNKNOWN

7. The general powers of the Trustee(s) contained in  Sections 11.2, 2.2 and 4.2 of the Trust Agreement.

8. Any person may rely upon this Certificate of Trust as proof of the existence of the Trust, and is relieved of any obligation or duty to verify that any transaction entered in to by the Trustees(s) is consistent with the terms and conditions of the Trust.

9. This Certificate of Trust is executed as evidence of the existence of the Trust, the terms and conditions of which are incorporated herein by reference.  By the terms of the Trust, in the event of the death, resignation, or incapacity of the Primary Trustee, the Successor trustee shall become acting trustee without further act, bond, or order.

The statements contained in the Trust Certificate are true and correct and there are no other provisions in the trust instrument, or amendments to it, that limit the powers of the trustees to sell, convey, pledge, mortgage, lease, or transfer title to interests in real or personal property.

DATE:_____                    Signature of Grantor_____

JPMCB-STB-00000195

**A2897**

Print Name_____

STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____ who acknowledged that (he) (she) (they) executed the above and foregoing instrument.

                      _____

                      NOTARY PUBLIC

My commission Expires
_____



## EXHIBIT A

## LEGAL DESCRIPTION

### Grand Blanc, Michigan

Unit 1 Grand Pointe Park Condominium as recorded in Master Liber 3661 Pages 672 to 727 inclusive, as amended by First Amendment recorded in Master Liber 3880 Pages 939 to 944 inclusive, and designated as Genesee County Condominium Subdivision Plan No. 193 with rights in General Common Elements and Limited Common Elements as set forth in above Master Deed and as described in Act 59 of the Public Acts of Michigan of 1978, as amended.

### Flint, Michigan



Parcel 1: That part of the Northeast ¼ of Section 26, Town 7 North, Range 6 East, lying Southeasterly of the Southeasterly line of Grand Trunk Western Railroad right of way; also the Southeast ¼ of said section, except beginning at the Southeasterly corner of said section; thence Northerly along the Easterly line of said section 196.46 feet; thence Southwesterly 355.58 feet to a point on the Southerly line of said section 294.71 feet Westerly from the beginning; thence Easterly along said Southerly line, 294.71 feet to the point of beginning; also, part of the West ½ of said section described as: Beginning at a point on the Southerly line of said section, 2116.52 feet North 88 degrees 24 minutes 30 seconds East from the Southwesterly corner of said section; thence North 38 degrees 57 minutes West to the Westerly line of the Southeast ¼ of the Southeast ¼ of the Southwest ¼ of said section; thence North 01 degree 09 minutes 45 seconds West along the said Westerly line to a line 1100 feet Northerly from and parallel with the Southerly line of said section; thence South 88 degrees 24 minutes 30 seconds West 84.24 feet; thence North 10 degrees 19 minutes 36 seconds West, 159.06 feet; thence North 15 degrees 52 minutes 39 seconds West, 74.89 feet; thence North 18 degrees 17 minutes 14 seconds, 289.03 feet; thence North 24 degrees 16 minutes 49 seconds West, 337.70 feet; thence North 28 degrees 26 minutes 08 seconds West, 747.71 feet; thence North 22 degrees 30 minutes 23 seconds West, 707 feet; thence North 15 degrees 07 minutes 54 seconds West, 124.25 feet to the Southerly line of said railroad right of way; thence North 51 degrees 00 minutes 54 seconds East along said Southerly line to the Northerly limits line of the City of Flint; thence Easterly along said Northerly line to the North and South ¼ line of said section; thence Southerly along said North and South line to the South ¼ corner of said section; thence Westerly along Southerly line of said section, 522.77 feet to the point of beginning, except for that parcel of land described as follows: Commencing at the Southeast corner of Section 26, Town 7 North, Range 6 East; thence South 89 degrees 40 minutes 01 second West a distance of 412.64 feet; thence North 00 degrees 19 minutes 59 seconds West, a distance of 50.00 feet to the North right-of-way line of Bristol Road and the point of beginning; commencing at the point of beginning, thence North 89 degrees 40 minutes 01 second East, a distance of 189.00 feet; thence North 57 degrees 57 minutes 13 seconds East, a distance of 19.02 feet; thence South 89 degrees 40 minutes 01 second West, a distance of 205.19 feet; thence South 00 degrees 19 minutes 59 seconds East a distance of 10.00 feet to a the point of beginning.

Parcel 2: That part of the Southeast ¼ of fractional Section 23, Town 7 North, Range 6 East, lying Westerly of the Westerly line of Van Slyke Road and Southeasterly of the Southeasterly line of the Grand Trunk Western Railroad right of way.



Parcel 3: A parcel of land beginning North 00 degrees 30 seconds East 702.24 feet from the interior ¼ corner of said section; thence South 89 degrees 56 minutes 15 seconds West 328.60 feet; thence North 62 degrees 15 minutes West 109.08 feet; thence North 00 degrees 00 minutes 30 seconds East 376.18 feet; thence North 83 degrees 00 minutes 41 seconds East 220.93 feet; thence North 89 degrees 34 minutes 30 seconds East 105.62 feet; thence North 00 degrees 00 minutes 30 seconds East 332.85 feet; thence North 49 degrees 29 minutes 26 seconds East 19 feet; thence North 11 degrees 22 minutes 20 seconds West 18 feet; thence North 46 degrees 30 minutes 41 seconds East 122.84 feet; thence South 00 degrees 00 minutes 30 seconds West 901.42 feet to the place of beginning.

Detroit, Michigan

JPMCB-STB-00000198

Form **W-8BEN** | **Certificate of Foreign Status of Beneficial Owner** | |
(Rev. February 2006) | **for United States Tax Withholding** | OMB No. 1545-1621
Department of the Treasury | ▶ Section references are to the Internal Revenue Code.  ▶ See separate instructions. |
Internal Revenue Service | ▶ Give this form to the withholding agent or payer. Do not send to the IRS. |

Do not use this form for: | Instead, use Form:
--- | ---
• A U.S. citizen or other U.S. person, including a resident alien individual | W-9
• A person claiming that income is effectively connected with the conduct of a trade or business in the United States | W-8ECI
• A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) | W-8ECI or W-8IMY
• A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) | W-8ECI or W-8EXP
Note: *These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.* |
• A person acting as an intermediary | W-8IMY
Note: *See instructions for additional exceptions.* |

### Part I    Identification of Beneficial Owner (See instructions.)

| 1 | Name of individual or organization that is the beneficial owner | 2 | Country of incorporation or organization |
|---|---|---|---|
| | | | |

3  Type of beneficial owner:  ☐ Individual  ☐ Corporation  ☐ Disregarded entity  ☐ Partnership  ☐ Simple trust
    ☐ Grantor trust  ☐ Complex trust  ☐ Estate  ☐ Government  ☐ International organization
    ☐ Central bank of issue  ☐ Tax-exempt organization  ☐ Private foundation

4  Permanent residence address (street, apt. or suite no., or rural route). **Do not use a P.O. box or in-care-of address.**

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| | |

5  Mailing address (if different from above)

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| | |

| 6 | U.S. taxpayer identification number, if required (see instructions)  ☐ SSN or ITIN  ☐ EIN | 7 | Foreign tax identifying number, if any (optional) |
|---|---|---|---|

8  Reference number(s) (see instructions)

### Part II    Claim of Tax Treaty Benefits (if applicable)

9  I certify that (check all that apply):
 a  ☐ The beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.
 b  ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).
 c  ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).
 d  ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).
 e  ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10  Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article _____ of the
    treaty identified on line 9a above to claim a _____ % rate of withholding on (specify type of income): _____
    Explain the reasons the beneficial owner meets the terms of the treaty article: _____
    _____

### Part III    Notional Principal Contracts

11  ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is **not** effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV    Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
1 I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
2 The beneficial owner is not a U.S. person,
3 The income to which this form relates is (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income, and
4 For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.
Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ▶ _____

A2901

09-00504-reg   Doc 41-16   Filed 07/01/10   Entered 07/01/10 22:34:08   Exhibit 16
Pg 18 of 90

| Form **W-9** (Rev. October 2007) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give form to the requester. Do not send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ ........
☐ Other (see instructions) ▶                                                ☐ Exempt payee

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**   Signature of U.S. person ▶                                      Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

● An estate (other than a foreign estate), or

● A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

JPMCB-STB-00000200


Case 13-2187, Document 42, 09/17/2013, 1043972, Page221 of 319

Form W-9 (Rev. 10-2007)                                                                                    Page **2**



- The U.S. grantor or other owner of a grantor trust and not the trust, and
- The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,



4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** Check the "Limited liability company" box only and enter the appropriate code for the tax classification ("D" for disregarded entity, "C" for corporation, "P" for partnership) in the space provided.

For a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

For an LLC classified as a partnership or a corporation, enter the LLC's name on the "Name" line and any business, trade, or DBA name on the "Business name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

### Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the business name, sign and date the form.

Form W-9 (Rev. 10-2007)                                                                                          Page **3**



Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.
[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt payees, see *Exempt Payee* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

JPMCB-STB-00000202

Form W-9 (Rev. 10-2007)

<div align="right">Page **4**</div>



**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Disregarded entity not owned by an individual | The owner |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:
- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

Call the IRS at 1-800-829-1040 if you think your identity has been used inappropriately for tax purposes.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS personal property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.consumer.gov/idtheft* or 1-877-IDTHEFT(438-4338).

Visit the IRS website at *www.irs.gov* to learn more about identity theft and how to reduce your risk.



## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.



# UCC FINANCING STATEMENT **AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
2092532 5 on 4.12.02

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor *or* [ ] Secured Party of record.  Check only *one* of these two boxes.
Also check *one* of the following three boxes *and* provide appropriate information in items 6 and/or 7.
[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. [ ] DELETE name: Give record name to be deleted in item 6a or 6b. [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO FACILITIES REAL ESTATE TRUST 2001-1 | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only *one* box.
Describe collateral [ ] deleted  or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
File with DE SOS [Matter No. 00652500] [Doc. No. 1457981]

JPMCB-STB-00000204

# A2906

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
2092526 7 on 4.12.02

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. [x] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
[ ] DELETE name: Give record name to be deleted in item 6a or 6b.
[ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
GENERAL MOTORS CORPORATION

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) or ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
File with DE SOS [Matter No. 00652500] [Doc. No. 14579801]

JPMCB-STB-00000205

# A2907

09-00504-reg    Doc 41-16    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 16
Pg 24 of 90

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 6416808 4 on 11.30.06 | |

2. ☒ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 6.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GENERAL MOTORS CORPORATION | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment.  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with  DE SOS [Matter No. 00652500] [Doc. No. 14579781]



**From:**       Green, Ryan [Ryan.Green@mayerbrown.com]
**Sent:**       Wednesday, October 15, 2008 4:43 PM
**To:**         Green, Ryan
**Subject:**    Grand Blanc, MI
**Attachments:** gm/2000 lease financing - release of mortgage [grand blanc][hq].DOC; gm/2000 lease
                financing - release of alr [grand blanc][hq].DOC; gm/2000 lease financing - term of lease supp
                [grand blanc][hq].DOC; gm/2000 lease financing - ucc3 - grand blanc [1].PDF; gm/2000 lease
                financing - ucc3 - grand blanc [2].PDF; GM-SPO - Grand Blanc, MI - Bill of Sale (Trust to GM)
                (MB Draft 10/10).DOC

<<gm/2000 lease financing - release of mortgage [grand blanc][hq].DOC>> <<gm/2000 lease financing - release
of alr [grand blanc][hq].DOC>> <<gm/2000 lease financing - term of lease supp [grand blanc][hq].DOC>>
<<gm/2000 lease financing - ucc3 - grand blanc [1].PDF>> <<gm/2000 lease financing - ucc3 - grand blanc
[2].PDF>>

<<GM-SPO - Grand Blanc, MI - Bill of Sale (Trust to GM) (MB Draft 10/10).DOC>>

JPMCB-STB-00000207



*THIS INSTRUMENT PREPARED BY,
AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF MORTGAGE

THIS RELEASE OF MORTGAGE (this "<u>Release</u>"), made and given as of the ___ day of _____, 2008, by JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, with an address at 450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the Investors ("<u>Releasor</u>"), is based upon the following:

A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust, as owner (the "<u>Mortgagor</u>"), granted a certain Mortgage dated as of January 6, 2003, and recorded on January 10, 2003, as Instrument No. 200301100004378, in the Official Records of Genesee County, Michigan (the "<u>Mortgage</u>"), covering certain real property in Genesee County, Michigan.

B.    The Mortgagor desires that Releasor release and discharge from the lien of the Mortgage the real property, and Releasor is willing to release the lien on such real property and all of Releasor's interest therein (the "<u>Release Property</u>") as described in Exhibit A attached to and made part of this Release.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Releasor hereby releases and discharges the Release Property and all of Releasor's interest therein from the lien of the Mortgage, and the Mortgage is hereby fully paid, satisfied, released, discharged and terminated.

This Release applies to and covers all of the Mortgaged Property (as defined in the Mortgage) and rights granted under, or encumbered by, the Mortgage, including, without limitation, the Release Property.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Mortgage.

### [SIGNATURE PAGE FOLLOWS]



1457570 00652500                      - 1 -                      ~~Release of M~~

JPMCB-STB-00000208



IN WITNESS WHEREOF, Releasor has executed this Release as of the date first above written.

JPMORGAN CHASE BANK, N.A., F/K/A
JPMORGAN    CHASE    BANK,    as
Administrative Agent on behalf of the
Investors

By: _____

Its: _____

"Releasor"

STATE OF _____ )
                              )  ss.:
COUNTY OF _____ )

    Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN    CHASE    BANK,    N.A.,    F/K/A    JPMORGAN    CHASE    BANK,    a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

_____
Notary Public in and for the State of _____

_____
Printed or Typed Name of Notary
My Commission Expires:_____

1457570 00657600

JPMCB-STB-00000209

EXHIBIT A

LEGAL DESCRIPTION

1457570.00652500                                    2



*THIS INSTRUMENT PREPARED BY,*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF ASSIGNMENT OF LEASES, RENTS/
## STRUCTURAL SUPPORT AGREEMENT

THIS RELEASE OF ASSIGNMENT OF LEASES, RENTS/STRUCTURAL SUPPORT
AGREEMENT (this "Release"), made and given as of the ___ day of _____, 2008, by
JPMORGAN CHASE BANK, N.A., f/k/a JPMORGAN CHASE BANK, as with an address at
450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the
Investors ("Releasor"), is based upon the following:



A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust (the
"Assignor"), executed a certain Assignment of Leases, Rents and Structural Support Agreement
dated as of January 6, 2003, and recorded on January 10, 2003, as Instrument No.
200301100004379, in the Official Records of Genesee County, Michigan (as amended, modified
or supplemented, the "Assignment"), covering certain real property in Genesee County,
Michigan.

B.    The Assignor desires that Releasor release and discharge from the lien of the
Assignment the real property which is subject to the Assignment, and Releasor is willing to
release all of the real property covered by the Assignment (the "Release Property"), as described
in Exhibit A attached to and made part of this Release.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, Releasor hereby releases and discharges the Release Property from the
real property which is covered by the Assignment.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the
Assignment.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

1457572 00652500                                    - 1 -                      Release of M...



IN WITNESS WHEREOF, Releasor, as Agent for the lenders, has executed this Release as of the date first above written.

JPMORGAN CHASE BANK, N.A., F/K/A
JPMORGAN     CHASE     BANK,     as
Administrative Agent for the Investors

By: _____

Its: _____

1487572 00652500

JPMCB-STB-00000212

STATE OF _____ )
                                            )        ss.:
COUNTY OF _____ )

Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN CHASE BANK, N.A., f/k/a JPMorgan Chase Bank, a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.


_____
Notary Public in and for the State of _____


_____
Printed or Typed Name of Notary
My Commission Expires:_____

1457572 00652500                                    – 3 –

JPMCB-STB-00000213

Case 13-2187, Document 42, 09/17/2013, 1043972, Page234 of 319

**A2915**



EXHIBIT A

LEGAL DESCRIPTION

1457572 00652500

JPMCB-STB-00000214



*THIS INSTRUMENT PREPARED BY,*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT

THIS TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT (this "Termination") is made this ___ day of _____, 2008 by and between, AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust, through Wilmington Trust Company, not in its individual capacity but solely as Trustee ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee").

### W I T N E S S E T H:



WHEREAS, Lessor has leased by a Short Form Memorandum of Lease/Lease Supplement dated as of January 6, 2003 (the "Lease Supplement") the land legally described on Exhibit A attached hereto and made a part hereof (together with all rights-of-way or use, easements, servitudes, licenses, tenements, driveways, approaches, pavements, hereditaments, curbs and street front privileges and appurtenances thereunto belonging but excluding the Improvements (as hereinafter defined, the "Land") and the improvements and fixtures located on the Land (collectively, the "Property") located in the City of Grand Blanc, Genesee County, Michigan to Lessee; as evidenced by the Lease Supplement which was recorded on January 10, 2003, as Instrument No. 200301100004374, in the Official Records of Genesee County, Michigan; and

WHEREAS, the parties desire to terminate the Lease (as defined in the Lease Supplement) and release the Lease Supplement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to enter into this Termination, as follows:

1.    <u>Termination of Lease and Release of Lease Supplement</u>. Effective as of the date hereof, the Lease and Lease Supplement are terminated insofar as they demise the Property. This Termination does not terminate any covenants, warranties, indemnities or other obligations of Lessor or Lessee under the Lease which by their terms expressly survive the release or termination of such Lease; provided, however, that this Termination shall act as a release and termination of all liens, claims and interests Lessor possess under the Lease in and to the Property.

1457574 00652500                                — 1 —                    Termination of ...

JPMCB-STB-00000215

Case 13-2187, Document 42, 09/17/2013, 1043972, Page236 of 319



2.    <u>Liability of Trustee</u>.  It is expressly understood and agreed by the parties hereto that (i) this Termination is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Trustee of the Trust, in the exercise of the powers and authority conferred and vested in it as such Trustee, (ii) each of the representations, undertakings and agreements herein made on the part of Trustee is made and intended not as personal representations, undertakings and agreements by Trustee but is made and intended for the purpose of binding only the Trust Estate, (iii) nothing herein contained shall be construed as creating any liability on Trustee, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and (iv) under no circumstances shall Trustee be personally liable for the payment of any indebtedness or expenses of any party hereto, or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Trustee under this Termination of the Lease.

3.    <u>Miscellaneous</u>.

(a)    This Termination shall be construed and enforced in accordance with the laws of the state where the Land is located.

(b)    This Termination may be executed in multiple counterparts each of which taken together shall constitute one and the same instrument.



(c)    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Lease Supplement.

[SIGNATURE PAGE FOLLOWS]

1457574 00652500                                  - 2 -                     Termination of Lease Supplement

JPMCB-STB-00000216

**A2918**

IN WITNESS WHEREOF, Lessor and Lessee have executed this Release as of the date first above written.

LESSOR:

AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust

BY:  WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Trustee

By:     _____
Name:   _____
Title:  _____

LESSEE:

GENERAL MOTORS CORPORATION, a Delaware corporation

By:     _____
Name:   _____
Title:  _____

JPMCB-STB-00000217

THE STATE OF DELAWARE          §
                                §
COUNTY OF NEW CASTLE           §

     Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Owner and Trustee of Auto Facilities Real Estate Trust 2001-1, a Delaware statutory trust, and that in said representative capacity [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.


                   _____
                   Notary Public in and for the State of _____


                   _____
                   Printed or Typed Name of Notary
                   My Commission Expires:_____

1457574 00652500

JPMCB-STB-00000218

STATE OF _____ )
                                                    )      ss.:
COUNTY OF _____ )

    Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of General Motors Corporation, a Delaware corporation, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.


_____
Notary Public in and for the State of _____

_____
Printed or Typed Name of Notary
My Commission Expires:_____

1457574 00652500                                          - 5 -

JPMCB-STB-00000219

EXHIBIT A

LEGAL DESCRIPTION



JPMCB-STB-00000220

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
200408250089800 on 8.25.04

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the [X] REAL ESTATE RECORDS.

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  [ ] DELETE name: Give record name to be deleted in item 6a or 6b.  [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | [ ] NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
File with Genesse County Recorder [Grand Blanc] [Matter No. 00652500] [Doc. No. 1457962]

## A2923

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 200408250089803 on 8.25.04 | ☒ |

2. ☒ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GENERAL MOTORS CORPORATION | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with Genesee County Recorder [Grand Blanc] [Matter No. 006525001 [Doc. No. 1457963]

JPMCB-STB-00000222



## BILL OF SALE

**FOR VALUE RECEIVED**, AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust ("**Seller**"), hereby conveys on an AS-IS, WHERE-AS basis onto GENERAL MOTORS CORPORATION, a Delaware corporation, all of Seller's right, title and interest, if any, in and to all tangible personal property upon the real estate in Genesee County, Michigan described on <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**"), including, without limitation, all equipment, facilities fixtures, and other personal property located at or on the Land (including without limitation, all HVAC components and equipment, all pipes, fire prevention components and equipment, security components and equipment for the Improvements, electrical and plumbing components and systems, loading dock levelors, loading docks lights, loading dock related affixed equipment, and other systems and equipment affixed to or incorporated into the Land), but in all events exclusive of all movable non-structural partitions, racking and related equipment, machinery, equipment, furniture, furnishings, trade fixtures, inventory, product samples, and other personal property of Seller used in connection with the operation of its business (the "**Personal Property**").

**IN WITNESS WHEREOF**, Seller has executed this Bill of Sale as of October ____, 2008.

**SELLER:**

**AUTO FACILITIES REAL ESTATE TRUST 2001-1**, a Delaware statutory trust

By:    Wilmington Trust Company, not in its individual capacity but solely as Trustee

By: _____
Name: _____
Title: _____

Bill of Sale – Grand Blanc, MI

CHDB02.5225459.3.13-Oct-08 14:00 00652600

JPMCB-STB-00000223

**EXHIBIT A**
**LEGAL DESCRIPTION**

Bill of Sale – Grand Blanc, MI

CHDB02 5225459.3 13-Oct-08 14:09 00652500

JPMCB-STB-00000224

| | |
|---|---|
| **From:** | Green, Ryan [Ryan.Green@mayerbrown.com] |
| **Sent:** | Wednesday, October 15, 2008 4:45 PM |
| **To:** | Green, Ryan |
| **Subject:** | Detroit, MI |
| **Attachments:** | gm/2000 lease financing - ucc3 - detroit [2] - de sos.PDF; gm/2000 lease financing - ucc3 - detroit [1].PDF; gm/2000 lease financing - term of lease supp [detroit][franklin parking].DOC; gm/2000 lease financing - release of mortgage [detroit][franklin parking].DOC; gm/2000 lease financing - release of alr [detroit][franklin parking].DOC; GM-SPO - Detroit, MI - Bill of Sale (Trust to GM) (MB Draft 10/10).DOC |

<<gm/2000 lease financing - ucc3 - detroit [2] - de sos.PDF>> <<gm/2000 lease financing - ucc3 - detroit [1].PDF>> <<gm/2000 lease financing - term of lease supp [detroit][franklin parking].DOC>> <<gm/2000 lease financing - release of mortgage [detroit][franklin parking].DOC>> <<gm/2000 lease financing - release of alr [detroit][franklin parking].DOC>>

<<GM-SPO - Detroit, MI - Bill of Sale (Trust to GM) (MB Draft 10/10).DOC>>

JPMCB-STB-00000225

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2007 1919660 on 5.21.07 | |

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   [ ] DELETE name: Give record name to be deleted in item 6a or 6b.   [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO FACILITIES REAL ESTATE TRUST 2001-1 | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with DE SOS [Detroit] [Matter No. 0065250] [Doc. No. 1457972]

JPMCB-STB-00000226

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
on

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. [x] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

6. CURRENT RECORD INFORMATION:

7. CHANGED (NEW) or ADDED INFORMATION:

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

9a. ORGANIZATION'S NAME
JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

10. OPTIONAL FILER REFERENCE DATA
File with Wayne County Recorder [Detroit/Parking] [Matter No. 006525001 [Doc. No. 14579641

JPMCB-STB-00000227

*THIS INSTRUMENT PREPARED BY*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT

THIS TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT (this "Termination") is made this ___ day of _____, 2008 by and between, AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust, through Wilmington Trust Company, not in its individual capacity but solely as Trustee ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee").

W I T N E S S E T H:

WHEREAS, Lessor has leased by a Short Form Memorandum of Lease/Lease Supplement dated as of January __, 2003 (the "Lease Supplement") the land legally described on Exhibit A attached hereto and made a part hereof (together with all rights-of-way or use, easements, servitudes, licenses, tenements, driveways, approaches, pavements, hereditaments, curbs and street front privileges and appurtenances thereunto belonging but excluding the Improvements (as hereinafter defined, the "Land") and the improvements and fixtures located on the Land (collectively, the "Property") located in the City of Grand Blanc, Wayne County, Michigan to Lessee; as evidenced by the Lease Supplement which was recorded on January __, 2003, in Liber __, Page __, in the Official Records of Wayne County, Michigan; and

WHEREAS, the parties desire to terminate the Lease (as defined in the Lease Supplement) and release the Lease Supplement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to enter into this Termination, as follows:

1.    Termination of Lease and Release of Lease Supplement. Effective as of the date hereof, the Lease and Lease Supplement are terminated insofar as they demise the Property. This Termination does not terminate any covenants, warranties, indemnities or other obligations of Lessor or Lessee under the Lease which by their terms expressly survive the release or termination of such Lease; provided, however, that this Termination shall act as a release and termination of all liens, claims and interests Lessor possess under the Lease in and to the Property.

JPMCB-STB-00000228



2.    <u>Liability of Trustee</u>.  It is expressly understood and agreed by the parties hereto that (i) this Termination is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Trustee of the Trust, in the exercise of the powers and authority conferred and vested in it as such Trustee, (ii) each of the representations, undertakings and agreements herein made on the part of Trustee is made and intended not as personal representations, undertakings and agreements by Trustee but is made and intended for the purpose of binding only the Trust Estate, (iii) nothing herein contained shall be construed as creating any liability on Trustee, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and (iv) under no circumstances shall Trustee be personally liable for the payment of any indebtedness or expenses of any party hereto, or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Trustee under this Termination of the Lease.

3.    <u>Miscellaneous</u>.

(a)    This Termination shall be construed and enforced in accordance with the laws of the state where the Land is located.

(b)    This Termination may be executed in multiple counterparts each of which taken together shall constitute one and the same instrument.



(c)    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Lease Supplement.

[SIGNATURE PAGE FOLLOWS]

1457939 00652500

JPMCB-STB-00000229

IN WITNESS WHEREOF, Lessor and Lessee have executed this Release as of the date first above written.

LESSOR:

AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust

BY:    WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Trustee

By: _____
Name: _____
Title: _____


LESSEE:

GENERAL MOTORS CORPORATION, a Delaware corporation

By: _____
Name: _____
Title: _____

THE STATE OF DELAWARE     §
                                    §

COUNTY OF NEW CASTLE     §

       Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Owner and Trustee of Auto Facilities Real Estate Trust 2001-1, a Delaware statutory trust, and that in said representative capacity [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

                                         _____

                                         Notary Public in and for the State of _____

                                         _____

                                         Printed or Typed Name of Notary
                                         My Commission Expires:_____

1457030.00652600

JPMCB-STB-00000231

STATE OF _____ )
                                                    )    ss.:
COUNTY OF _____ )

     Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of General Motors Corporation, a Delaware corporation, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

                                         _____

                                         Notary Public in and for the State of _____

                                         _____

                                         Printed or Typed Name of Notary
                                         My Commission Expires:_____

JPMCB-STB-00000232

A2934

EXHIBIT A

LEGAL DESCRIPTION

1457030 00652600                          6                 Termination of Lease Supplement

JPMCB-STB-00000233



*THIS INSTRUMENT PREPARED BY, AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF MORTGAGE

THIS RELEASE OF MORTGAGE (this "Release"), made and given as of the ___ day of _____, 2008, by JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, with an address at 450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the Investors ("Releasor"), is based upon the following:

A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust, as owner (the "Mortgagor"), granted a certain Mortgage dated as of January _, 2003, and recorded on January __, 2003, in Liber ___, Page ___, in the Official Records of Wayne County, Michigan (the "Mortgage"), covering certain real property in Wayne County, Michigan.

B.    The Mortgagor desires that Releasor release and discharge from the lien of the Mortgage the real property, and Releasor is willing to release the lien on such real property and all of Releasor's interest therein (the "Release Property") as described in Exhibit A attached to and made part of this Release.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Releasor hereby releases and discharges the Release Property and all of Releasor's interest therein from the lien of the Mortgage, and the Mortgage is hereby fully paid, satisfied, released, discharged and terminated.

This Release applies to and covers all of the Mortgaged Property (as defined in the Mortgage) and rights granted under, or encumbered by, the Mortgage, including, without limitation, the Release Property.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Mortgage.

[SIGNATURE PAGE FOLLOWS]

1457037 00652600

JPMCB-STB-00000234

IN WITNESS WHEREOF, Releasor has executed this Release as of the date first above written.

> JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, as Administrative Agent on behalf of the Investors
>
> By: _____
>
> Its: _____
>
> "Releasor"

STATE OF _____ )
                              ) ss.:
COUNTY OF _____ )

       Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.


_____
Notary Public in and for the State of _____


_____
Printed or Typed Name of Notary
My Commission Expires:_____

1457017 00652500

JPMCB-STB-00000235

EXHIBIT A

LEGAL DESCRIPTION



*THIS INSTRUMENT PREPARED BY,
AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF ASSIGNMENT OF LEASES, RENTS AND STRUCTURAL SUPPORT AGREEMENT

THIS RELEASE OF ASSIGNMENT OF LEASES, RENTS AND STRUCTURAL SUPPORT AGREEMENT (this "Release"), made and given as of the ___ day of _____, 2008, by JPMORGAN CHASE BANK, N.A., f/k/a JPMORGAN CHASE BANK, as with an address at 450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the Investors ("Releasor"), is based upon the following:

A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust (the "Assignor"), executed a certain Assignment of Leases, Rents and Structural Support Agreement dated as of January __, 2003, and recorded on January __, 2003, in Liber __, Page __, in the Official Records of Wayne County, Michigan (as amended, modified or supplemented, the "Assignment"), covering certain real property in Wayne County, Michigan.

B.    The Assignor desires that Releasor release and discharge from the lien of the Assignment the real property which is subject to the Assignment, and Releasor is willing to release all of the real property covered by the Assignment (the "Release Property"), as described in Exhibit A attached to and made part of this Release.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Releasor hereby releases and discharges the Release Property from the real property which is covered by the Assignment.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Assignment.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

1457939 00650500

JPMCB-STB-00000237



IN WITNESS WHEREOF, Releasor, as Agent for the lenders, has executed this Release as of the date first above written.

JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN    CHASE    BANK,    as Administrative Agent for the Investors

By: _____

Its: _____

1457938 00652500                            - 2 -

JPMCB-STB-00000238

STATE OF _____ )

_____ )    ss.:

COUNTY OF _____ )

   Personally appeared before me, the undersigned authority in and for the said county and state, on this \_\_\_\_\_ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN CHASE BANK, N.A., f/k/a JPMorgan Chase Bank, a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

_____

Notary Public in and for the State of _____

_____

Printed or Typed Name of Notary
My Commission Expires: _____

1457938 00652600                              2

JPMCB-STB-00000239

EXHIBIT A

LEGAL DESCRIPTION

1457938 00652500

JPMCB-STB-00000240

**From:**        Green, Ryan [Ryan.Green@mayerbrown.com]
**Sent:**        Wednesday, October 15, 2008 4:47 PM
**To:**          Green, Ryan
**Subject:**     Flint, MI
**Attachments:** gm/2000 lease financing - ucc3 - flint [3].PDF; gm/2000 lease financing - ucc3 - flint [2].PDF; gm/2000 lease financing - ucc3 - flint [1].PDF; gm/2000 lease financing - term of ground lease [flint][L6].DOC; gm/2000 lease financing - release of alr [flint][L6].DOC; gm/2000 lease financing - release of mortgage [flint][L6].DOC; gm/2000 lease financing - term of lease supp [flint][L6].DOC; GM-SPO - Flint, MI - Bill of Sale (Trust to GM) (MB Draft 10/10).DOC

<<gm/2000 lease financing - ucc3 - flint [3].PDF>> <<gm/2000 lease financing - ucc3 - flint [2].PDF>> <<gm/2000 lease financing - ucc3 - flint [1].PDF>> <<gm/2000 lease financing - term of ground lease [flint][L6].DOC>> <<gm/2000 lease financing - release of alr [flint][L6].DOC>> <<gm/2000 lease financing - release of mortgage [flint][L6].DOC>> <<gm/2000 lease financing - term of lease supp [flint][L6].DOC>> <<GM-SPO - Flint, MI - Bill of Sale (Trust to GM) (MB Draft 10/10).DOC>>

JPMCB-STB-00000241

## A2943

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
2004 0825 0089804 on 8.25.04

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. [X] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.

[ ] DELETE name: Give record name to be deleted in item 6a or 6b.

[ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO FACILITIES REAL ESTATE TRUST 2001-1 | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with Genesse County Recorder [Flint] [Matter No. 00652500] [Doc. No. 1457967]

JPMCB-STB-00000242

**A2944**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # |
|---|
| 2004O8250089803 on 8.25.04 |

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the [X] REAL ESTATE RECORDS.

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  [ ] DELETE name: Give record name to be deleted in item 6a or 6b.  [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | AUTO FACILITIES REAL ESTATE TRUST 2001-1 | | | |
| | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE |
|---|---|---|---|---|---|
| | | | | | |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with Genesse County Recorder [Flint] [Matter No. 0065250] [Doc. No. 1457966]

JPMCB-STB-00000243

# A2945

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2004 8250089802 on 8.25.04 | |

2. [x] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    [ ] DELETE name: Give record name to be deleted in item 6a or 6b.    [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GENERAL MOTORS CORPORATION | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

File with Genesse County Recorder [Flint] [Matter No. 00652500] [Doc. No. 1457965]

JPMCB-STB-00000244



*THIS INSTRUMENT PREPARED BY,*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## TERMINATION OF MEMORANDUM OF GROUND LEASE

THIS TERMINATION OF SHORT FORM MEMORANDUM OF GROUND LEASE (this "Termination") is made this ___ day of _____, 2008 by and between, GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessor"), and AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust, through Wilmington Trust Company, not in its individual capacity but solely as Trustee ("Lessee").

### W I T N E S S E T H:

WHEREAS, Lessor has leased by a Memorandum of Lease, dated as of _____, 20__ (the "Lease") the land legally described on Exhibit A attached hereto and made a part hereof (together with all rights-of-way or use, easements, servitudes, licenses, tenements, driveways, approaches, pavements, hereditaments, curbs and street front privileges and appurtenances thereunto belonging but excluding the Improvements (as hereinafter defined, the "Land") and the improvements and fixtures located on the Land (collectively, the "Property") located in the City of Flint, Genesee County, Michigan to Lessee; as evidenced by the Lease which was recorded on January __, 2003, as Instrument No. 200305160068993, in the Official Records of Genesee County, Michigan; and

WHEREAS, the parties desire to terminate the Lease.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to enter into this Termination, as follows:

1.    Termination of Lease and Release of Lease.  Effective as of the date hereof, the Lease is terminated insofar as it demises the Property.  This Termination does not terminate any covenants, warranties, indemnities or other obligations of Lessor or Lessee under the Lease which by their terms expressly survive the release or termination of such Lease; provided, however, that this Termination shall act as a release and termination of all liens, claims and interests Lessor possess under the Lease in and to the Property.

2.    Liability of Trustee.  It is expressly understood and agreed by the parties hereto that (i) this Termination is executed and delivered by Wilmington Trust Company, not

JPMCB-STB-00000245



individually or personally but solely as Trustee of the Trust, in the exercise of the powers and authority conferred and vested in it as such Trustee, (ii) each of the representations, undertakings and agreements herein made on the part of Trustee is made and intended not as personal representations, undertakings and agreements by Trustee but is made and intended for the purpose of binding only the Trust Estate, (iii) nothing herein contained shall be construed as creating any liability on Trustee, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and (iv) under no circumstances shall Trustee be personally liable for the payment of any indebtedness or expenses of any party hereto, or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Trustee under this Termination of the Lease.

     3.    <u>Miscellaneous</u>.

        (a)    This Termination shall be construed and enforced in accordance with the laws of the state where the Land is located.

        (b)    This Termination may be executed in multiple counterparts each of which taken together shall constitute one and the same instrument.

        (c)    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Lease.

<div align="center">[SIGNATURE PAGE FOLLOWS]</div>

JPMCB-STB-00000246

IN WITNESS WHEREOF, Lessor and Lessee have executed this Release as of the date first above written.

LESSOR:

GENERAL MOTORS CORPORATION,
a Delaware corporation

By:        _____
Name:   _____
Title:    _____

LESSEE:

AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust

BY:    WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Trustee

By:        _____
Name:   _____
Title:    _____

JPMCB-STB-00000247

| THE STATE OF DELAWARE | § |
|---|---|
| | § |
| COUNTY OF NEW CASTLE | § |

Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Owner and Trustee of Auto Facilities Real Estate Trust 2001-1, a Delaware statutory trust, and that in said representative capacity [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

_____

Notary Public in and for the State of _____

_____

Printed or Typed Name of Notary
My Commission Expires:_____

STATE OF _____ )
                                                          )   ss.:
COUNTY OF _____ )

Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of General Motors Corporation, a Delaware corporation, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

_____

Notary Public in and for the State of _____

_____

Printed or Typed Name of Notary
My Commission Expires:_____

EXHIBIT A

LEGAL DESCRIPTION

1457953.00652500



THIS INSTRUMENT PREPARED BY,
AND AFTER RECORDING RETURN TO:

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF ASSIGNMENT OF LEASES, RENTS/
## STRUCTURAL SUPPORT AGREEMENT

THIS RELEASE OF ASSIGNMENT OF LEASES, RENTS/STRUCTURAL SUPPORT
AGREEMENT (this "<u>Release</u>"), made and given as of the ___ day of _____, 2008, by
JPMORGAN CHASE BANK, N.A., f/k/a JPMORGAN CHASE BANK, as with an address at
450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the
Investors ("<u>Releasor</u>"), is based upon the following:



      A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust (the
"<u>Assignor</u>"), executed a certain Assignment of Leases, Rents and Structural Support Agreement
dated as of January __, 2003, and recorded on January __, 2003, as Instrument No.
200305160068996, in the Official Records of Genesee County, Michigan (as amended, modified
or supplemented, the "<u>Assignment</u>"), covering certain real property in Genesee County,
Michigan.

      B.    The Assignor desires that Releasor release and discharge from the lien of the
Assignment the real property which is subject to the Assignment, and Releasor is willing to
release all of the real property covered by the Assignment (the "<u>Release Property</u>"), as described
in Exhibit A attached to and made part of this Release.

      Now, therefore, for good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, Releasor hereby releases and discharges the Release Property from the
real property which is covered by the Assignment.

      All capitalized terms not otherwise defined herein shall have the meanings set forth in the
Assignment.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

1457090 00652600



IN WITNESS WHEREOF, Releasor, as Agent for the lenders, has executed this Release as of the date first above written.

JPMORGAN CHASE BANK, N.A., F/K/A
JPMORGAN     CHASE     BANK,     as
Administrative Agent for the Investors

By:     _____

Its:     _____

STATE OF _____ )
                          )    ss.:
COUNTY OF _____ )

   Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN CHASE BANK, N.A., f/k/a JPMorgan Chase Bank, a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.


                              _____
                              Notary Public in and for the State of _____


                              _____
                              Printed or Typed Name of Notary
                              My Commission Expires:_____


1457950.00652500                          2                    Release of ALR

JPMCB-STB-00000253

EXHIBIT A

LEGAL DESCRIPTION

1457050 00652500                          4                    Release of ALR

JPMCB-STB-00000254



*THIS INSTRUMENT PREPARED BY,*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## RELEASE OF MORTGAGE

THIS RELEASE OF MORTGAGE (this "Release"), made and given as of the ___ day of _____, 2008, by JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, with an address at 450 West 33 Street, 13th Floor, New York, NY 10001, as Administrative Agent on behalf of the Investors ("Releasor"), is based upon the following:

A.    Auto Facilities Real Estate Trust 2001-1, a Delaware business trust, as owner (the "Mortgagor"), granted a certain Mortgage dated as of January __, 2003, and recorded on January __, 2003, as Instrument No. 200305160068995 in the Official Records of Genesee County, Michigan (the "Mortgage"), covering certain real property in Genesee County, Michigan.



B.    The Mortgagor desires that Releasor release and discharge from the lien of the Mortgage the real property, and Releasor is willing to release the lien on such real property and all of Releasor's interest therein (the "Release Property") as described in Exhibit A attached to and made part of this Release.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Releasor hereby releases and discharges the Release Property and all of Releasor's interest therein from the lien of the Mortgage, and the Mortgage is hereby fully paid, satisfied, released, discharged and terminated.

This Release applies to and covers all of the Mortgaged Property (as defined in the Mortgage) and rights granted under, or encumbered by, the Mortgage, including, without limitation, the Release Property.

All capitalized terms not otherwise defined herein shall have the meanings set forth in the Mortgage.

[SIGNATURE PAGE FOLLOWS]

1457949 00652500                           - 1 -                        Release of Mortgage

JPMCB-STB-00000255



IN WITNESS WHEREOF, Releasor has executed this Release as of the date first above written.

<div style="margin-left:50%">

JPMORGAN CHASE BANK, N.A., F/K/A
JPMORGAN    CHASE    BANK,    as
Administrative Agent on behalf of the
Investors

By:    _____

Its:    _____

"Releasor"

</div>

STATE OF _____ )
                               ) ss.:
COUNTY OF _____ )

Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of JPMORGAN    CHASE    BANK,    N.A.,    F/K/A    JPMORGAN    CHASE    BANK,    a _____, as Administrative Agent for the Investors, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

_____
Notary Public in and for the State of _____

_____
Printed or Typed Name of Notary
My Commission Expires:_____

JPMCB-STB-00000256

A2958

EXHIBIT A

LEGAL DESCRIPTION

1457949 00652500

JPMCB-STB-00000257



*THIS INSTRUMENT PREPARED BY,*
*AND AFTER RECORDING RETURN TO:*

Robert Gordon
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

*THIS SPACE FOR RECORDER'S USE ONLY*

## TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT

THIS TERMINATION OF SHORT FORM MEMORANDUM OF LEASE/LEASE SUPPLEMENT (this "Termination") is made this ___ day of _____, 2008 by and between, AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust, through Wilmington Trust Company, not in its individual capacity but solely as Trustee ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee").

### W I T N E S S E T H:

WHEREAS, Lessor has leased by a Short Form Memorandum of Lease/Lease Supplement dated as of January __, 2003 (the "Lease Supplement") the land legally described on Exhibit A attached hereto and made a part hereof (together with all rights-of-way or use, easements, servitudes, licenses, tenements, driveways, approaches, pavements, hereditaments, curbs and street front privileges and appurtenances thereunto belonging but excluding the Improvements (as hereinafter defined, the "Land") and the improvements and fixtures located on the Land (collectively, the "Property") located in the City of Flint, Genesee County, Michigan to Lessee; as evidenced by the Lease Supplement which was recorded on January __, 2003, as Instrument No. 200305160068994, in the Official Records of Genesee County, Michigan; and

WHEREAS, the parties desire to terminate the Lease (as defined in the Lease Supplement) and release the Lease Supplement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to enter into this Termination, as follows:

1.      Termination of Lease and Release of Lease Supplement. Effective as of the date hereof, the Lease and Lease Supplement are terminated insofar as they demise the Property. This Termination does not terminate any covenants, warranties, indemnities or other obligations of Lessor or Lessee under the Lease which by their terms expressly survive the release or termination of such Lease; provided, however, that this Termination shall act as a release and termination of all liens, claims and interests Lessor possess under the Lease in and to the Property.

145706\ 00652500                                    1                    Termination of Lease Supplement

JPMCB-STB-00000258



2.    <u>Liability of Trustee</u>.  It is expressly understood and agreed by the parties hereto that (i) this Termination is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Trustee of the Trust, in the exercise of the powers and authority conferred and vested in it as such Trustee, (ii) each of the representations, undertakings and agreements herein made on the part of Trustee is made and intended not as personal representations, undertakings and agreements by Trustee but is made and intended for the purpose of binding only the Trust Estate, (iii) nothing herein contained shall be construed as creating any liability on Trustee, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and (iv) under no circumstances shall Trustee be personally liable for the payment of any indebtedness or expenses of any party hereto, or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by Trustee under this Termination of the Lease.

3.    <u>Miscellaneous</u>.

(a)    This Termination shall be construed and enforced in accordance with the laws of the state where the Land is located.

(b)    This Termination may be executed in multiple counterparts each of which taken together shall constitute one and the same instrument.



(c)    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Lease Supplement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Lessor and Lessee have executed this Release as of the date first above written.

LESSOR:

AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust

BY:    WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Trustee

By:    _____
Name:  _____
Title: _____

LESSEE:

GENERAL MOTORS CORPORATION, a Delaware corporation

By:    _____
Name:  _____
Title: _____

JPMCB-STB-00000260

THE STATE OF DELAWARE        §
                            §
COUNTY OF NEW CASTLE        §

      Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Owner and Trustee of Auto Facilities Real Estate Trust 2001-1, a Delaware statutory trust, and that in said representative capacity [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

 

_____

Notary Public in and for the State of _____

 

_____

Printed or Typed Name of Notary
My Commission Expires:_____

JPMCB-STB-00000261

**A2963**

STATE OF _____ )

                                  )    ss.:

COUNTY OF _____ )

       Personally appeared before me, the undersigned authority in and for the said county and state, on this _____ day of _____, 2008, within my jurisdiction, the within named _____, who acknowledged that [he] [she] is _____ of General Motors Corporation, a Delaware corporation, and that for and on behalf of the said corporation, and as its act and deed [he] [she] executed the above and foregoing instrument, after first having been duly authorized by said corporation to do so.

                                          _____

                                          Notary Public in and for the State of _____

                                          _____

                                          Printed or Typed Name of Notary
                                          My Commission Expires: _____

JPMCB-STB-00000262

EXHIBIT A

LEGAL DESCRIPTION

1457081 00652600                              6              Termination of Lease Supplement

JPMCB-STB-00000263

## BILL OF SALE

**FOR VALUE RECEIVED**, AUTO FACILITIES REAL ESTATE TRUST 2001-1, a Delaware statutory trust ("**Seller**"), hereby conveys on an AS-IS, WHERE-AS basis onto GENERAL MOTORS CORPORATION, a Delaware corporation, all of Seller's right, title and interest, if any, in and to all tangible personal property upon the real estate in Genesee County, Michigan described on <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**"), including, without limitation, all equipment, facilities fixtures, and other personal property located at or on the Land (including without limitation, all HVAC components and equipment, all pipes, fire prevention components and equipment, security components and equipment for the Improvements, electrical and plumbing components and systems, loading dock levelors, loading docks lights, loading dock related affixed equipment, and other systems and equipment affixed to or incorporated into the Land), but in all events exclusive of all movable non-structural partitions, racking and related equipment, machinery, equipment, furniture, furnishings, trade fixtures, inventory, product samples, and other personal property of Seller used in connection with the operation of its business (the "**Personal Property**").

**IN WITNESS WHEREOF**, Seller has executed this Bill of Sale as of October ____, 2008.

**SELLER:**

**AUTO FACILITIES REAL ESTATE TRUST 2001-1**, a Delaware statutory trust

By:    Wilmington Trust Company, not in its individual capacity but solely as Trustee

By: _____
Name: _____
Title: _____

Bill of Sale – Flint, MI

JPMCB-STB-00000264

EXHIBIT A
LEGAL DESCRIPTION

Parcel 1: That part of the Northeast ¼ of Section 26, Town 7 North, Range 6 East, lying Southeasterly of the Southeasterly line of Grand Trunk Western Railroad right of way; also the Southeast ¼ of said section, except beginning at the Southeasterly corner of said section; thence Northerly along the Easterly line of said section 196.46 feet; thence Southwesterly 355.58 feet to a point on the Southerly line of said section 294.71 feet Westerly from the beginning; thence Easterly along said Southerly line, 294.71 feet to the point of beginning; also, part of the West ½ of said section described as: Beginning at a point on the Southerly line of said section, 2116.52 feet North 88 degrees 24 minutes 30 seconds East from the Southwesterly corner of said section; thence North 38 degrees 57 minutes West to the Westerly line of the Southeast ¼ of the Southeast ¼ of the Southwest ¼ of said section; thence North 01 degree 09 minutes 45 seconds West along the said Westerly line to a line 1100 feet Northerly from and parallel with the Southerly line of said section; thence South 88 degrees 24 minutes 30 seconds West 84.24 feet; thence North 10 degrees 19 minutes 36 seconds West, 159.06 feet; thence North 15 degrees 52 minutes 39 seconds West, 74.89 feet; thence North 18 degrees 17 minutes 14 seconds, 289.03 feet; thence North 24 degrees 16 minutes 49 seconds West, 337.70 feet; thence North 28 degrees 26 minutes 08 seconds West, 747.71 feet; thence North 22 degrees 30 minutes 23 seconds West, 707 feet; thence North 15 degrees 07 minutes 54 seconds West, 124.25 feet to the Southerly line of said railroad right of way; thence North 51 degrees 00 minutes 54 seconds East along said Southerly line to the Northerly limits line of the City of Flint; thence Easterly along said Northerly line to the North and South ¼ line of said section; thence Southerly along said North and South line to the South ¼ corner of said section; thence Westerly along Southerly line of said section, 522.77 feet to the point of beginning, except for that parcel of land described as follows: Commencing at the Southeast corner of Section 26, Town 7 North, Range 6 East; thence South 89 degrees 40 minutes 01 second West a distance of 412.64 feet; thence North 00 degrees 19 minutes 59 seconds West, a distance of 50.00 feet to the North right-of-way line of Bristol Road and the point of beginning; commencing at the point of beginning, thence North 89 degrees 40 minutes 01 second East, a distance of 189.00 feet; thence North 57 degrees 57 minutes 13 seconds East, a distance of 19.02 feet; thence South 89 degrees 40 minutes 01 second West, a distance of 205.19 feet; thence South 00 degrees 19 minutes 59 seconds East a distance of 10.00 feet to a the point of beginning.

Parcel 2: That part of the Southeast ¼ of fractional Section 23, Town 7 North, Range 6 East, lying Westerly of the Westerly line of Van Slyke Road and Southeasterly of the Southeasterly line of the Grand Trunk Western Railroad right of way.

Parcel 3: A parcel of land beginning North 00 degrees 30 seconds East 702.24 feet from the interior ¼ corner of said section; thence South 89 degrees 56 minutes 15 seconds West 328.60 feet; thence North 62 degrees 15 minutes West 109.08 feet; thence North 00 degrees 00 minutes 30 seconds East 376.18 feet; thence North 83 degrees 00 minutes 41 seconds East 220.93 feet; thence North 89 degrees 34 minutes 30 seconds East 105.62 feet; thence North 00 degrees 00 minutes 30 seconds East 332.85 feet; thence North 49 degrees 29 minutes 26 seconds East 19 feet; thence North 11 degrees 22 minutes 20 seconds West 18 feet; thence North 46 degrees 30 minutes 41 seconds East 122.84 feet; thence South 00 degrees 00 minutes 30 seconds West 901.42 feet to the place of beginning.

Bill of Sale – Flint, MI

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| Letter of Direction | SI | MB | 5225216.3 | Draft circulated by MB on 10/15/08 | |
| **SPO Headquarters, Grand Blanc, MI** | | | | | |
| A  Release of Mortgage (record)<br><br>*Lease §19.1(a)(i)(C), 19.1(a)(vi)*<br>*Recorded 1/10/03, Instrument No.*<br>*200301100004378* | Agent | MB | 1457570.1 | Draft circulated by MB on 10/15/08 | |
| B  Release of Assignment of Leases (record)<br><br>*Lease §19.1(a)(vi)*<br>*Recorded 1/10/03, Instrument No.*<br>*200301100004379* | Agent | MB | 1457572.1 | Draft circulated by MB on 10/15/08 | |
| C  Release of Short Form Memorandum of Lease (record)<br><br>*Lease §19.1(a)(i)(C)*<br>*Recorded 1/10/03, Instrument No.*<br>*200301100004374* | GM, Trust | MB | 1457574.1 | Draft circulated by MB on 10/15/08 | |
| D  Quitclaim Deed (record)<br>*Lease §19.1(a)(i)(A)* | Trust | MB | | MB preparing | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING CHECKLIST
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| E  Bill of Sale and Assignment | Trust | MB | 5225459.2 | Draft circulated by MB on 10/15/08 | |
| Lease §19.1(a)(i)(B) | | | | | |
| F  Termination of UCCs Lease §19.1(a)(vi) Financing statement recorded 8/25/04, Instrument No. 20040825008800 | N/A | MB | | | |
| Financing statement recorded 8/25/04, Instrument No. 20040825008803, Amendment recorded in Instrument No. 20070601004290 | | | 1457962.1 | Draft circulated by MB on 10/15/08 | |
| | | | 1457963.1 | Draft circulated by MB on 10/15/08 | |
| G  Affidavit for Title Company re: no liens Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Received | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI** | | | | | |
| A  Release of Mortgage (record) | Agent | MB | 1457937.1 | Draft circulated by MB on 10/15/08 | |
| Lease §19.1(a)(i)(C), 19.1(a)(vi) | | | | | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

JPMCB-STB-00000267

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| B  Release of Assignment of Leases (record)<br><br>Lease §19.1(a)(vi) | Agent | MB | 1457938.1 | Draft circulated by MB on 10/15/08 | |
| C  Release of Short Form Memorandum of Lease (record)<br><br>Lease §19.1(a)(i)(C) | GM, Trust | MB | 1457939.1 | Draft circulated by MB on 10/15/08 | |
| D  Quitclaim Deed (record)<br>Lease §19.1(a)(i)(A) | Trust | MB | | MB preparing | |
| E  Bill of Sale and Assignment<br><br>Lease §19.1(a)(i)(B) | Trust | MB | 5225468.1 | Draft circulated by MB on 10/15/08 | |
| F  Termination of UCCs<br>Lease §19.1(a)(vi)<br>file number 2007 1919660, file date 5/21/07 [DE SOS]<br><br>UCC filed on _____, as Instrument No. [Wayne County] | N/A | MB | 1457972.1 | Draft circulated by MB on 10/15/08 | |
| | | | 1457964.1 | Draft circulated by MB on 10/15/08 | |
| G  Affidavit for Title Company re: no liens<br>Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

JPMCB-STB-00000268

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Payoff Letter | Agent | Agent | | Open | |
| **GM Powertrain L6 Engine Plant, Flint, MI** | | | | | |
| A  Release of Mortgage (record)<br><br>*Lease §19.1(a)(i)(C), 19.1(a)(vi)*<br>*Mortgage recorded on _____, 2003 as*<br>*Instrument No. 200305160068995* | Agent | MB | 1457949.1 | Draft circulated by MB on 10/15/08 | |
| B  Release of Assignment of Leases (record)<br><br>*Lease §19.1(a)(vi)*<br>*ALR recorded on _____ 2003 as*<br>*Instrument No. 200305160068996* | Agent | MB | 1457950.1 | Draft circulated by MB on 10/15/08 | |
| C  Release of Short Form Memorandum of Lease (record)<br><br>*Lease §19.1(a)(i)(C)*<br>*Memo of Lease recorded on _____, 2003*<br>*as Instrument No. 200305160068994* | GM, Trust | MB | 1457951.1 | Draft circulated by MB on 10/15/08 | |
| D  Release of Memorandum of Ground Lease (record)<br><br>*Lease §19.1(a)(i)(C)* | GM, Trust | MB | 1457953.3 | Draft circulated by MB on 10/15/08 | |

IM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

JPMCB-STB-00000269

**CLOSING CHECKLIST**
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Memo of Ground Lease recorded on 2003 as Instrument No. 200305160068993* | | | | | |
| E   Quitclaim Deed (record) Lease §19.1(a)(i)(A) | Trust | MB | | MB preparing | |
| F   Bill of Sale and Assignment | Trust | MB | 5225467.1 | Draft circulated by MB on 10/15/08 | |
| Lease §19.1(a)(i)(B) | | | | | |
| G   Termination of UCCs Lease §19.1(a)(vi) | N/A | MB | | | |
| UCC recorded on _____, as Instrument No. 20040825089802 | | | 1457965.1 | Draft circulated by MB on 10/15/08 | |
| UCC recorded on _____, as Instrument No. 20040825089803 | | | 1457966.1 | Draft circulated by MB on 10/15/08 | |
| UCC recorded on _____, as Instrument No. 20040825088804 | | | 1457967.1 | Draft circulated by MB on 10/15/08 | |
| H   Affidavit for Title Company re: no liens Lease §19.1(a)(vi) | Trust | MB | | MB preparing | |
| I   Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| J   Title Policy | TC | TC | N/A | At closing | |
| K   Payoff Letter | Agent | Agent | | Open | |
| **General Documentation** | | | | | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

09-00504-reg    Doc 41-16    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 16
Pg 89 of 90

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| A Termination of UCCs (central, DE filings) *Blanket-type financing statements as to real property and related collateral located in Marion County, Indiana:* | | | | | |
| *recorded on 4.12.02 as File Number 2092532 5; and* | N/A | MB | 1457981.1 | Draft circulated by MB on 10/15/08 | |
| *recorded on 4.12.02 as File Number 2092526 7* | N/A | MB | 1457980.1 | Draft circulated by MB on 10/15/08 | |
| *Financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities* | N/A | MB | 1457978.1 | Draft circulated by MB on 10/15/08 | |
| B Termination of Operative Agreements | GM, Trust, Agent, RFC, SI, EI, Backup Facility | MB | 9191785.2 | Draft circulated by MB on 10/15/08 | |
| *Participation Agreement §14.10* | | | | | |
| C IRS Form W-9 | US Participants | US Participants | N/A | Form sent by MB on 10/15/08 | |
| D IRS Form W-8BEN | Non-US Participants | Non-US Participants | N/A | Form sent by MB on 10/15/08 | |
| E FIRPTA Affidavit | Trust | MB | 5225470.1 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(iii)* | | | | | |

GM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| F  Certificate of Trust | Trust | MB | 5225546.1 | Draft circulated by MB on 10/15/08 | |
| G  Certificate regarding the absence of liens | Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9191177.2 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(iv)* | | | | | |

JPM Checklist - Release of Properties from JPM Chase Synthetic Lease (3).XLS

**A2974**

# EXHIBIT 17

**Green, Ryan**

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Tuesday, October 21, 2008 5:55 PM |
| **To:** | 'Merjian, Mardi R'; 'Ledyard, Michael' |
| **Cc:** | Gordon, Robert E.; Gonshorek, Stewart C. |
| **Subject:** | RE: GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1) |
| | |
| **Attachments:** | GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS; gm/2000 lease financing - quit claim deed - flint, mi.DOC; gm/2000 lease financing - quit claim deed - river east/detroit.DOC; gm/2000 lease financing - quit claim deed - 6 & c/detroit.DOC; gm/2000 lease financing - quit claim deed - franklin deck/detroit.DOC; gm/2000 lease financing - quit claim deed - grand blanc, mi.DOC |

Mardi and Michael,

Attached find drafts of the various deeds and an updated draft of the checklist.  Please forward any comments you may have.

Note that regarding the Detroit properties, we will have separate release documents relating to the Franklin Deck, Parcel 6/C and the River East Deck.  I expect to circulate revised drafts of the documents tomorrow.

Note that the drafts remain subject to our client's review and our review of outstanding title documents.

Best,
Ryan

     

GM Checklist -    gm_2000 lease      gm_2000 lease      gm_2000 lease      gm_2000 lease      gm_2000 lease
Release of Prop...  financing - quit...  financing - quit...  financing - quit...  financing - quit...  financing - quit...

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Wednesday, October 15, 2008 4:27 PM |
| **To:** | Merjian, Mardi R; Ledyard, Michael |
| **Cc:** | arun.sundaram@gm.com; timothy.conder@gm.com; Gordon, Robert E.; Gonshorek, Stewart C.; McCarthy, Michael B. |
| **Subject:** | GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1) |

Mardi and Michael,

Attached please find an updated checklist and drafts of the closing documents (except the deeds and title affidavits, which will follow).

Note that we are awaiting updated title commitments and underlying title documents relating to the properties in Flint and Detroit.  The drafts relating to these properties remain subject to our review of the related title documents.

Also, note that the drafts are being transmitted to our client simultaneously and remain subject to our client's review.

Please contact me with any questions or comments you may have.

Best,

1

EXHIBIT NO. 17

Kelly A. Sisto

CONFIDENTIAL

**A2976**

Ryan

_____

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com

  << Message: General Documentation (incl. Letter of Direction) >>  << Message: Grand Blanc, MI >>  << Message: Detroit, MI >>  << Message: Flint, MI >>  << File: GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS >>

2

**CONFIDENTIAL**

**MB000006**

CONFIDENTIAL
00B000007

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

16-Jun-09

**PARTIES AND COUNSEL**

| Lessee/Purchaser | General Motors Corporation ("GM") |
|---|---|
| | Tim Conder<br>(313) 665-6606<br>Timothy.Conder@gm.com |
| | Gordon Ing<br>Gordon.M.Ing@gm.com |
| | Arun Sundaram<br>(212) 418-6219<br>Arun.Sundaram@gm.com |
| Counsel to Lessee/Purchaser | Mayer Brown LLP ("MB")<br>71 S. Wacker Drive<br>Chicago, IL 60606 |
| | Robert Gordon<br>(312) 701-7153<br>rgordon@mayerbrown.com |
| | Ryan Green<br>(312) 701- 8032<br>ryan.green@mayerbrown.com |
| Lessor/Seller | Auto Facilities Real Estate Trust 2001-1 |
| Trustee | Wilmington Trust Company<br>1100 North Market Street<br>Wilmington, Delaware 19890-0001 |
| Counsel to Trustee | Morris James LLP<br>Michael M. Ledyard<br>(302) 888-6817 (phone)<br>MLedyard@morrisjames.com |
| Administrative Agent | JPMorgan Chase Bank ("Agent")<br>Richard Duker (Credit Contact)<br>(212) 270-3057 (phone) |

GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease(1).XLS  6/16/2009  3:33 PM  00625500

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

|  |  |
|---|---|
|  | (212) 270-5127 (fax) |
|  | Doris Mesa (Administrative Contact) |
|  | (212) 552-7265 (phone) |
|  | (212) 552-5650 (fax) |
| Counsel to Administrative Agent | Simpson Thatcher & Bartlett |
|  | Mardi Merjian |
|  | (212) 455-7283 (phone) |
|  | mmerjian@stblaw.com |
| Title Company | LandAmerica Commonwealth ("TC") |
|  | William Wineman |
|  | 248-816-3820 (Phone) |
|  | 248-649-1626 (Fax) |
|  | 1050 Wilshire Drive, Suite 310 |
|  | Troy, MI 48081 |
|  | wwineman@landam.com |
| Conduit | Relationship Funding Company, LLC ("RFC") |
| Secured Investor | BTMU Capital Corporation, f/k/a BTM Capital Corporation, ("SI") |
| Equity Investor | JH Equity Realty Investors ("EI") |
| Backup Facility Banks | JPMorgan Chase Bank |
|  | Citibank, N.A. |
|  | BNP Paribas |
|  | HSBC Bank USA |
|  | Credit Suisse First Boston |
| Properties | SPO Headquarters Building, Grand Blanc, MI |
|  | Franklin Parking Deck, Vacant Parcel 6/C and River East Parking Deck, Detroit, MI |
|  | GM Powertrain L6 Engine Plant, Flint, MI |

GM_Cl___t_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/2___33 PM  00652500

**CONFIDENTIAL**

MB000008

16-Jun-09

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|---|
| 1 | Letter of Direction | SI | MB | 5225216.4 | Draft circulated by MB on 10/15/08 | |
| 2 | SPO Headquarters, Grand Blanc, MI | | | | | |
| A | Release of Mortgage (record) | Agent | MB | 1457570.1 | Draft circulated by MB on 10/15/08 | |
| | *Lease §19.1(a)(i)(C), 19.1(a)(vi) Recorded 1/10/03, Instrument No. 20030110004378* | | | | | |
| B | Release of Assignment of Leases (record) | Agent | MB | 1457572.1 | Draft circulated by MB on 10/15/08 | |
| | *Lease §19.1(a)(vi) Recorded 1/10/03, Instrument No. 20030110004379* | | | | | |
| C | Release of Short Form Memorandum of Lease (record) | GM, Trust | MB | 1457574.1 | Draft circulated by MB on 10/15/08 | |
| | *Lease §19.1(a)(i)(C) Recorded 1/10/03, Instrument No. 20030110004374* | | | | | |
| D | Quitclaim Deed (record) | Trust | MB | 1458114.1 | Draft circulated by MB on 10/21/08 | |
| | *Lease §19.1(a)(i)(A)* | | | | | |

GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/2008  3:35 PM  00652500

CONFIDENTIAL

MB000009

# A2980

09-00504-reg    Doc 41-17    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 17
Pg 7 of 15

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| E  Bill of Sale and Assignment | Trust | MB | 5254459.2 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(i)(B)* | | | | | |
| F  Termination of UCCs | N/A | MB | | | |
| *Lease §19.1(a)(vi)* | | | | | |
| *Financing statement recorded 8/25/04, Instrument No. 200408250089800* | | | 1457962.1 | Draft circulated by MB on 10/15/08 | |
| *Financing statement recorded 8/25/04, Instrument No. 200408250089803, Amendment recorded in Instrument No. 200706010047290* | | | 1457963.1 | Draft circulated by MB on 10/15/08 | |
| G  Affidavit for Title Company re: no liens | Trust | MB | 1458107.1 | Draft sent to TC for review 10/16/08 | |
| *Lease §19.1(a)(vi)* | | | | | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Received | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Legal Description | N/A | N/A | 1458579.1 | N/A | |
| **3  Franklin Parking Deck, Detroit, MI** | | | | | |
| A  Release of Mortgage (record) | Agent | MB | 1457937.1 | Draft circulated by MB on 10/15/08 | |

GM_Che_ _-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/20   5 PM  00652500

CONFIDENTIAL

## CLOSING CHECKLIST

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Lease §19.1(a)(i)(C), 19.1(a)(vi)* *Recorded 1.21.03 in Liber 37616, Page 881* | | | | | |
| B  Release of Assignment of Leases (record) | Agent | MB | 1457938.1 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(vi)* *Recorded 1.21.03 in Liber 37616, Page 906* | | | | | |
| C  Release of Short Form Memorandum of Lease (record) | GM, Trust | MB | 1457939.1 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(i)(C)* *Recorded 1.21.03 in Liber 37616, Page 864* | | | | | |
| D  Quitclaim Deed (record) | Trust | MB | 1458130.1 | Draft circulated by MB on 10/21/08 | |
| *Lease §19.1(a)(i)(A)* | | | | | |
| E  Bill of Sale and Assignment | Trust | MB | 5225468.1 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(i)(B)* | | | | | |
| F  Termination of UCCs  *Lease §19.1(a)(vi)* | N/A | MB | | | |

CONFIDENTIAL

MB000011

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *file number 2007 1919660, file date 5/21/07 [DE SOS]* | | | 1457972.1 | Draft circulated by MB on 10/15/08 | |
| *UCC filed on _____, as Instrument No. [Wayne County]* | | | 1457964.1 | Draft circulated by MB on 10/15/08 | |
| G  Affidavit for Title Company re: no liens *Lease §19.1(a)(vi)* | Trust | MB | 1458108.1 | MB preparing | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Legal Description | N/A | N/A | 1458596.1 | N/A | |
| **4  Vacant Parcel 6/C, Detroit, MI** | | | | | |
| A  Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B  Release of Assignment of Leases (record) *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |
| C  Release of Short Form Memorandum of Lease (record) *Lease §19.1(a)(i)(C)* | GM, Trust | MB | | MB preparing | |



GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  8/16/2005 PM  00652500

CONFIDENTIAL

MB000012

## CLOSING CHECKLIST

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| D Quitclaim Deed (record) *Lease §19.1(a)(i)(A)* | Trust | MB | 1458538.1 | Draft circulated by MB on 10/21/08 | |
| E Bill of Sale and Assignment *Lease §19.1(a)(i)(B)* | Trust | MB | 5226489.1 | MB preparing | |
| F Termination of UCCs *Lease §19.1(a)(vi)* UCC filed on _____, as Instrument No. _[Wayne County]_ | N/A | MB | | MB preparing | |
| G Affidavit for Title Company re: no liens *Lease §19.1(a)(vi)* | Trust | MB | 1458544.1 | Draft sent to TC for review 10/16/08 | |
| H Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I Title Policy | TC | TC | N/A | At closing | |
| J Legal Description | N/A | N/A | 1458595.1 | N/A | |
| **5 River East Parking Deck, Detroit, MI** | | | | | |
| A Release of Mortgage (record) *Lease §19.1(a)(i)(C), 19.1(a)(vi)* | Agent | MB | | MB preparing | |
| B Release of Assignment of Leases (record) *Lease §19.1(a)(vi)* | Agent | MB | | MB preparing | |

GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/2006 3:35 PM  00652500

CONFIDENTIAL

MB000013

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| C  Release of Short Form Memorandum of Lease (record)<br><br>*Lease §19.1(a)(i)(C)* | GM, Trust | MB | | MB preparing | |
| D  Quitclaim Deed (record)<br><br>*Lease §19.1(a)(i)(A)* | Trust | MB | 1458537.1 | Draft circulated by MB on 10/21/08 | |
| E  Bill of Sale and Assignment<br><br>*Lease §19.1(a)(i)(B)* | Trust | MB | 5226490.1 | MB preparing | |
| F  Termination of UCCs<br>*Lease §19.1(a)(vi)*<br>*UCC filed on _____, as*<br>*Instrument No. [Wayne County]* | N/A | MB | | MB preparing | |
| G  Affidavit for Title Company re: no liens<br><br>*Lease §19.1(a)(vi)* | Trust | MB | 1458543.1 | Draft sent to TC for review 10/16/08 | |
| H  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| I  Title Policy | TC | TC | N/A | At closing | |
| J  Legal Description | N/A | N/A | 1458597.1 | N/A | |

GM_CH___-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS 6/16/20__ __5 PM 00652500

CONFIDENTIAL

MB000014

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

## CLOSING CHECKLIST
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| **6   GM Powertrain L6 Engine Plant, Flint, MI** | | | | | |
| A   Release of Mortgage (record)<br><br>*Lease §19.1(a)(i)(C), 19.1(a)(vi)*<br>*Mortgage recorded on 5.16.03 as*<br>*Instrument No. 200305160068995* | Agent | MB | 1457949.1 | Draft circulated by MB on 10/15/08 | |
| B   Release of Assignment of Leases (record)<br><br>*Lease §19.1(a)(vi)*<br>*ALR recorded on 5.16.03 as Instrument No. 200305160068996* | Agent | MB | 1457950.1 | Draft circulated by MB on 10/15/08 | |
| C   Release of Short Form Memorandum of Lease (record)<br><br>*Lease §19.1(a)(i)(C)*<br>*Memo of Lease recorded on 5.16.03 as Instrument No. 200305160068994* | GM, Trust | MB | 1457951.1 | Draft circulated by MB on 10/15/08 | |
| D   Release of Memorandum of Ground Lease (record)<br><br>*Lease §19.1(a)(i)(C)*<br>*Memo of Ground Lease recorded on 5.16.03 as Instrument No. 200305160068993* | GM, Trust | MB | 1457953.3 | Draft circulated by MB on 10/15/08 | |

GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS   6/16/2009   3:35 PM   00662500

CONFIDENTIAL

MB000015

## CLOSING CHECKLIST

General Motors: Release of Properties from JPMorgan Chase Synthetic Lease

CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| E  Quitclaim Deed (record) | Trust | MB | 1458129.1 | Draft circulated by MB on 10/21/08 | |
| *Lease §19.1(a)(i)(A)* | | | | | |
| F  Bill of Sale and Assignment | Trust | MB | 5225467.1 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(i)(B)* | | | | | |
| G  Termination of UCCs *Lease §19.1(a)(vi)* | N/A | MB | | | |
| *UCC recorded on _____ as Instrument No. 20040825008980**2** | | | 1457965.1 | Draft circulated by MB on 10/15/08 | |
| *UCC recorded on _____ as Instrument No. 20040825008980**3** | | | 1457966.1 | Draft circulated by MB on 10/15/08 | |
| *UCC recorded on _____ as Instrument No. 20040825008980**4** | | | 1457967.1 | Draft circulated by MB on 10/15/08 | |
| H  Affidavit for Title Company re: no liens | Trust | MB | 1458109.1 | Draft sent to TC for review 10/16/08 | |
| *Lease §19.1(a)(vi)* | | | | | |
| I  Title Commitment/Underlying Documents | TC | TC | N/A | Awaiting | |
| J  Title Policy | TC | TC | N/A | At closing | |
| K  Legal Description | N/A | N/A | 1458577.1 | N/A | |

GM_Cl_____-Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/20__ 5 PM  00852500

CONFIDENTIAL

MB000016

**A2987**

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|---|
| **7** | **General Documentation** | | | | | |
| A | Termination of UCCs (central, DE filings) *Blanket-type financing statements as to real property and related collateral located in Marion County, Indiana:* | | | | | |
| | *recorded on 4.12.02 as File Number 2092532 5; and* | N/A | MB | 1457981.1 | Draft circulated by MB on 10/15/08 | |
| | *recorded on 4.12.02 as File Number 2092526 7* | N/A | MB | 1457980.1 | Draft circulated by MB on 10/15/08 | |
| | *Financing statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities recorded on 11.30.06 as File Number 6416808 4* | N/A | MB | 1457978.1 | Draft circulated by MB on 10/15/08 | |
| B | Termination of Operative Agreements | GM, Trust, Agent, RFC, SI, EI, Backup Facility | MB | 9191785.2 | Draft circulated by MB on 10/15/08 | |
| | *Participation Agreement §14.10* | | | | | |
| C | IRS Form W-9 | US Participants | US Participants | N/A | Form sent by MB on 10/15/08 | |
| D | IRS Form W-8BEN | Non-US Participants | Non-US Participants | N/A | Form sent by MB on 10/15/08 | |
| E | FIRPTA Affidavit | Trust | MB | 5225470.1 | Draft circulated by MB on 10/15/08 | |

GM_Checklist_-_Release_of_Properties_from_JPM_Chase_Synthetic_Lease(1).XLS  6/16/2009 3:35 PM  00652500

CONFIDENTIAL

MB000017

CLOSING CHECKLIST
General Motors: Release of Properties from JPMorgan Chase Synthetic Lease
CLOSING DATE: October 31, 2008

| DOCUMENT | SIGNED BY | RESPONSIBLE PARTY | DOC. # | STATUS | COMMENTS |
|---|---|---|---|---|---|
| *Lease §19.1(a)(ii)* | | | | | |
| F  Certificate of Trust | Trust | MB | 5225546.1 | Draft circulated by MB on 10/15/08 | |
| G  Certificate regarding the absence of liens | Trust, Agent, RFC, SI, EI, Backup Facility Banks | MB | 9191177.2 | Draft circulated by MB on 10/15/08 | |
| *Lease §19.1(a)(iv)* | | | | | |
| H  Payoff Letter | Agent | Agent | N/A | Open | |
| I  Closing Statement | GM, Trust | TC | N/A | At closing | |

GM_Ch... --_Release_of_Properties_from_JPM_Chase_Synthetic_Lease[1].XLS  6/16/20.. .5 PM  00852500

CONFIDENTIAL

MB000018

**A2989**

# EXHIBIT 18

09-00504-reg    Doc 41-18    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 18
RE: GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1)    Page 1 of 3

---

**From:**        Green, Ryan [Ryan.Green@mayerbrown.com]
**Sent:**        Friday, October 24, 2008 10:07 AM
**To:**          Wineman, William; Merjian, Mardi R; Ledyard, Michael
**Cc:**           Gonshorek, Stewart C.
**Subject:**      RE: GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1)
**Importance:**   High
**Attachments:**  GM-JPMorgan Chase - Escrow Instructions (initial draft).DOC

Attached find draft escrow instructions. I have set them up to be signed by counsel for GM, counsel for the Trustee, counsel for the Administrative Agent and the title company. Please review and forward any comments at your earliest convenience.

Thanks,
Ryan

---

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com
<<GM-JPMorgan Chase - Escrow Instructions (initial draft).DOC>>

**From:**   Green, Ryan
**Sent:**    Tuesday, October 21, 2008 5:55 PM
**To:**       'Merjian, Mardi R'; 'Ledyard, Michael'
**Cc:**        Gordon, Robert E.; Gonshorek, Stewart C.
**Subject:**    RE: GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1)

Mardi and Michael,

Attached find drafts of the various deeds and an updated draft of the checklist. Please forward any comments you may have.

Note that regarding the Detroit properties, we will have separate release documents relating to the Franklin Deck, Parcel 6/C and the River East Deck. I expect to circulate revised drafts of the documents tomorrow.

Note that the drafts remain subject to our client's review and our review of outstanding title documents.

Best,
Ryan
<< File: GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS >>  << File: gm/2000 lease financing - quit claim deed - flint, mi.DOC >>  << File: gm/2000 lease financing - quit claim deed - river east/detroit.DOC >>  << File: gm/2000 lease financing - quit claim deed - 6 & c/detroit.DOC >>  << File: gm/2000 lease financing - quit claim deed - franklin deck/detroit.DOC >>  << File: gm/2000 lease financing - quit claim deed - grand blanc, mi.DOC >>

---

EXHIBIT
PENGAD 800-631-6989
PX-34
2/4/10

09-00504-reg    Doc 41-18    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 18
RE: GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1)    Page 2 of 3

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com

| | |
|---|---|
| **From:** | Green, Ryan |
| **Sent:** | Wednesday, October 15, 2008 4:27 PM |
| **To:** | Merjian, Mardi R; Ledyard, Michael |
| **Cc:** | arun.sundaram@gm.com; timothy.conder@gm.com; Gordon, Robert E.; Gonshorek, Stewart C.; McCarthy, Michael B. |
| **Subject:** | GM/JPMorgan Chase - Synthetic Lease (Auto Facilities Real Estate Trust 2001-1) |

Mardi and Michael,

Attached please find an updated checklist and drafts of the closing documents (except the deeds and title affidavits, which will follow).

Note that we are awaiting updated title commitments and underlying title documents relating to the properties in Flint and Detroit.  The drafts relating to these properties remain subject to our review of the related title documents.

Also, note that the drafts are being transmitted to our client simultaneously and remain subject to our client's review.

Please contact me with any questions or comments you may have.

Best,
Ryan

**Ryan C. Green**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312 701 8032
Fax: 312 706 9268
ryan.green@mayerbrown.com
<< Message: General Documentation (incl. Letter of Direction) >>  << Message: Grand Blanc, MI >>
<< Message: Detroit, MI >>  << Message: Flint, MI >>  << File: GM Checklist - Release of Properties from JPM Chase Synthetic Lease.XLS >>

IRS CIRCULAR 230 NOTICE.  Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties.  If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they

**A2992**

09-00504-reg    Doc 41-18    Filed 07/01/10    Entered 07/01/10 22:34:08    Exhibit 18
RE: GM/JPMorgan Chase - Synthetic Lease (APg Facilities Real Estate Trust 2001-1)    Page 3 of 3

are addressed. If you have received this email in error please notify the system manager. If you are not the
named addressee you should not disseminate, distribute or copy this e-mail.

JPMCB-STB-00000429

October __, 2008

**VIA E-MAIL**

LandAmerica
1050 Wilshire Dr.
Suite 310
Troy, MI 48084
Attention: William Wineman
e-mail: WWineman@LANDAM.com

Re: Termination of that certain Participation Agreement dated as of October 31, 2001, among General Motors Corporation (**"GM"**), as Lessee and Construction Agent, Auto Facilities Real Estate Trust 2001-1 (**"Trust"**), as Lessor, Wilmington Trust Company (**"Trustee"**), as Trustee, the Persons named therein as Investors, the Persons named therein as Backup Facility Banks, Relationship Funding Company, LLC, and JPMorgan Chase Bank (**"Agent"**), as Administrative Agent, as amended (the **"Participation Agreement"**) and release of all liens related thereto including liens relating to the following properties: (i) the SPO Headquarters Building located in Grand Blanc, Michigan (the **"Grand Blanc Property"**); (ii) the GM Powertrain L6 Engine Plant in Flint, Michigan (the **"Flint Property"**); (iii) the Franklin Deck in Detroit, Michigan (the **"Franklin Deck"**); (iv) the River East Parking Deck in Detroit, Michigan (the **"River East Deck"**); and (v) Parcel 6/C in Detroit, Michigan (**"Parcel 6/C"**) (the Grand Blanc Property, the Flint Property, the Franklin Deck, the River East Deck and Parcel 6/C herein are each a **"Property"** and, collectively, the **"Properties"**). Capitalized terms used but not otherwise defined herein have the respective meanings specified in Annex A to the Participation Agreement.

Greetings:

The undersigned attorneys represent GM, the Agent and the Trustee in connection with the above referenced transaction whereby (i) the Participation Agreement and Operative Agreements will be terminated and (ii) the Liens and Lessor Liens will be released. LandAmerica (the **"Title Company"**) has agreed to issue title insurance policies insuring the interests of GM or Riverfront Holdings, Inc. (**"RHI"**) (as applicable) in and to the Properties in connection with (and after giving effect to) the consummation of the Transaction. This letter constitutes escrow and recording instructions in connection with the Transaction.

You have received or will receive four (4) (except as otherwise noted below) final sets of each of the following documents (collectively, the **"Escrow Documents"**):

**For all of the Properties**

1. Letter of Direction from BTMU Capital Corporation;

2. Termination of UCC Financing Statements (File Numbers 2092532 5, 2092526 7, and 6416808 4) (the **"General UCC Terminations"**);

3. Termination of Operative Agreements from GM, the Trust, the Agent, and the Participants;

4. IRS Form W-9 from each US Participant;

5. IRS Form W-8BEN from each Non-US Participant;

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000430

LandAmerica
Attention: William Wineman
Page 2

6.  FIRPTA Affidavit from the Trust;

7.  Certificate of Trust from the Trust;

8.  Certificate regarding the absence of liens from the Trust, the Agent and the Participants;

9.  Closing Statement (Note: this shall be prepared by the Title Company);


**For the Grand Blanc Property:**

10. Quitclaim Deed (the "**Grand Blanc Deed**") from Trust to GM;

11. Bill of Sale (the "**Grand Blanc Bill of Sale**") from Trust to GM (only one original shall be delivered);

12. Release of Mortgage (the "**Grand Blanc Mortgage Release**") from the Agent;

13. Release of Assignment of Leases and Rents (the "**Grand Blanc ALR Release**") from the Agent;

14. Termination of Short Form Memorandum of Lease (the "**Grand Blanc Short Form Termination**") between GM and the Trust;

15. Termination of Financing Statements (Instrument Numbers 200408250089800 and 200706010047290) (the "**Grand Blanc UCC Terminations**");

16. Statement Required for the Issuance of ALTA Owner's Policies from GM to the Title Company (the "**Grand Blanc Title Clearance Document**") (only one original shall be delivered);


**For the Flint Property:**

17. Quitclaim Deed (the "**Flint Deed**") from Trust to GM;

18. Bill of Sale (the "**Flint Bill of Sale**") from Trust to GM (only one original shall be delivered);

19. Release of Mortgage (the "**Flint Mortgage Release**") from the Agent;

20. Release of Assignment of Leases and Rents (the "**Flint ALR Release**") from the Agent;

21. Termination of Short Form Memorandum of Lease (the "**Flint Short Form Termination**") between GM and the Trust;

22. Termination of Memorandum of Ground Lease (the "**Flint Ground Lease Termination**") between GM and the Trust;

23. Termination of Financing Statements (Instrument Numbers 200408250089802 and 200408250089804) (the "**Flint UCC Terminations**");

24. Statement Required for the Issuance of ALTA Owner's Policies from GM to the Title Company (the "**Flint Title Clearance Document**") (only one original shall be delivered);


9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000431

LandAmerica
Attention: William Wineman
Page 3

### For the Franklin Deck:

25. Quitclaim Deed (the **"Franklin Deck Deed"**) from Trust to [RHI] [OR] [GM];

26. Bill of Sale (the **"Franklin Deck Bill of Sale"**) from Trust to [RHI] [OR] [GM] (only one original shall be delivered);

27. Release of Mortgage (the **"Franklin Deck Mortgage Release"**) from the Agent;

28. Release of Assignment of Leases and Rents (the **"Franklin Deck ALR Release"**) from the Agent;

29. Termination of Short Form Memorandum of Lease (the " **Franklin Deck Short Form Termination"**) between GM and the Trust;

30. [Termination of Memorandum of Lease (the " **Franklin Deck Ground Lease Termination"**) between RHI and the Trust;]

31. Termination of Financing Statements (file number 2007 1919660 and those filed on 5/23/07 at Liber 46328, Pages 567 and 573) (the **"Franklin Deck UCC Terminations"**);

32. Statement Required for the Issuance of ALTA Owner's Policies from GM to the Title Company (the **"Franklin Deck Title Clearance Document"**) (only one original shall be delivered);

### For the River East Deck:

33. Quitclaim Deed (the **"River East Deck Deed"**) from Trust to [RHI] [OR] [GM];

34. Bill of Sale (the **"River East Deck Bill of Sale"**) from Trust to [RHI] [OR] [GM] (only one original shall be delivered);

35. Release of Mortgage (the **"River East Deck Mortgage Release"**) from the Agent;

36. Release of Assignment of Leases and Rents (the **"River East Deck ALR Release"**) from the Agent;

37. Termination of Short Form Memorandum of Lease (the **"River East Deck Short Form Termination"**) between GM and the Trust;

38. [Termination of Memorandum of Lease (the **"River East Deck Ground Lease Termination"**) between RHI and the Trust;]

39. Termination of Financing Statements (filed on 8/27/04 at Liber 41215, Pages 368 and 387) (the **"River East Deck UCC Terminations"**);

40. Statement Required for the Issuance of ALTA Owner's Policies from GM to the Title Company (the **"River East Deck Title Clearance Document"**) (only one original shall be delivered);

### For Parcel 6/C:

9193089.2 24-Oct-08 09:01 00652500

LandAmerica
Attention: William Wineman
Page 4

41. Quitclaim Deed (the "**Parcel 6/C Deed**") from Trust to [RHI] [OR] [GM];

42. Bill of Sale (the "**Parcel 6/C Bill of Sale**") from Trust to [RHI] [OR] [GM] (only one original shall be delivered);

43. Release of Mortgage (the "**Parcel 6/C Mortgage Release**") from the Agent;

44. Release of Assignment of Leases and Rents (the "**Parcel 6/C ALR Release**") from the Agent;

45. Termination of Short Form Memorandum of Lease (the "**Parcel 6/C Short Form Termination**") between GM and the Trust;

46. Termination of Financing Statements (filed on 8/27/04 at Liber 41215, Pages 375 and 381) (the "**River East Deck UCC Terminations**"); and

47. Statement Required for the Issuance of ALTA Owner's Policies from GM to the Title Company (the "**River East Deck Title Clearance Document**") (only one original shall be delivered).

When all of the conditions precedent to closing set forth in Section A below have been met, you are instructed to close this transaction and disburse the Funds (as defined below) as directed in Section B below and to release from escrow and deliver, record or to otherwise handle the Escrow Documents in accordance with Section C below.

A.    CONDITIONS PRECEDENT.

All of the following conditions must be satisfied prior to disbursing the Funds as described in Section B and closing this transaction:

1.    You have received all of the Escrow Documents;

2.    The Title Company shall be irrevocably committed to issue, and by the execution of these escrow instructions Title Company does hereby irrevocably commit to issue, Lawyers Title Insurance Corporation 2006 ALTA owner's policies of title insurance (insuring fee owner's estates as to <u>Exhibits A, B</u> and <u>C</u> referenced below (collectively, the "**Title Policies**"), in connection with the Transaction for the Properties to be dated as of the date and time of the release of any of the Funds (or after recording of the Deeds (if earlier), and concurrently with the release of any of the Funds shall issue, and otherwise in form identical to the pro forma owner's policies of title insurance (including all endorsements attached thereto) attached hereto as <u>Exhibit A</u> (the "**Grand Blanc Owner's Title Policy**"), <u>Exhibit B</u> (the "**Flint Owner's Title Policy**"), and <u>Exhibit C</u> (the "**Detroit Owner's Title Policy**") (collectively, the "**Title Policies**").

3.    You shall have received, by wire transfer to your account as follows:

Comerica Bank, Detroit, MI
ABA Number: 072000096
LandAmerica Financial Group, Inc. – NCS
Account Number: 1851230431
Location Number: 00422
Please reference our case number on all wires: N102355

funds in the amounts set forth in that certain Closing Statement (the "**Closing Statement**") prepared by you and executed by GM as described above (the "**Funds**").

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000433

LandAmerica
Attention: William Wineman
Page 5

     4.     You shall have confirmed that none of the Title Policies shall reflect any delinquent or past due real estate taxes, sewer or water charges, or special assessments.

     5.     You shall have received written or telephonic confirmation from the undersigned that all other conditions precedent to the closing of this transaction have been satisfied.

B.    <u>DISBURSEMENT OF FUNDS.</u>

     Upon the satisfaction of the conditions precedent set forth in Section A and the issuance of the signed pro forma Title Policies, you are instructed to close this transaction and to disburse the Funds to or at the direction of the undersigned in accordance with these written instructions and in conformity with the Closing Statement.

C.    <u>RECORDING.</u>

     As soon as possible after the release of the Funds pursuant to Section B above, you are instructed to record (or file, as applicable) the documents below (the **"Recording Documents"**) with the appropriate recording office in the applicable state in the following order as to each Property:

**For the Grand Blanc Property**

1.   The Grand Blanc Mortgage Release;

2.   The Grand Blanc ALR Release;

3.   The Grand Blanc Short Form Termination;

4.   The Grand Blanc Deed;

**For the Flint Property**

5.   The Flint Mortgage Release;

6.   The Flint ALR Release;

7.   The Flint Short Form Termination;

8.   The Flint Ground Lease Termination;

9.   The Flint Deed;

**For the Franklin Deck**

10. The Franklin Deck Mortgage Release;

11. The Franklin Deck ALR Release;

12. The Franklin Deck Short Form Termination;

13. [The Franklin Deck Ground Lease Termination;]

14. The Franklin Deck Deed;

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000434

LandAmerica
Attention: William Wineman
Page 6

### For the River East Deck

15. The River East Deck Mortgage Release;

16. The River East Deck ALR Release;

17. The River East Deck Short Form Termination;

18. [The River East Deck Ground Lease Termination;]

19. The River East Deck Deed;

### For Parcel 6/C

20. The Parcel 6/C Mortgage Release;

21. The Parcel 6/C ALR Release;

22. The Parcel 6/C Short Form Termination;

23. The Parcel 6/C Deed;

D.    **DELIVERY OF DOCUMENTS.**

Immediately following closing, any extra original documents and copies of all Escrow Documents shall be forwarded to the counsel for GM, except for those documents which have been forwarded to the recorder's office (in which case certified copies of the foregoing shall be forwarded to the counsel for GM).

Promptly after the recording of the Recording Documents, you are instructed to deliver to counsel for GM, at the address below, a conformed copy of each of the Recording Documents, evidencing recordation thereof in accordance with these instructions. In the event that you receive any original recorded document, please forward it to counsel for GM at the address below.

Immediately upon the occurrence of the closing of this transaction and the release of any of the Funds, you are further instructed to give telephonic confirmation thereof to the undersigned Ryan Green at (312)701-8032. If you are unable to comply with these instructions and close this order at or before 4:00 p.m. EST on October 10, 2008, you are to notify the undersigned immediately, and are not to proceed without further written instructions from both of the undersigned.

Send to the undersigned Ryan Green by overnight courier the original executed Title Policies, within 10 days of the date of recordation of the Deeds.

E. COSTS.

All costs and expenses for the escrow fees and recording fees, transfer taxes and all other fees, charges and taxes with respect to the closing of this transaction shall be paid as shown on the Closing Statement. The undersigned shall have no responsibility or liability for any such costs or expenses.

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000435

LandAmerica
Attention: William Wineman
Page 7

     Kindly acknowledge your receipt of these instructions, and your agreement to strictly comply with the same, by signing and returning to the undersigned the enclosed copy of this letter. Notwithstanding your failure to sign, and/or deliver a signed copy of, this letter, your act of recording or filing any of the Recording Documents or releasing any of the Funds shall constitute your unconditional agreement to issue the Title Policies pursuant to these instructions and to otherwise strictly comply with these instructions. This letter may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same letter.

Sincerely,

Ryan C. Green, Attorney for GM
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8032
Facsimile: (312)706-9268
E-Mail: ryan.green@mayerbrown.com

Mardi Merjian, Attorney for the Agent
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-7283
Facsimile: (212) 455-2502
E-Mail: mmerjian@stblaw.com

Michael M. Ledyard, Attorney for the Trustee
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6917
Facsimile: (302) 571-1750
E-Mail: mledyard@morrisjames.com

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000436

**A3000**

LandAmerica
Attention: William Wineman
Page 8

THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF
THESE RECORDING INSTRUCTIONS AND AGREES TO
PROCEED IN STRICT ACCORDANCE THEREWITH.

Dated: October ___, 2008

LANDAMERICA

By:      _____
Name:    _____
Title:   _____

9193089.2 24-Oct-08 09:01 00652500

JPMCB-STB-00000437